**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
    CYBERFIRST LIABILITY COVERAGE
    DELUXE PROPERTY COVERAGE PART
    EMPLOYEE BENEFITS LIABILITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EMPLOYMENT PRACTICES LIABILITY* WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT
        COVERAGE PART
    ENVIRONMENTAL HAZARD POLICY
    EQUIPMENT BREAKDOWN COVERAGE PART
    EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
    LAW ENFORCEMENT LIABILITY COVERAGE PART
    LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND
        INFORMATION SECURITY LIABILITY COVERAGE FORM
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
        TRANSPORTATION
    TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
    Any other Coverage Part or Coverage Form included in this policy that is subject to the federal Terrorism Risk
        Insurance Act of 2002 as amended

The following is added to this policy. This provision can limit coverage for any loss arising out of a "certified act of terrorism" if such loss is otherwise covered by this policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of "certified acts of terrorism" in another endorsement to this policy.

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our insurer deductible under "TRIA", we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of "TRIA", to be an act of terrorism pursuant to "TRIA". The criteria contained in "TRIA" for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to "TRIA"; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002 as amended.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 03 2016

Sherri R. Carter, Executive Officer/Clerk
By Darnetta Smith, Deputy

1   MARSHA JONES MOUTRIE
    City Attorney
2   ADAM RADINSKY, Bar No. 126208
    GARY RHOADES, Bar No. 166149
3   adam.radinsky@smgov.net
    gary.rhoades@smgov.net
4   Deputy City Attorneys
    1685 Main Street, Room 310
5   Santa Monica, California 90401
    Telephone: (310) 458-8336
6   Facsimile: (310) 395-6727

7   Attorneys for Plaintiff
    CITY OF SANTA MONICA

8

9

CASE MANAGEMENT CONFERENCE

6/27/16   Judge C. Karlan
Date   Dept N @ 8:30a

*Exempt from filing fee pursuant
to Government Code §6103*

10              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                    **FOR THE COUNTY OF LOS ANGELES**

12

13   CITY OF SANTA MONICA,                    Case No.   SC125490

14              Plaintiff,                     COMPLAINT

15      v.                                     (Tenant Harassment and Housing
                                               Discrimination, Santa Monica Municipal
16   CECIL MCNABB, KATHY GOLSHANI,             Code sections 4.56.020 and 4.28.030;
     BRIDA LLC, and DOES 1-10,                 California Civil Code section 51)
17
                Defendants.
18

19

20                         **INTRODUCTION**

21          1.      The defendants are Santa Monica landlords who have tried to disrupt the

22   already challenging daily routine of a mother taking care of her severely developmentally

23   disabled daughter. The daughter is quadriplegic with cerebral palsy and intractable epilepsy,

24   and she requires special care in the transfer of herself and wheelchair in a ramp-equipped

25   van. The landlords' sudden actions, including an attempt to stop an innocuous but much

26   needed fifteen-minute transfer of the daughter to the accessible van in the owners' carport,

27   are transparently intended to force the mother and daughter out of their longtime and rent-

28   controlled home so that the landlords can double the rent.

TRA1098

2.      Under the landlords' harassment campaign this year, they have threatened the mother and daughter with eviction and other sanctions if the tenants did any one of three things: 1) continue to use an adjacent parking space and driveway once a week for fifteen minutes to make a safe transfer for Julia Browning (in her wheelchair) into the ramp-equipped van;  2) fail to remove from a storage area adjacent to their parking space a two-hundred pound lift device that moves wheelchairs up and down stairs, particularly from the carport; and, 3) in a new rule suddenly imposed this year, fail to move their vehicle from their *own* parking space on Friday afternoons, the very day the switch occurs.

3.      This lawsuit arises from the defendants' proactive harassment of the tenants as well as their refusal to grant a disabled tenant reasonable accommodations. The City of Santa Monica brings this case pursuant to the Tenant Harassment Ordinance, Santa Monica Municipal Code sections 4.56.010-4.56.040 ("the THO") and the Housing Anti-Discrimination Ordinance, section 4.28.030 ("the HADO"), and California Civil Code section 51. The City seeks injunctive relief; actual, statutory, and punitive damages; and attorneys' fees and costs.

## **PARTIES**

4.      The City is a municipal corporation and a California charter city. The City has standing to bring this action pursuant to Santa Monica Municipal Code sections 4.56.040(b) and (c); section 4.28.070; and California Civil Code section 52(c).

5.      The City is informed and believes and on that basis alleges that the defendant and landlord Cecil McNabb is a Los Angeles County resident doing business as Brida LLC in Los Angeles County. McNabb also manages the subject property.

6.      The City is informed and believes and on that basis alleges that the defendant and landlord Kathy Golshani is a Los Angeles County resident who manages the subject Property on behalf of Brida LLC and Cecil McNabb.

7.      The City is informed and believes and on that basis alleges that the defendant Brida, LLC is a California limited liability company doing business in Los Angeles County.

COMPLAINT

**TRA1099**

8.     The City is informed and believes and on that basis alleges that at all times described below, each of the defendants was the agent and employee of each of the other defendants, and in doing the things alleged was acting within the course and scope of that agency and employment.

## FACTUAL BACKGROUND

9.     This case concerns a residential rental property located at 1123 17th Street in the City of Santa Monica, California ("the Property"). At all times relevant to this lawsuit, the Property was owned by defendants Cecil McNabb and Brida LLC and managed by Kathy Golshani and Cecil McNabb. At all times relevant to this lawsuit, the defendants were "landlords" with respect to the Property pursuant to Santa Monica Municipal Code sections 4.56.010(c) and 4.56.020. As a landlord with a Santa Monica business license, each defendant also operated a "business establishment" under California Civil Code section 51(b).

10.     The subject rental unit at the Property, Unit 6, was a "controlled rental unit" pursuant to the Santa Monica Rent Control laws, City Charter sections 1800 et seq.; and "rental housing unit" pursuant to Santa Monica Municipal Code sections 4.56.010(f) and 4.56.020.

11.     Marti Browning and Julia Browning are "tenants" at the Property within the meaning of Santa Monica Municipal Code sections 4.56.010(g) and 4.56.020. At all times relevant to this lawsuit, their units at the Property are "rental housing units" within the meaning of Santa Monica Municipal Code sections 4.56.010(f) and 4.56.020.

12.     Julia Browning is a tenant with disabilities within the meaning of S.M.M.C. section 4.28.030(i) and California Civil Code sections 51(c)(1) and (3). Moreover, Julia's disabilities are severe: Julia has a genetic condition that has caused severe neurological deficits including but not limited to intellectual disability, quadriplegia, cerebral palsy, and intractable epilepsy. She is unable to expressively communicate and is completely reliant on her family and caregivers for all activities of daily living. She also requires the use of oxygen and a wheelchair.

TRA1100

13.     Marti Browning and her daughter Julia have lived at the Property since 1999. They live in a rent-controlled two-bedroom unit and due to the length of their tenancy and the rent control law, their monthly rent is very low in relation to comparable market-rate units in the same area.

## ACTS OF HARASSMENT

14.     The defendants performed the following acts with malice:

(1)     In February 2016, the defendants ordered Julia's parents to stop using the adjacent parking spot and driveway to make a fifteen-minute transfer of Julia to a ramp-equipped van for Julia's wheelchair. This transfer had occurred without incident and with the neighbors' permission for 14 months.

(2)     Despite medical documentation from Ms. Browning, defendants also in February 2016 ordered Ms. Browning to remove a heavy (at least 200 pounds) device that helps the family move Julia and her wheelchair safely up and down the carport stairs. Ms. Browning has stored the device in front of her parking space—the obvious place to keep such a device—for at least eight years.

(3)     In the middle of discussions about the family's need to make the parking space switch and transfer on Fridays, on Friday, February 12, 2016 Defendants suddenly implemented a new rule that all vehicles had to be removed from the parking garage for three hours every Friday afternoon.

(4)     On or about February 19, 2016, Defendant caused the Brownings' hot water to be shut off for four days.

15.     All the acts described above were in violation of the California Unruh Act, California Fair Employment and Housing Act, and the City of Santa Monica's Housing Anti-Discrimination Ordinance.

TRA1101

**ACTS OF DISCRIMINATION**

16.     In February of 2016, the defendants ordered the Brownings to stop using the adjacent parking spot and driveway to make a fifteen-minute transfer of Julia to a ramp-equipped vehicle for Julia's wheelchair. Supported with a letter from their doctor, the Brownings requested a reasonable accommodation from this order. The defendants refused to grant the request even though the transfer has occurred without incident and with the neighbor's permission for 14 months.

17.     Despite medical documentation from Ms. Browning, defendants also ordered Ms. Browning to remove a heavy (at least 200 pounds) device that helps the family move Julia and her wheelchair safely up and down the carport stairs. Supported with a letter from their doctor, the Brownings requested a reasonable accommodation from this order. The defendants refused to grant the request even though the Brownings have stored the device in front of her parking space—the obvious place to keep such a device—for at least eight years.

18.     In the middle of discussions about the family's need to make the parking space switch and transfer on Fridays, Defendants suddenly implemented a new rule that all vehicles had to be removed from the parking garage for three hours every Friday afternoon.

19.     All the acts described above were in violation of the California Unruh Act, California Fair Employment and Housing Act, and the City of Santa Monica's Housing Anti-Discrimination Ordinance.

20.     As the direct and proximate result of the defendant's wrongful acts described above, Marti Browning, Julia Browning, and the City suffered actual damages in an amount according to proof.

**FIRST CAUSE OF ACTION**

(Tenant Harassment)

21.     The City incorporates and re-alleges the allegations of paragraphs 1 through 20.

22.     The acts of the defendants described above constitute violations of the THO as

**TRA1102**

1    follows:

2                a.      They interrupted, terminated or failed to provide housing services

3    required by contract or by State, County or local housing, health or safety laws, in

4    violation of Santa Monica Municipal Code section 4.56.020(a).

5                b.      They violated city and state fair housing laws that prohibit

6    discrimination against a tenant with a disability, in violation of S.M.M.C. section

7    4.56.020(f).

8          23.    For each act of wrongful harassment, the defendants are liable for all of the

9    remedies established in Santa Monica Municipal Code section 4.56.040.

10         24.    Pursuant to Santa Monica Municipal Code section 4.56.040(d), the defendants

11   are liable for each separate act in violation of the Harassment Ordinance, for the actual

12   damages suffered or for statutory damages in the sum of ten thousand dollars, whichever is

13   greater; and for the City's attorneys' fees and costs.

14         25.    The court may award punitive damages pursuant to Santa Monica Municipal

15   Code section 4.56.040(d). This is an appropriate case for punitive damages because, among

16   other things, the defendants' actions were deliberate, willful, and malicious. The actions

17   continued even after attempts at intervention by the Santa Monica City Attorney's Office in

18   which that office, among other things, provided the Defendant additional information about

19   the tenants' needs for accommodations.

20

21                          **SECOND CAUSE OF ACTION**

22                     **(Housing Anti-Discrimination Ordinance)**

23         26.    The City incorporates and realleges the allegations of paragraphs 1 through 25.

24         27.    The acts of the defendants described above constitute violations of the HADO

25   because they refused to make or provide reasonable accommodations necessary for their

26   disabled tenants in violation of Santa Monica Municipal Code §4.28.030(g).

27         28.    For each act of wrongful discrimination, the defendants are liable for all of the

28   remedies established in Santa Monica Municipal Code sections 4.28.060 and 4.28.070.

COMPLAINT                                                        **TRA1103**

**THIRD CAUSE OF ACTION**

**(Unruh Civil Rights Act)**

29.     The City incorporates and realleges the allegations of paragraphs 1 through 28.

30.     The acts of the defendants described above constitute violations of the Unruh Civil Rights Act as they refused to make or provide reasonable accommodations necessary for their disabled tenants in violation of California Civil Code section 51(b).

31.     For each act of wrongful discrimination, the defendants are liable for all of the remedies established in California Civil Code section 52.

**FOURTH CAUSE OF ACTION**

**(Injunctive Relief)**

32.     The City incorporates and realleges the allegations of paragraphs 1 through 31.

33.     Unless the defendants are enjoined from the alleged misconduct, the current and future tenants at the Property and other Santa Monica buildings owned by the defendants are likely to suffer irreparable injury in the loss of their legal rights as tenants.

34.     The defendants have committed acts, proposed to commit acts, and engaged in a pattern and practice, all of which violated Santa Monica Municipal Code and the California Civil Code. Injunctive relief is expressly authorized by Santa Monica Municipal Code Sections 4.56.040(c) and 4.28.070 along with California Civil Code Section 52.

**<u>PRAYER</u>**

The City prays for judgment against the defendants as follows:

1.     Injunctive relief that the Court deems appropriate, including but not limited to:

a.     A prohibition against any future acts by the defendants or their agents that violate the Tenant Harassment Ordinance, the Anti-Housing Discrimination Ordinance, and the California Unruh Act;

b.     Mandated housing training attended by the defendants that covers the Tenant Harassment Ordinance, the Anti-Housing Discrimination Ordinance and other

7

COMPLAINT

TRA1104

related housing laws;

c.  Dedicated parking spaces and storage on the Property for the tenants that reasonably accommodate their disabilities.

2.  Actual damages suffered by Marti Browning and Julia Browning according to proof;

3.  Statutory damages in the amount up to $10,000.00 for each unlawful act;

4.  Punitive damages;

5.  Investigative costs;

6.  Attorneys' fees;

7.  Costs of suit; and

8.  Other relief that the Court deems proper.

Dated: March 3, 2016

MARSHA JONES MOUTRIE
City Attorney

By: _Gary Rhoades_
GARY RHOADES
Deputy City Attorney

Attorneys for plaintiff
CITY OF SANTA MONICA

**COMPLAINT DEEMED VERIFIED PURSUANT TO C.C.P. §446.**

Dave E. Abad
Julia M. Adams
Chris P. Alexander
Jonathan D. Alvanos
R. Scott Andrews
A. Gary Arakelian
Helaine S. Ashton
Abrahim M. Bagheri
Shawn K. Bankson
Leanne E. Barbat
Taylor S. Baumann
Lori D. Bolander
Eric M. Bray
Justin A. Brewer
Richard L. Brown
Anthony W. Burton
Judy Y. Chiang
Calvin Clements III
Michaelene H. Cody

Patricia A. Coyne
Shelley M. Crawford
Lynn N. Dover
Chris J. Evans
Rebecca J. Fortune
Eduardo Garcia
Paul L. Goodwin
Eli A. Gordon
Susan E. Greek
Alejandra Mendez Hall
Melissa M. Hernandez
Matthew J. Hogan
Adrienne R. Kelly
Kareem M. Khalidy
Roy S. Kim
Ted Kimball
Danielle T. Kussler
Susan E. Lamson
Kenneth E. Lange

Susan J. Lein
Efren A. Limbag
James R. McKinley
James O. McLaughlin
Craig D. McMahon
Steven J. Mehlman
Stephen J. Modafferi
Kristin D. Molloy
Lyra D. Myers
D. Patrick O'Laughlin
Abel Ortiz
Richard A. Ostrow
Lisa K. Padilla
Christine M. Relph
Kirt Ritbjerg
Daniel Riley
Ashley N. Rossetto
Karl P. Schlecht
Kenneth D. Schnur

Charles Scott
Daniel R. Segnit
Sherman Shew
Puneet K. Singh
Cynthia D. Stelzer
Jamie J. Sternberg
Wendy St. John
Mahesh Subramanian
Robert C. Thorn
Patricia H. Tirey
Tiffany D. Truong
Salvinaz Turadzhikyan
Gary D. Urie
Dana R. Wares
Jessica S. Weisman
David C. Williamson
Robert H. Winter, Jr.

LAW OFFICES OF

# Kimball, Tirey & St. John LLP

2040 Main Street, Suite 500
Irvine, California  92614
Telephone:  (949) 748-6321
Facsimile:  (949) 502-5665
www.kts-law.com

May 19, 2016

**Jonathan D. Alvanos, Attorney at Law**
Business Real Estate Group
E-mail:  jonathan.alvanos @kts-law.com

**VIA ELECTRONIC MAIL**

**Travelers Insurance**
**Attn: Marie H. Viado**
**PO Box 8106**
**Walnut Creek, CA 94596-9939**
**Email: MVIADO@travelers.com**

|  | | |
|---|---|---|
| Re: | Our Client: | **Kathy Golshani, Cecil McNabb, and Brida Properties LLC** |
| | Insured: | **Brida Properties LLC** |
| | Policy: | **680-6F285163-15-42** |
| | Claim No.: | **E5Q5171** |
| | Case Name: | ***City of Santa Monica v. McNabb, et. al.*** |
| | Case No. | **SC125490** |

To Whom It May Concern:

Our office represents Cecil McNabb, Kathy Golshani, and Brida Properties LLC as personal counsel in the above-referenced matter. Our clients own and/or manage certain real property located at 1123 17th Street, Santa Monica, CA (the "Property"). The Plaintiff in this matter is the City of Santa Monica who represents tenants at the Property.

By this letter, Cecil McNabb, Kathy Golshani, and Brida Properties LLC request that Travelers Insurance ("Travelers") defend and indemnify them with respect to claims asserted in this action.

We hereby tender the defense and indemnification of this matter to you under all potentially applicable coverages of the policy in place during the relevant time periods described in the Complaint, which is attached hereto, as well as any other policies that name Cecil McNabb, Kathy Golshani, and Brida Properties LLC as an insureds, additional insureds or named insureds.

As you know, Brida Properties LLC is entitled to an immediate, 100% complete and conflict-free defense from Travelers. *Presley Homes, Inc. v. American States Insurance Company* (2001) 90 Cal.App.4th 571. Please contact me at your earliest convenience to discuss our tender and Travelers fulfillment of its defense and indemnification obligations to Cecil McNabb, Kathy Golshani, and Brida Properties LLC.

May 19, 2016
Claim No. E5Q5171
p.2

In the event that Travelers elects to provide a defense with a reservation of rights, please be advised that our client exercises its right to independent counsel of its own choosing, to be paid for by Travelers pursuant to the authority in the case of *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.*, (1984) 162 Ca.App.3d 358 and California *Civil Code* § 2860. In the event of such a reservation of rights, our client elects to designate the Law Offices of Kimball, Tirey & St. John LLP as its independent counsel.

Please advise our office promptly, and within 15 days as required by California *Insurance Code* § 790.03(h), how Travelers intends to proceed with respect to this demand. If you contend that this notice of demand is inadequate or defective, please let our office know immediately, and advise us why you believe this demand is inadequate and/or defective. For assistance in obtaining additional documentation supporting this tender, please do not hesitate to contact me.

We thank you very much for your anticipated cooperation and assistance in this matter. I look forward to hearing from and working with you to resolve this matter efficiently and cost effectively.

Very Truly Yours,

KIMBALL, TIREY & ST. JOHN LLP

Jonathan D. Alvanos
Attorney at Law

JDA
KTS Matter no: 16-3150412



Melissa Skulrak
Claim Professional
Travelers Casualty Insurance Company of America
General Liability, Southern California
(909) 612-3636 Phone
(866) 557-1197 Fax
P.O. Box 6511
Diamond Bar, CA 91765-8511
mskulrak@travelers.com

**CERTIFIED MAIL**

August 10, 2016

Brida Properties, LLC
1722 Westwood Blvd Ste. 207
Los Angeles, CA, 90024
Attn: Cecil McNabb

Re:    *City of Santa Monica  v. Brida, LLC, et al*

| | |
|---|---|
| Court: | Los Angeles Superior |
| Case Number: | SC125490 |
| Claim Number: | E5Q5171 |
| Insured: | Brida Properties, LLC |
| Plaintiff: | City of Santa Monica |
| Defendants: | Brida, LLC; Cecil McNabb and Kathy Golshani |
| Policy Number: | 680-6F285163-15-42 |
| Effective Dates: | 03/06/2015 to 03/06/2016 |
| Date of Loss: | 02/01/2016 |
| Loss Location: | 1123 17th St., Santa Monica, CA 90403 |
| Issuing Company: | Travelers Casualty Insurance Company of America |

Dear Ms. McNabb:

In response to your tender of this matter to Travelers Casualty Insurance Company Of America ("Travelers") under 680-6F285163-15-42's commercial general liability policy we have conducted an investigation into the facts of this matter and the applicable policy. Based on our investigation, it is Travelers' position that there is no potential for coverage for this claim under the Travelers policy. As such, Travelers is declining all coverage obligation, both defense and indemnity, for this claim based upon the following conclusions:

- There is no "property damage" arising out of an "occurrence" as defined by the policy.

TRA1126

- There is no "bodily injury" arising out of an "occurrence" as defined by the policy.
- There is not an "occurrence" as defined by the policy.
- There is a policy endorsement excluding "bodily injury" and "personal injury" arising from discrimination.
- There is no "personal injury" or "advertising injury" alleged by the plaintiff as defined by the policy.

We realize you may dispute all or some of the allegations in this matter. By discussing these allegations, Travelers does not mean to imply that any of them are true. However, Travelers must refer to the allegations in determining any obligation it may have to you under the policy concerning this claim.

The case concerns a residential rental property owned by defendants, Cecil McNabb and Brida, LLC and managed by Kathy Golshani. Marti Browning and Julia Browning are tenants at the property, residing in unit #6. The Brownings filed a complaint with the City of Santa Monica alleging harassment, discrimination and violation of the Unruh Civil Rights Act by the defendants based upon Julia Browning's disability.

The following Causes of Action have been pled:

1. Tenant Harassment
2. Violation of the Housing Anti-Discrimination Ordinance
3. Unruh Civil Rights
4. Injunctive Relief

Your policy, number 680-6F285163-15-42 with effective dates 03/06/2015 to 03/06/2016, includes the CG 00 01 10 01 COMMERCIAL GENERAL LIABILITY COV FORM; CG D4 71 02 09 AMEND COVERAGE B - PERS & ADV INJURY, CG D2 56 11 03 AMENDMENT OF COVERAGE, CG D1 42 01 99 EXCLUSION – DISCRIMINATION. The insuring agreement of this form reads in relevant part, as follows:

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage"  only if:
   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2) The "bodily injury" or "property damage" occurs during the policy period; and

   (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

***

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

***

Your policy defines "bodily injury", "occurrence", "personal and advertising injury" and "property damage" as follows:

3. "Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" (as amended by CG D4 71 01 15) means "Personal and advertising injury" means "personal injury" or "advertising injury".

"Advertising injury":

**a.** Means injury, other than "personal injury", caused by one or more of the following offenses:

**(1)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

**(2)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

    **(a)** Appropriates a person's name, voice photograph or likeness;
    **(b)** Unreasonably places a person in a false light; or
    **(c)** Discloses information about a person's private life; or

**(3)** Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

"Personal injury"

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

**(1)** False arrest, detention or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

**(5)** Oral or written publication, including publication by electronic means, of material that:

**(a)** Appropriates a person's name, voice, photograph or likeness;
**(b)** Unreasonably places a person in a false light; or
**(c)** Discloses information about a person's private life.

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

17. "Property damage" (as amended by CG D2 56 11 03) means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence that caused it.

"Property damage" does not include loss of or damage to "electronic media and

records".

\*\*\*

It is the position of Travelers that there is no coverage under Coverage **A** of your policy. The plaintiffs make no allegations of "bodily injury" or "property damage" as a result of an "occurrence" as those terms are defined in the policy. Plaintiffs' allegations are that they were discriminated against, discrimination is not an accidental event. In addition, intentional or not, discrimination is specifically excluded by the endorsement below.

\*\*\*

It is the position of Travelers that there is no coverage under Coverage **B** of the policy. The plaintiff makes no allegations of "personal injury" and "advertising injury" as those terms are defined by the policy, and thus there is no coverage under this section of the policy.

\*\*\*

In the event there were any covered claims under Coverage **A** or Coverage **B**, which there are not, the exclusion added to the policy by CG D1 42 01 99 would further preclude coverage.

**CG D1 42 01 99, EXCLUSION – DISCRIMINATION** states as follows:

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PROVISIONS**

1. **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** – is amended by adding the following additional exclusion:

   (This Insurance does not apply to:)

   "Bodily injury" resulting from or as a consequence of discrimination, whether intentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

2. **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY –** is amended by adding the following exclusion:

   (This Insurance does not apply to:)

   "Personal injury" resulting from or as a consequence of discrimination, whether intentional, based upon a person's sex, sexual preference, marital status, race, creed,

religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

The Discrimination Exclusion Endorsement would preclude any coverage under Coverage **A** or Coverage **B** for any claims resulting from allegations of discrimination. The allegations by Marti Browning and Julia Browning appear to be solely related to discrimination.

***

Because there is no coverage under the policy, Travelers' will be unable to provide you with a defense or indemnity in this matter. Please note that there may be other terms, conditions and exclusions in the policy that apply to this claim. Reference to some of those terms, conditions and exclusions in this letter is not intended to waive or estop Travelers' from raising other terms, conditions and exclusions that may be applicable. Travelers' expressly reserves all of its rights under the policy. Neither tis letter nor any past or future conduct by Travelers regarding this claim shall, modify, limit, estop or waive any of Travelers' rights.

Travelers' position on this matter is based on the information presently available to us. If you have any further information that you feel would be relevant to our coverage determination, please forward that information to me for our consideration. Additionally, if an amended complaint is served in this matter, please forward it to us immediately for our consideration as such amendments can affect our obligations to you under the policy. We will carefully consider any information that you provide.

In accordance with Section 2695.7(b) 3 of the California Insurance Regulations, if you believe your claim was wrongfully denied or rejected, you have the right to have this matter reviewed by the California Department of Insurance located at:

California Department of Insurance
Claims Service Bureau
300 S. Spring Street, 11th Floor
Los Angeles, California 90013

The above information is advisory only, and is not intended to either encourage or discourage you from contacting the California Department of Insurance. If you elect to send any correspondence regarding our position concerning coverage for this claim, we ask that you please forward us copies of all such correspondence.

Sincerely,

Melissa Skulrak
Travelers Casualty Insurance Company of America

cc:

Julianna

National Insurance Solutions

9400 Topanga Canyon Blvd

Chatsworth, CA 91311

cc:

Jonathan Alvanos

Kimball, Tirey & St. John LLP

2040 Main Street, Suite 500

Irvine, California 92614

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 20 2016

Sherri R. Carter, Executive Officer/Clerk
By: _____, Deputy

1  MARSHA JONES MOUTRIE
   City Attorney
2  ADAM RADINSKY, Bar No. 126208
   GARY RHOADES, Bar No. 166149
3  Deputy City Attorneys
   1685 Main Street, Room 310
4  Santa Monica, California 90401
   Telephone: (310) 458-8336
5  Facsimile: (310) 395-6727

*Exempt from filing fee pursuant
to Government Code §6103*

6

7  Attorneys for Plaintiff
   CITY OF SANTA MONICA

8

9          SUPERIOR COURT OF THE STATE OF CALIFORNIA

10               FOR THE COUNTY OF LOS ANGELES

11

12  CITY OF SANTA MONICA,              CASE NO.: SC125490

13          Plaintiff,                 Honorable Craig O. Karlan

14      v.                             **FIRST AMENDED COMPLAINT**

15  CECIL MCNABB, KATHY GOLSHANI,      (Tenant Harassment and Housing
    BRIDA LLC, and DOES 1-10,          Discrimination, Santa Monica Municipal
16                                     Code sections 4.56.020 and 4.28.030;
            Defendants.                California Civil Code section 51)
17

18

19

20                        **INTRODUCTION**

21      1.      The defendants are Santa Monica landlords who have tried to disrupt the

22  already challenging daily routine of a mother taking care of her severely developmentally

23  disabled daughter. The daughter is quadriplegic with cerebral palsy and intractable epilepsy,

24  and she requires special care in the transfer of herself and wheelchair in a ramp-equipped

25  van. The landlords' sudden actions, including an attempt to stop an innocuous but much

26  needed fifteen-minute transfer of the daughter to the accessible van in the owners' carport,

27  are transparently intended to force the mother and daughter out of their longtime and rent-

28  controlled home so that the landlords can double the rent.

                                      1

2.      Under the landlords' harassment campaign this year, they have threatened the mother and daughter with eviction and other sanctions if the tenants did any one of three things: 1) continue to use an adjacent parking space and driveway once a week for fifteen minutes to make a safe transfer for Julia Browning (in her wheelchair) into the ramp-equipped van; 2) fail to remove from a storage area adjacent to their parking space a two-hundred pound lift device that moves wheelchairs up and down stairs, particularly from the carport; and, 3) in a new rule suddenly imposed this year, fail to move their vehicle from their own parking space on Friday afternoons, the very day the switch occurs.

3.      This lawsuit arises from the defendants' proactive harassment of the tenants as well as their refusal to grant a disabled tenant reasonable accommodations. The City of Santa Monica brings this case pursuant to the Tenant Harassment Ordinance, Santa Monica Municipal Code sections 4.56.010-4.56.040 ("the THO") and the Housing Anti-Discrimination Ordinance, section t28.030 ("the HADO"), and California Civil Code section 51. The City seeks injunctive relief; actual, statutory, and punitive damages; and attorneys' fees and costs.

## PARTIES

4.      The City is a municipal corporation and a California charter city. The City has standing to bring this action pursuant to Santa Monica Municipal Code sections 4.56.040(b) and (c); section 4.28.070; and California Civil Code section 52(c).

5.      The City is informed and believes and on that basis alleges that the defendant and landlord Cecil McNabb is a Los Angeles County resident doing business as Brida LLC in Los Angeles County. McNabb also manages the subject property. To the extent that he is an agent of Brida, he performed the acts of harassment and discrimination described below wrongfully and with bad faith.

6.      The City is informed and believes and on that basis alleges that the defendant and landlord Kathy Golshani is a Los Angeles County resident who manages the subject Property on behalf of Brida LLC and Cecil McNabb. To the extent that she is an agent of

Brida, he performed the acts of harassment and discrimination described below wrongfully
and with bad faith.

7.     The City is informed and believes and on that basis alleges that the defendant
Brida, LLC is a California limited liability company doing business in Los Angeles County.

8.     The City is informed and believes and on that basis alleges that at all times
described below, each of the defendants was the agent and employee of each of the other
defendants, and in doing the things alleged was acting within the course and scope of that
agency and employment.

## FACTUAL BACKGROUND

9.     This case concerns a residential rental property located at 1123 17th Street in
the City of Santa Monica, California ("the Property"). At all times relevant to this lawsuit,
the Property was owned by defendants Cecil McNabb and Brida LLC and managed by Kathy
Golshani and Cecil McNabb. At all times relevant to this lawsuit, the defendants were
"landlords" with respect to the Property pursuant to Santa Monica Municipal Code sections
4.56.010(c) and 4.56.020. As a landlord with a Santa Monica business license, each
defendant also operated a "business establishment" under California Civil Code section
51(b).

10.     The subject rental unit at the Property, Unit 6, was a "controlled rental unit"
pursuant to the Santa Monica Rent Control laws, City Charter sections 1800 et seq.; and
"rental housing unit" pursuant to Santa Monica Municipal Code sections 4.56.010(f) and
4.56.020.

11.     Marti Browning and Julia Browning are "tenants" at the Property within the
meaning of Santa Monica Municipal Code sections 4.56.010(g) and 4.56.020. At all times
relevant to this lawsuit, their units at the Property are "rental housing units" within the
meaning of Santa Monica Municipal Code sections 4.56.010(f) and 4.56.020.

12.     Julia Browning is a tenant with disabilities within the meaning of S.M.M.C.
section 4.28.030(i) and California Civil Code sections 51(c)(l) and (3). Moreover, Julia's

3

TRA1244

disabilities are severe: Julia has a genetic condition that has caused severe neurological deficits including but not limited to intellectual disability, quadriplegia, cerebral palsy, and intractable epilepsy. She is unable to expressively communicate and is completely reliant on her family and caregivers for all activities of daily living. Because of these severe disabilities, she also requires the use of oxygen and a wheelchair.

13.     Marti Browning and her daughter Julia have lived at the Property since 1999. They live in a rent-controlled two-bedroom unit and due to the length of their tenancy and the rent control law, their monthly rent is very low in relation to comparable market-rate units in the same area.

## ACTS OF HARASSMENT

14.     The defendants were aware of Julia Browning's conditions described in Paragraph 12 and of the relatively low rent paid by the Brownings. They performed the following acts with a bad faith to harass, vex and annoy the tenants in order to get them vacate their units:

(1)     In February 2016, the defendants ordered Julia's parents to stop using the adjacent parking spot and driveway to make a fifteen-minute transfer of Julia to a ramp-equipped van for Julia's wheelchair. This transfer had occurred without incident and with the neighbors' permission for 14 months. The transfer prohibited by the defendants is necessary for Julia Browning to use and enjoy her dwelling. Supported with a letter from their doctor which made the obvious connection that Julia Browning's disabilities the need for this transfer, the Brownings submitted to the defendants a reasonable accommodation from this order, the request going to the defendants. The defendants refused to grant the request.

(2)     Despite medical documentation from Ms. Browning, defendants also in February 2016 ordered Ms. Browning to remove a heavy (at least 200 pounds) device that helps the family move Julia and her wheelchair safely up and down the carport

4

TRA1245

stairs. Ms. Browning has stored the device in front of her parking space-the obvious place to keep such a device-for at least eight years. Supported with a letter from their doctor, the Brownings submitted to the defendants a reasonable accommodation from this order. The defendants refused to grant the request.

(3)     In the middle of discussions about the family's need to make the parking space switch and transfer on Fridays, on Friday, February 12, 2016 Defendants suddenly implemented a new rule that all vehicles had to be removed from the parking garage for three hours every Friday afternoon.

(4)     On or about February 19, 2016, Defendant caused the Brownings' hot water to be shut off for four days.

15.     All the acts described above were in violation of the California Unruh Act, California Fair Employment and Housing Act, and the City of Santa Monica's Housing Anti-Discrimination Ordinance.

## ACTS OF DISCRIMINATION

16.     In February of 2016, the defendants ordered the Brownings to stop using the adjacent parking spot and driveway to make a fifteen-minute transfer of Julia to a ramp-equipped vehicle for Julia's wheelchair. Supported with a letter from their doctor, the Brownings requested a reasonable accommodation from this order. The defendants refused to grant the request even though the transfer has occurred without incident and with the neighbor's permission for 14 months and even though the transfer is required for Julia Browning to be able to use and enjoy her dwelling.

17.     Despite medical documentation from Ms. Browning, defendants also ordered Ms. Browning to remove a heavy (at least 200 pounds) device that helps the family move Julia and her wheelchair safely up and down the carport stairs. Supported with a letter from their doctor, the Brownings requested a reasonable accommodation from this order. The defendants refused to grant the request even though the Brownings have stored the device in

5

front of her parking space-the obvious place to keep such a device-for at least eight years. As Julia Browning needs the device to get to her dwelling, it is necessary for her to use and enjoy her dwelling.

18.     In the middle of discussions about the family's need to make the parking space switch and transfer on Fridays, Defendants suddenly implemented a new rule that all vehicles had to be removed from the parking garage for three hours every Friday afternoon. Banning vehicles from the garage makes it extremely difficult to move Julia Browning and her wheelchair as the Brownings are forced to get her all the way out to the street.

19.     All the acts described above were in violation of the California Unruh Act, California Fair Employment and Housing Act, and the City of Santa Monica's Housing Anti-Discrimination Ordinance.

20.     As the direct and proximate result of the defendant's wrongful acts described above, Marti Browning, Julia Browning, and the City suffered actual damages in an amount according to proof.

### FIRST CAUSE OF ACTION
### (Tenant Harassment)

21.     The City incorporates and re-alleges the allegations of paragraphs 1 through 20.

22.     The acts of the defendants described above constitute violations of the THO as follows:

a.     They interrupted, terminated or failed to provide housing services required by contract or by State, County or local housing, health or safety laws, in violation of Santa Monica Municipal Code section 4.56.020(a).

b.     They violated city and state fair housing laws that prohibit discrimination against a tenant with a disability, in violation of S.M.M.C. section 4.56.020(f).

6

23.    For each act of wrongful harassment, the defendants are liable for all of the remedies established in Santa Monica Municipal Code section 4.56.040.

24.    Pursuant to Santa Monica Municipal Code section 4.56.040(d), the defendants are liable for each separate act in violation of the Harassment Ordinance, for the actual damages suffered or for statutory damages in the sum often thousand dollars, whichever is greater; and for the City's attorneys' fees and costs.

25.    The court may award punitive damages pursuant to Santa Monica Municipal Code section 4.56.040(d). This is an appropriate case for punitive damages because, among other things, the defendants' actions were deliberate, willful, and malicious. The actions continued even after attempts at intervention by the Santa Monica City Attorney's Office in which that office, among other things, provided the Defendant additional information about the tenants' needs for accommodations.

### SECOND CAUSE OF ACTION
### (Housing Anti-Discrimination Ordinance)

26.    The City incorporates and realleges the allegations of paragraphs 1 through 25.

27.    The acts of the defendants described above constitute violations of the HADO because they refused to make or provide reasonable accommodations necessary for their disabled tenants in violation of Santa Monica Municipal Code §4.28.030(g).

28.    For each act of wrongful discrimination, the defendants are liable for all of the remedies established in Santa Monica Municipal Code sections 4.28.060 and 4.28.070.

### THIRD CAUSE OF ACTION
### (Unruh Civil Rights Act)

29.    The City incorporates and realleges the allegations of paragraphs I through 28.

30.    The acts of the defendants described above constitute violations of the Unruh Civil Rights Act as they intentionally refused to make or provide reasonable accommodations necessary for their disabled tenants in violation of California Civil Code

FIRST AMENDED COMPLAINT

TRA1248

section 51(b).

31.    For each act of wrongful discrimination, the defendants are liable for all of the remedies established in California Civil Code section 52.

### FOURTH CAUSE OF ACTION
### (Injunctive Relief)

32.    The City incorporates and realleges the allegations of paragraphs 1 through 31.

33.    Unless the defendants are enjoined from the alleged misconduct, the current and future tenants at the Property and other Santa Monica buildings owned by the defendants are likely to suffer irreparable injury in the loss of their legal rights as tenants.

34.    The defendants have committed acts, proposed to commit acts, and engaged in a pattern and practice, all of which violated Santa Monica Municipal Code and the California Civil Code. Injunctive relief is expressly authorized by Santa Monica Municipal Code Sections 4.56.040(c) and 4.28.070 along with California Civil Code Section 52.

### PRAYER

The City prays for judgment against the defendants as follows:

1.    Injunctive relief that the Court deems appropriate, including but not limited to:

a.    A prohibition against any future acts by the defendants or their agents that violate the Tenant Harassment Ordinance, the Anti-Housing Discrimination Ordinance, and the California Unruh Act;

b.    Mandated housing training attended by the defendants that covers the Tenant Harassment Ordinance, the Anti-Housing Discrimination Ordinance and other related housing laws;

c.    Dedicated parking spaces and storage on the Property for the tenants that reasonably accommodate their disabilities.

FIRST AMENDED COMPLAINT                                    TRA1249

2.     Actual damages suffered by Marti Browning and Julia Browning according to proof;

3.     Statutory damages in the amount up to $10,000.00 for each unlawful act;

4.     Punitive damages;

5.     Investigative costs;

6.     Attorneys' fees;

7.     Costs of suit; and

8.     Other relief that the Court deems proper.

DATED:  July 20, 2016

MARSHA JONES MOUTRIE
City Attorney

By: _____
GARY RHOADES
Deputy City Attorney

Attorneys for Plaintiff CITY OF SANTA MONICA

**COMPLAINT DEEMED VERIFIED PURSUANT TO C.C.P. §446**

TRA1250

1

## PROOF OF SERVICE BY MAIL

2

3      STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4

5          I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1685 Main Street, Santa Monica, California 90401.

6

7          On **July 20, 2016** I served the foregoing document described as **FIRST AMENDED COMPLAINT** on the interested parties in this action by placing **XX a true copy** /_ the original thereof enclosed in a sealed envelope addressed as follows:

8

9

10                    Jonathan D. Alvanos, Esq.

11                    Kimball, Tirey & St. John LLP
               2040 Main Street, Suite 500

12                    Irvine, CA 92614

13

14

15

16

17         **XX (BY MAIL)**  I am readily familiar with the City's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at **Santa Monica**, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

18

19

20         Executed on **July 20, 2016** at Santa Monica, California.

21

22         **(State)**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24

25                         DEBORAH FREEMAN

26

27

28

TRA1251

**TRAVELERS**

One Tower Square, Hartford, Connecticut  06183

---

**RENEWAL CERTIFICATE**

**COMMON POLICY DECLARATIONS**
APARTMENT PAC
BUSINESS: 5-12 UNITS PER

**POLICY NO.:** 680-6F285163-16-42
**ISSUE DATE:** 01/21/2016

**INSURING COMPANY:**
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

1. **NAMED INSURED AND MAILING ADDRESS:**
   BRIDA PROPERTIES LLC
   1722 WESTWOOD BLVD
   STE 207
   LOS ANGELES CA 90024

2. **POLICY PERIOD:** From 03/06/2016 to 03/06/2017 12:01 A.M. Standard Time at your mailing address.

3. **LOCATIONS:**

| PREM. NO. | BLDG. NO. | OCCUPANCY | ADDRESS (same as Mailing Address unless specified otherwise) |
|---|---|---|---|
| 001 | 001 | 5-12 UNITS PER | 1123 17TH ST |
| | | | SANTA MONICA                    CA  90403 |

4. **COVERAGE PARTS AND SUPPLEMENTS FORMING PART OF THIS POLICY AND INSURING COMPANIES**

| COVERAGE PARTS AND SUPPLEMENTS | INSURING COMPANY |
|---|---|
| Businessowners Coverage Part | ACJ |

5. The COMPLETE POLICY consists of this declarations and all other declarations, and the forms and endorse - ments for which symbol numbers are attached on a separate listing.

6. **SUPPLEMENTAL POLICIES:**  Each of the following is a separate policy containing its complete provisions.

| POLICY | POLICY NUMBER | INSURING COMPANY |
|---|---|---|

DIRECT BILL

7. **PREMIUM SUMMARY:**

| | | |
|---|---|---|
| Provisional Premium | $ | 2,363.00 |
| Due at Inception | $ | |
| Due at Each | $ | |

NAME AND ADDRESS OF AGENT OR BROKER        COUNTERSIGNED BY:

NATIONAL INS SOLUTIONS            CHK04
9400 TOPANGA CANYON BLVD STE 201

_____
Authorized Representative

CHATSWORTH                      CA 91311-5757
**IL T0 25 08 01**   (Page 1 of  01)
Office: BREA/LA/ORANGE CA  DOWN

DATE: 01/21/2016

**TRA1254**

# TRAVELERS

One Tower Square, Hartford, Connecticut 06183

**BUSINESSOWNERS COVERAGE PART DECLARATIONS**

APARTMENT PAC

**POLICY NO.:** 680-6F285163-16-42
**ISSUE DATE:** 01/21/2016

INSURING COMPANY:
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

POLICY PERIOD:
From 03-06-16 to 03-06-17 12:01 A.M. Standard Time at your mailing address

FORM OF BUSINESS:  LIMITED LIAB CORP

COVERAGES AND LIMITS OF INSURANCE:  Insurance applies only to an item for which a "limit" or the word "included" is shown.

### COMMERCIAL GENERAL LIABILITY COVERAGE

| OCCURRENCE FORM | LIMITS OF INSURANCE |
|---|---|
| General Aggregate (except Products-Completed Operations Limit) | $ 2,000,000 |
| Products-completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Premises Rented to You | $ 300,000 |
| Medical Payments Limit (any one person) | $ 5,000 |

### BUSINESSOWNERS PROPERTY COVERAGE

DEDUCTIBLE AMOUNT:  Businessowners Property Coverage: $ 1,000 per occurrence.
                    Building Glass:                  $ 1,000 per occurrence.

BUSINESS INCOME/EXTRA EXPENSE LIMIT:   Actual loss for 12 consecutive months

Period of Restoration-Time Period:     Immediately

ADDITIONAL COVERAGE:
    Fine Arts:                  $        25,000

Other additional coverages apply and may be changed by an endorsement.   Please read the policy.

SPECIAL PROVISIONS:

## COMMERCIAL GENERAL LIABILITY COVERAGE IS SUBJECT TO A GENERAL AGGREGATE LIMIT

MP T0 01 02 05   (Page 1 of 3)

TRA1255

BUSINESSOWNERS PROPERTY COVERAGE

**PREMISES LOCATION NO.:** 001        **BUILDING NO.:** 001

| COVERAGE | | LIMIT OF INSURANCE | VALUATION | COINSURANCE | INFLATION GUARD |
|---|---|---|---|---|---|
| BUILDING | $ | 819,880 | RCP* | N/A | 0.0% |
| *Replacement Cost Plus | | | | | |
| BUSINESS PERSONAL PROPERTY | $ | 6,180 | RC* | N/A | 0.0% |
| *Replacement Cost | | | | | |

COVERAGE EXTENSIONS:

| | | |
|---|---|---|
| Accounts Receivable | $ | 25,000 |
| Valuable Papers | $ | 25,000 |

Other coverage extensions apply and may be changed by an endorsement. Please read the policy.

TRA1256

**POLICY NUMBER:** 680-6F285163-16-42

**EFFECTIVE DATE:** 03/06/2016

**ISSUE DATE:** 01/21/2016

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS


|   | IL T0 19 02 05 | COMMON POLICY DECLARATIONS |
| * | IL T0 25 08 01 | RENEWAL CERTIFICATE |
| * | MP T0 01 02 05 | BUSINESSOWNERS COVERAGE PART DECLARATIONS |
| * | IL T8 01 01 01 | FORMS ENDORSEMENTS AND SCHEDULE NUMBERS |
|   | IL T3 15 09 07 | COMMON POLICY CONDITIONS |

**BUSINESSOWNERS**

|   | MP T1 30 02 05 | TABLE OF CONTENTS - BUSINESSOWNERS COVERAGE PART - DELUXE PLAN |
|   | MP T1 02 02 05 | BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM |
|   | CP 02 99 11 85 | CANCELLATION CHANGES |
|   | MP T4 89 08 06 | FUNGUS, ROT, BACTERIA AND OTHER CAUSES OF LOSS CHANGES - CALIFORNIA |
|   | MP T5 22 08 07 | CALIFORNIA AMENDATORY PROVISIONS |
| * | MP T3 25 01 15 | FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE |
| * | MP T3 30 02 05 | REPLACEMENT COST PLUS |
|   | MP T3 50 11 06 | EQUIPMENT BREAKDOWN - SERVICE INTERRUPTION LIMITATION |
|   | MP T3 56 02 08 | AMENDATORY PROVISIONS - GREEN BUILDING AND BUSINESS PERSONAL PROP COV ENHANCEMENTS |
| * | MP T1 71 04 09 | BUILDING OWNERS ENDORSEMENT |
| * | MP T3 36 02 05 | EQUIPMENT BREAKDOWN EXCLUSION |
|   | MP T4 90 05 10 | LIMIT OF INS/OCCURRENCE ENDT - CALIFORNIA |
|   | MP T5 08 01 06 | CALIFORNIA CHANGES - REPLACEMENT COST |

**COMMERCIAL GENERAL LIABILITY**

|   | CG T0 34 11 03 | TABLE OF CONTENTS - COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01 10 01 |
|   | CG 00 01 10 01 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
|   | CG D2 37 11 03 | EXCLUSION - REAL ESTATE DEVELOPMENT ACTIVITIES - COMPLETED OPERATIONS |
|   | CG D2 55 11 03 | AMENDMENT OF COVERAGE - POLLUTION |
|   | CG D3 09 11 03 | AMENDATORY ENDR- PRODUCTS-COMPLETED OPERATIONS HAZARD |
|   | CG D4 71 01 15 | AMENDMENT OF COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY |
|   | CG D0 37 04 05 | OTHER INSURANCE - ADDITIONAL INSUREDS |
|   | CG D2 03 12 97 | AMEND - NON CUMULATION OF EACH OCC |
|   | CG D4 13 04 08 | AMEND COVG - POLLUTION-EQUIP EXCEPTION |
| * | MP T1 25 11 03 | HIRED AUTO AND NON-OWNED AUTO LIABILITY |
|   | CG D2 43 01 02 | FUNGI OR BACTERIA EXCLUSION |
|   | CG D2 56 11 03 | AMENDMENT OF COVERAGE - PROPERTY DAMAGE |

* TEXT IN THIS FORM HAS CHANGED, OR THE FORM WAS NOT ON POLICY BEFORE.

**POLICY NUMBER:** 680-6F285163-16-42

**EFFECTIVE DATE:** 03/06/2016

**ISSUE DATE:** 01/21/2016

COMMERCIAL GENERAL LIABILITY (CONTINUED)

| | | |
|---|---|---|
| CG D2 88 11 03 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG D3 26 10 11 | EXCLUSION - UNSOLICITED COMMUNICATION |
| CG D3 56 05 14 | MOBILE EQUIPMENT REDEFINED - EXCLUSION OF VEHICLES SUBJECT TO MOTOR VEHICLE LAWS |
| CG D4 21 07 08 | AMEND CONTRAL LIAB EXCL - EXC TO NAMED INS |
| CG D6 18 10 11 | EXCLUSION - VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS |
| CG D7 46 01 15 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION |
| CG D0 76 06 93 | EXCLUSION - LEAD |
| CG D1 42 01 99 | EXCLUSION - DISCRIMINATION |
| CG D2 42 01 02 | EXCLUSION - WAR |
| CG T4 78 02 90 | EXCLUSION - ASBESTOS |

MULTIPLE SUBLINE ENDORSEMENTS

| | | |
|---|---|---|
| CG T3 33 11 03 | LIMITATION WHEN TWO OR MORE POLICIES APPLY |
| CG 32 34 01 05 | CALIFORNIA CHANGES |

INTERLINE ENDORSEMENTS

| | | | |
|---|---|---|---|
| * | IL T4 12 03 15 | AMNDT COMMON POLICY COND-PROHIBITED COVG |
| * | IL T4 14 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| | IL T3 82 05 13 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| | IL 00 21 09 08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| | IL 01 04 09 07 | CALIFORNIA CHANGES |
| | IL 02 70 09 12 | CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL |

POLICY HOLDER NOTICES

| | | | |
|---|---|---|---|
| * | PN MP 11 03 03 | IMP NOTCE TO POL HOLDR FUNGUS ROT BACT AND OTR CAS OF LOSS CHNG MP T4 89 MP T4 91 |

* TEXT IN THIS FORM HAS CHANGED, OR THE FORM WAS NOT ON POLICY BEFORE.

# BUSINESSOWNERS

TRA1259

# BUSINESSOWNERS

# TRAVELERS

One Tower Square, Hartford, Connecticut 06183

**MORTGAGEES:**

**POLICY NO.:** 680-6F285163-16-42
**ISSUE DATE:** 01/21/2016

| PREMISES LOCATION NUMBER | BUILDING NUMBER | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|---|
| 001 | 001 | JP MORGAN CHASE BANK, NA AND ITS SUCCESSORS AND ASSIGNS PO BOX 9005 ATTM: TX1-1711 COPPELL                TX 75019 |

**TRA1261**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE PART

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA") establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). "Act Of Terrorism" is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is established by TRIA and is a percentage of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA). Through 2020, that percentage is established by TRIA as follows:

85% with respect to such Insured Losses occurring in calendar year 2015.

84% with respect to such Insured Losses occurring in calendar year 2016.

83% with respect to such Insured Losses occurring in calendar year 2017.

82% with respect to such Insured Losses occurring in calendar year 2018.

81% with respect to such Insured Losses occurring in calendar year 2019.

80% with respect to such Insured Losses occurring in calendar year 2020.

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

The charge for such Insured Losses under this Coverage Part is included in the Coverage Part premium. The charge for such Insured Losses that has been included for this Coverage Part is indicated below, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA:

- 4% of your total Businessowners Coverage Part premium if your primary location is in a Designated City (as listed below).

- 2% of your total Businessowners Coverage Part premium if your primary location is not in a Designated City (as listed below).

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**TRA1262**

BUSINESSOWNERS

| Designated Cities are: | | | |
|---|---|---|---|
| Albuquerque, NM | El Paso, TX | Miami, FL | San Diego, CA |
| Atlanta, GA | Fort Worth, TX | Milwaukee, WI | San Antonio, TX |
| Austin, TX | Fresno, CA | Minneapolis, MN | San Francisco, CA |
| Baltimore, MD | Honolulu, HI | Nashville-Davidson, TN | San Jose, CA |
| Boston, MA | Houston, TX | New Orleans, LA | Seattle, WA |
| Charlotte, NC | Indianapolis, IN | New York, NY | St. Louis, MO |
| Chicago, IL | Jacksonville, FL | Oakland, CA | Tucson, AZ |
| Cleveland, OH | Kansas City, MO | Oklahoma City, OK | Tulsa, OK |
| Colorado Springs, CO | Las Vegas, NV | Omaha, NE | Virginia Beach, VA |
| Columbus, OH | Long Beach, CA | Philadelphia, PA | Washington, DC |
| Dallas, TX | Los Angeles, CA | Phoenix, AZ | Wichita, KS |
| Denver, CO | Memphis, TN | Portland, OR | |
| Detroit, MI | Mesa, AZ | Sacramento, CA | |

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**MP T3 25 01 15**

**TRA1263**

BUSINESSOWNERS
ISSUE DATE: 01/21/2016

POLICY NUMBER: 680-6F285163-16-42

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REPLACEMENT COST PLUS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

**A. SCHEDULE**

| Premises Location Number | Building Number |
| --- | --- |
| ALL | ALL |

**B.** The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:

**1.** For the described premises shown in the schedule above, Paragraph **E.4.e.(1)** is replaced by the following, but only with respect to building valuation:

**(1)** At replacement Cost (without deduction for depreciation).

**(a)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(b)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

**(c)** We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs **(i)**, **(ii)** or **(iii)** subject to Paragraph **(d)** below:

**(i)** The cost to replace, on the same premises, the lost or damaged property with other property:

**a)** Of comparable design, material and quality; and

**b)** Used for the same purpose;

**(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

**(iii)** Up to 125% of the Limit of Insurance shown in the Declarations for Building at the described premises.

If a building is rebuilt at a new premises, the cost described in Paragraph **(i)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**(d)** The cost of repair or replacement does not include the increased cost

BUSINESSOWNERS

attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(e)** Paragraph **F.10.** does not apply to buildings at the described premises shown in the schedule above.

**2.** The following condition is added with respect to this endorsement:

**REPORTING PROVISIONS**

You agree to report to us, within 90 days of the start of construction or acquisition, the full replacement cost of:

**a.** Additions to or alterations of the above buildings;

**b.** Personal property owned by you to maintain or service the above building or premises; and

**c.** Permanently attached fixtures, machinery and equipment.

If you do not do so and the total replacement cost of such unreported items is more than $10,000, any loss occurring thereafter will be adjusted with a penalty equal to the percentage that the total replacement cost of the unreported items bears to the total replacement cost of the building at the time of loss.

 Copyright, The Travelers Indemnity Company, 2004 **MP T3 30 02 05**
**TRA1265**

BUSINESSOWNERS

POLICY NUMBER:  **680-6F285163-16-42**

ISSUE DATE: **01/21/2016**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUILDING OWNERS ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

**SCHEDULE**

| Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. |
|---|---|---|---|---|---|---|---|---|---|
| 001 | 001 | | | | | | | | |

Schedule of Limits of Insurance under Paragraph **A.2.** of this endorsement:

$      **100,000** in any one occurrence at each described premises

$      **250,000** in any one occurrence regardless of the number of described premises involved

**A.** The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:

1. The limit applicable to the **Additional Coverage – Debris Removal**, as referenced in Paragraph **A.6.c.(4)**, is increased from $25,000 to $50,000.

2. Paragraph **A.6.k.(6)** is replaced by the following:

   **(6)** The most we will pay for loss under this Additional Coverage for the total of all coverages described in Paragraph **(1)** above in any one occurrence is the amount shown in the above Schedule, at each described premises. But, we will not pay more than the amount shown in the above Schedule, in any one occurrence regardless of the number of described premises involved.

3. The following **Additional Coverages** are added:

   **a. Lessor's Leasehold Interest**

   **(1)** We will pay for the cost of Covered Leasehold Interest you sustain due to the cancellation of lease contracts by your tenants. The cancellation must result from direct physical loss of or damage to your Covered Property at the premises described in the Schedule above caused by or resulting from a Covered Cause of Loss during the term of the policy.

   **(2)** Covered Leasehold Interest:

   **(a)** Means the difference between the:

   **(i)** Rent you were collecting at the described premises prior to the loss; and

   **(ii)** "Rental Value" of the described premises after loss or damage has been repaired or rebuilt; and

   **(b)** Does not mean refunds or rebates of:

   **(i)** Prepaid rent;

   **(ii)** Security or other deposits made by your tenants; or

   **(iii)** Insurance, taxes or other payments made on your behalf by tenants.

   **(3)** The most we will pay under this Additional Coverage is the smallest of:

   **(a)** Your Covered Leasehold Interest for the 12 months immediately

Copyright, The Travelers Indemnity Company, 2009

TRA1266

BUSINESSOWNERS

following the "Period of Restoration" plus the 60 days of Extended Business Income but ending with the normal expiration date of each cancelled lease; or

**(b)** $25,000 for all Covered Leasehold Interest of all your tenants canceling their leases arising out of an occurrence at a described premises.

**b. Tenant Move Back Expenses**

**(1)** We will reimburse you for expenses you pay for Covered Move Back Costs of your tenants who temporarily vacate a portion of the building at the premises described in the Schedule above. The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct physical loss of or damage to your Covered Property caused by or resulting from a Covered Cause of Loss during the term of the policy. The move back must take place within 60 days after the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

**(2)** Covered Move Back Costs means only documented, reasonable and necessary costs of:

**(a)** Packing, insuring and transporting business personal property;

**(b)** Re-establishing electric utility and communication services, less refunds from discontinued services;

**(c)** Assembling and setting up fixtures and equipment; or

**(d)** Unpacking and reshelving stock and supplies.

**(3)** If your tenants have valid and collectible insurance for Covered Move Back Costs, we will pay only for the amount of Covered Move Back Costs in excess of the amount payable from such other insurance.

**(4)** The most we will pay under this Additional Coverage is $25,000 for the sum of all such expenses arising out of an occurrence at a described premises.

**c. Utility Services – Direct Damage**

**(1)** We will pay for loss of or damage to Covered Property caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises:

**(a)** "Water Supply Services";

**(b)** "Communication Supply Services"; or

**(c)** "Power Supply Services".

**(2)** The most we will pay for loss or damage under this Additional Coverage in any one occurrence is $10,000 at each described premises.

**(3)** Payments under this Additional Coverage are subject to and not in addition to the applicable Limit of Insurance.

**4.** The limit applicable to the **Coverage Extension – Ordinance or Law – Increased "Period of Restoration"** is increased by $50,000.

   Copyright, The Travelers Indemnity Company, 2009   **MP T1 71 04 09**
**TRA1267**

BUSINESSOWNERS
ISSUE DATE: 01/21/2016

POLICY NUMBER: 680-6F285163-16-42

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

**A. SCHEDULE**

| Premises Location No. | Building No. |
| --- | --- |
| 001 | 001 |

**B.** The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:

**1.** Paragraph **A.7.i.** is deleted for each of the described premises shown in the schedule above.

# GENERAL LIABILITY

TRA1269

# GENERAL LIABILITY

TRA1270

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: 680-6F285163-16-42

ISSUE DATE: 01/21/2016

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HIRED AUTO AND NONOWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| COVERAGE | ADDITIONAL PREMIUM |
|---|---|
| Hired Auto Liability | $ INCLUDED |
| Nonowned Auto Liability | $ INCLUDED |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**PROVISIONS**

**A. COVERAGE**

If a premium charge is shown in the SCHEDULE above, the insurance provided under **Section I – Coverage A – Bodily Injury And Property Damage Liability** applies to "bodily injury" and "property damage" arising out of the maintenance or use of a "hired auto" or "nonowned auto". Maintenance or use of a "nonowned auto" includes test driving in connection with an "auto business".

**B. EXCLUSIONS**

With respect to the insurance provided by this endorsement:

1. The exclusions, under **Section I – Coverage A – Bodily Injury And Property Damage Liability**, other than exclusions **a., b., d., e., f.** and **i.** and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

   **a.** "Bodily injury" to:

      **(1)** Any fellow "employee" of the insured arising out of and in the course of:

         **(a)** Employment by the insured; or

         **(b)** Performing duties related to the conduct of the insured's business.

   **b.** "Property damage" to:

      **(1)** Property owned or being transported by, or rented or loaned to the insured; or

      **(2)** Property in the care, custody or control of the insured.

**C. WHO IS AN INSURED**

**Section II – Who Is An Insured** is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

1. You;

2. Anyone else including any partner or "executive officer" of yours while using with your permission a "hired auto" or a "nonowned auto" except:

   **a.** The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner or lessee of a "nonowned auto" or any agent or "employee" of any such owner or lessee;

   **b.** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household;

   **c.** Your "employee" if the covered "auto" is leased, hired or rented by him or her or a member of his or her household under a lease or rental agreement for a period of 180 days or more;

   **d.** Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household;

   **e.** Any partner or "executive officer" with respect to any "auto" leased or rented to such partner or officer or a member of his or her household under a lease or rental agreement for a period of 180 days or more;

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**TRA1271**

COMMERCIAL GENERAL LIABILITY

**f.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

**g.** Anyone other than your "employees", partners, a lessee or borrower or any of their "employees", while moving property to or from a "hired auto" or a "nonowned auto"; or

**3.** Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under **1.** or **2.** above.

**D. AMENDED DEFINITIONS**

The Definition of "insured contract" of **Section V – Definitions** is amended by the addition of the following exceptions to paragraph **f.**:

Paragraph **f.** does not include that part of any contract or agreement:

**(4)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(5)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**E. ADDITIONAL DEFINITIONS**

**Section V – Definitions** is amended by the addition of the following definitions:

**1.** "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

**2.** "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include:

**a.** Any "auto" you lease, hire or rent under a lease or rental agreement for a period of 180 days or more, or

**b.** Any "auto" you lease, hire, rent or borrow from any of your "employees", partners, stockholders, or members of their households.

**3.** "Nonowned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business at the time of an "occurrence". This includes "autos" owned by your "employees" or partners or members of their households but only while being used in the course and scope of your business at the time of an "occurrence".

If you are a sole proprietor, "nonowned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business or personal affairs at the time of an "occurrence".

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**MP T1 25 11 03**

**TRA1272**

# INTERLINE ENDORSEMENTS

TRA1273

# INTERLINE ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COMMON POLICY CONDITIONS – PROHIBITED COVERAGE – UNLICENSED INSURANCE AND TRADE OR ECONOMIC SANCTIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGES INCLUDED IN THIS POLICY

The following is added to the Common Policy Conditions:

**Prohibited Coverage – Unlicensed Insurance**

1. With respect to loss sustained by any insured, or loss to any property, located in a country or jurisdiction in which we are not licensed to provide this insurance, this insurance does not apply to the extent that insuring such loss would violate the laws or regulations of such country or jurisdiction.

2. We do not assume responsibility for:

    a. The payment of any fine, fee, penalty or other charge that may be imposed on any person or organization in any country or jurisdiction because we are not licensed to provide insurance in such country or jurisdiction; or

    b. The furnishing of certificates or other evidence of insurance in any country or jurisdiction in which we are not licensed to provide insurance.

**Prohibited Coverage – Trade Or Economic Sanctions**

We will provide coverage for any loss, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose us or any of our affiliated or parent companies to:

1. Any trade or economic s anction under any law or regulation of the United States of America; or

2. Any other applicable trade or economic sanction, prohibition or restriction.

 © 2014 The Travelers Indemnity Company. All rights reserved.
**TRA1275**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
> CYBERFIRST LIABILITY COVERAGE
> DELUXE PROPERTY COVERAGE PART
> EMPLOYEE BENEFITS LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EMPLOYMENT PRACTICES LIABILITY* WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT COVERAGE PART
> ENVIRONMENTAL HAZARD POLICY
> EQUIPMENT BREAKDOWN COVERAGE PART
> EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
> LAW ENFORCEMENT LIABILITY COVERAGE PART
> LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND INFORMATION SECURITY LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF TRANSPORTATION
> TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
> Any other Coverage Part or Coverage Form included in this policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended

The following is added to this policy. This provision can limit coverage for any loss arising out of a "certified act of terrorism" if such loss is otherwise covered by this policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of "certified acts of terrorism" in another endorsement to this policy.

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our insurer deductible under "TRIA", we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of "TRIA", to be an act of terrorism pursuant to "TRIA". The criteria contained in "TRIA" for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to "TRIA"; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002 as amended.

# POLICYHOLDER NOTICES

TRA1277

# POLICYHOLDER NOTICES

TRA1278



# IMPORTANT NOTICE TO POLICYHOLDERS

## FUNGUS, ROT, BACTERIA AND OTHER CAUSES OF LOSS CHANGES
### MP T4 89          MP T4 91

**NO COVERAGE IS PROVIDED BY THIS SUMMARY NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS IN YOUR POLICY. YOU SHOULD READ YOUR POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, <u>THE PROVISIONS OF THE POLICY SHALL PREVAIL.</u>**

### PLEASE READ THIS NOTICE CAREFULLY.

Dear Policyholder:

This notice is intended to make you aware that we are adding an endorsement to your policy, and the following changes apply:

- Loss caused by "fungus" (which is newly defined and encompasses mold), wet and dry rot and bacteria is excluded unless the "fungus", wet rot, dry rot and bacteria results from fire, lightning, or another specified cause of loss. When the "fungus", wet rot, dry rot and bacteria results from a specified cause of loss, other than fire or lightning:
  - Direct damage loss is subject to a $15,000 annual aggregate limit.
  - Loss of Business Income and/or Extra Expense (when such coverage is included in your policy) caused by a business interruption attributable to the "fungus", wet rot, dry rot and bacteria is covered subject to a 30 day period of restoration. The 30 days do not have to be consecutive days. If the "fungus", wet rot, dry rot or bacteria prolongs a business interruption that is attributable to other damage, the loss/expense sustained during the delay is covered for up to 30 days (regardless of when the delay occurs during the period of restoration and not necessarily consecutive days).
- Loss due to the presence or condensation of humidity, moisture or vapor that occurs over a period of 14 days or more is excluded.
- Any Ordinance or Law coverage or Ordinance or Law – Increased Period of Restoration coverage included in the policy is amended to specifically exclude loss due to the enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot, dry rot or bacteria, or requires you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "fungus", wet rot, dry rot or bacteria.

If you have any questions about your insurance program, please contact your Agent.



# IMPORTANT INFORMATION FOR MASTER PAC POLICYHOLDERS

Dear Policyholder:

Enclosed is your Travelers Master Pac Renewal Certificate. An asterisk on the Listing of Forms, Endorsements and Schedule Numbers, IL T8 01, indicates forms that are included with this year's renewal. Any forms previously attached to your policy that are not shown on that listing no longer apply.

Please put the Certificate and the attached forms with your policy as soon as possible. If you have misplaced your policy, please contact your agent for a copy.

**TRA1280**

**POLICY OVERPRINT**

POLICY NUMBER: 680-6F285163-16-42
ISSUE DATE: 01/21/2016
RATER: SD

EFFECTIVE DATE: 03/06/2016
EXPIRATION DATE: 03/06/2017

INSURED'S NAME: BRIDA PROPERTIES LLC

New/Renewal: R                Special Code:              Watch File:
Solicitor Code:               Program Code: 10C          Survey Code:
SAI: 5896B1195               Paymode:    L              Reinsurance: f
MSI: I                       Audit Frequency: N          DOWNSTREAM
Rating Mode:                 Responsibility: I           Pro Rata Factor: 1.000

**PREMIUM SUMMARY**

| S.B. | ACCT. MO. | EFF. DATE | PREMIUM .1500 | |
|------|-----------|-----------|---------------|---|
| 20/03 | 03-06-16 | 2,363.00 | | 2,363.00 |

2,363.00

RENEWING 680-006F285163--15

**Type Code**                     **Type Code Description**

OFFICE: BREA/LA/ORANGE CA  189
PRODUCER NAME: NATIONAL INS SOLUTIONS          CHK04                    **TRA1281**
Page 1  of 1

POLICY NUMBER: 680-6F285163-16-42                                    ISSUE DATE: 01/21/2016

ANALYST WORKSHEET          **TRAVELERS RATING MODIFICATION REPORT**

| NAMED INSURED<br>BRIDA PROPERTIES LLC | AGENCY<br>NATIONAL INS SOLUTIONS<br>9400 TOPANGA CANYON BLVD STE 201 | CHK04 |
|---|---|---|
| EFFECTIVE DATE: 03-06-16 | CHATSWORTH                          CA 91311-5757 | |
| RISK CHARACTERISTICS MODIFICATION<br>Document reasons | ENTER A CREDIT AS A NEGATIVE DECIMAL<br>ENTER A DEBIT AS A POSITIVE DECIMAL<br>EXAMPLE: 15% CREDIT = -.15 | |

| | MASTER PAC |
|---|---|
| LINE CODES | MP |
| A.  REASONS:<br>Risk Characteristic Mod - Risk has favorable characteristics not contemplated in Travelers Express rate plans - ADDITIONAL SAFETY MEASURES APPLIED IN TARGETED AREAS | -0.90 |
| B.   Agents Commission Contribution | |
| Office  189 | |
| Analyst Signature | |
| CL Manager Signature | |

MP T0 57 10 11

**TRA1282**

**TRAVELERS**ᴊ                        One Tower Square, Hartford, Connecticut  06183

**OTHER INTEREST**                                        **CHANGE ENDORSEMENT**
**INSURING COMPANY:**
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

Named Insured:  BRIDA PROPERTIES LLC

Policy Number:  680-6F285163-16-42
Policy Effective Date:  03/06/2016
Policy Expiration Date:  03/06/2017
Issue Date:  02/25/2016
Premium $      NIL

Effective from  03/06/16  at the time of day the policy becomes effective.

THIS INSURANCE IS AMENDED AS FOLLOWS:

ON THE BUSINESSOWNERS COVERAGE PART DECLARATIONS (MORTGAGEES), THE
FOLLOWING MORTGAGE HOLDER(S) IS/ARE CHANGED:
PREM            BLDG        MORTGAGEE
LOC. NO.        NO.         NAME AND MAILING ADDRESS

1               1              JP MORGAN CHASE BANK, NA
                               AND ITS SUCCESSORS AND ASSIGNS
                               ATTN: TX1-0013
                               P.O BOX 9110
                               COPPELL, TX 75019

ADDITIONAL INSUREDS ARE ADDED TO THE POLICY AS PROVIDED UNDER THE
ATTACHED ENDORSEMENT(S):

ON THE BUSINESSOWNERS COVERAGE PART DECLARATIONS (LOSS PAYEE), THE
FOLLOWING LOSS PAYEE(S) IS/ARE ADDED:
PREM            BLDG        LOSS PAYEE
LOC. NO.        NO.         NAME AND MAILING ADDRESS

1               1           JPMORGAN CHASE BANK,N.A
                            AND ITS SUCCESSORS AND ASSIGNS
                            ATTN: TX1-0013
                            P.O BOX 9110
                            COPPELL, TX 75019

UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART, WHO IS AN INSURED IS
CHANGED TO INCLUDE MORTGAGEE, ASSIGNEE, SUCCESSOR, OR RECEIVER AS PROVIDED
UNDER THE ATTACHED ENDORSEMENT.

ADDITIONAL INSUREDS ARE ADDED TO THE POLICY AS PROVIDED UNDER THE

NAME AND ADDRESS OF AGENT OR BROKER            Countersigned by

NATIONAL INS SOLUTIONS
9400 TOPANGA CANYON BLVD STE 201
                                               _____
                                                     Authorized Representative
CHATSWORTH             CA  91311-5757
                                               DATE: 02/25/2016

IL T0 07 09 87  (Page  1  of 3  )                      Office:  BREA/LA/ORANGE CA
                                                                        **TRA1283**

**TRAVELERS**

One Tower Square, Hartford, Connecticut  06183

**CHANGE ENDORSEMENT**

**Policy Number:** 680-6F285163-16-42
**Policy Effective Date:** 03/06/2016
**Policy Expiration Date:** 03/06/2017
**Issue Date:** 02/25/2016

ATTACHED ENDORSEMENT(S):


CG D3 25



THE FOLLOWING FORMS AND/OR ENDORSEMENTS IS/ARE INCLUDED WITH THIS CHANGE.
THESE FORMS ARE ADDED TO THE POLICY OR REPLACE FORMS ALREADY EXISTING
ON THE POLICY:
MP T0 20 02 05

IL T0 07 09 87
CG D3 25 01 04
CP 12 18 06 95
MP T0 25 02 05

**IL T0 07 09 87**  (Page  2  of  3 )
Office:  BREA/LA/ORANGE CA
Producer Name: NATIONAL INS SOLUTIONS

**TRA1284**

**TRA1285**

**POLICY NUMBER:** 680-6F285163-16-42

**EFFECTIVE DATE:** 03/06/2016

**ISSUE DATE:** 02/25/2016


LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS


| | | |
|---|---|---|
| * | IL T0 07 09 87 | CHANGE ENDORSEMENT |
| | IL T0 19 02 05 | COMMON POLICY DECLARATIONS |
| | IL T0 25 08 01 | RENEWAL CERTIFICATE |
| | MP T0 01 02 05 | BUSINESSOWNERS COVERAGE PART DECLARATIONS |
| * | IL T8 01 01 01 | FORMS ENDORSEMENTS AND SCHEDULE NUMBERS |
| | IL T3 15 09 07 | COMMON POLICY CONDITIONS |


BUSINESSOWNERS

| | | |
|---|---|---|
| * | MP T0 25 02 05 | SPECIAL PROVISIONS - LOSS PAYEE |
| * | CP 12 18 06 95 | LOSS PAYABLE PROVISIONS |
| | MP T1 30 02 05 | TABLE OF CONTENTS - BUSINESSOWNERS COVERAGE PART - DELUXE PLAN |
| | MP T1 02 02 05 | BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM |
| | CP 02 99 11 85 | CANCELLATION CHANGES |
| | MP T4 89 08 06 | FUNGUS, ROT, BACTERIA AND OTHER CAUSES OF LOSS CHANGES - CALIFORNIA |
| | MP T5 22 08 07 | CALIFORNIA AMENDATORY PROVISIONS |
| | MP T3 25 01 15 | FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE |
| | MP T3 30 02 05 | REPLACEMENT COST PLUS |
| | MP T5 50 11 06 | EQUIPMENT BREAKDOWN - SERVICE INTERRUPTION LIMITATION |
| | MP T3 56 02 08 | AMENDATORY PROVISIONS - GREEN BUILDING AND BUSINESS PERSONAL PROP COV ENHANCEMENTS |
| | MP T1 71 04 09 | BUILDING OWNERS ENDORSEMENT |
| | MP T3 36 02 05 | EQUIPMENT BREAKDOWN EXCLUSION |
| | MP T4 90 05 10 | LIMIT OF INS/OCCURRENCE ENDT - CALIFORNIA |
| | MP T5 08 01 06 | CALIFORNIA CHANGES - REPLACEMENT COST |


COMMERCIAL GENERAL LIABILITY

| | | |
|---|---|---|
| | CG T0 34 11 03 | TABLE OF CONTENTS - COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01 10 01 |
| | CG 00 01 10 01 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| | CG D2 37 11 03 | EXCLUSION - REAL ESTATE DEVELOPMENT ACTIVITIES - COMPLETED OPERATIONS |
| | CG D2 55 11 03 | AMENDMENT OF COVERAGE - POLLUTION |
| | CG D3 09 11 03 | AMENDATORY ENDR- PRODUCTS-COMPLETED OPERATIONS HAZARD |
| * | CG D3 25 01 04 | ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE, SUCCESSOR OR RECEIVER |
| | CG D4 71 01 15 | AMENDMENT OF COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY |
| | CG D0 37 04 05 | OTHER INSURANCE - ADDITIONAL INSUREDS |


* TEXT IN THIS FORM HAS CHANGED, OR THE FORM WAS NOT ON POLICY BEFORE.

**POLICY NUMBER:**  680-6F285163-16-42

**EFFECTIVE DATE:**  03/06/2016

**ISSUE DATE:**  02/25/2016

COMMERCIAL GENERAL LIABILITY (CONTINUED)

| | |
|---|---|
| CG D2 03 12 97 | AMEND - NON CUMULATION OF EACH OCC |
| CG D4 13 04 08 | AMEND COVG - POLLUTION-EQUIP EXCEPTION |
| MP T1 25 11 03 | HIRED AUTO AND NON-OWNED AUTO LIABILITY |
| CG D2 43 01 02 | FUNGI OR BACTERIA EXCLUSION |
| CG D2 56 11 03 | AMENDMENT OF COVERAGE - PROPERTY DAMAGE |
| CG D2 88 11 03 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG D3 26 10 11 | EXCLUSION - UNSOLICITED COMMUNICATION |
| CG D3 56 05 14 | MOBILE EQUIPMENT REDEFINED - EXCLUSION OF VEHICLES SUBJECT TO MOTOR VEHICLE LAWS |
| CG D4 21 07 08 | AMEND CONTRAL LIAB EXCL - EXC TO NAMED INS |
| CG D6 18 10 11 | EXCLUSION - VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS |
| CG D7 46 01 15 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION |
| CG D0 76 06 93 | EXCLUSION - LEAD |
| CG D1 42 01 99 | EXCLUSION - DISCRIMINATION |
| CG D2 42 01 02 | EXCLUSION - WAR |
| CG T4 78 02 90 | EXCLUSION - ASBESTOS |

MULTIPLE SUBLINE ENDORSEMENTS

| | |
|---|---|
| CG T3 33 11 03 | LIMITATION WHEN TWO OR MORE POLICIES APPLY |
| CG 32 34 01 05 | CALIFORNIA CHANGES |

INTERLINE ENDORSEMENTS

| | |
|---|---|
| IL T4 12 03 15 | AMNDT COMMON POLICY COND-PROHIBITED COVG |
| IL T4 14 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IL T3 82 05 13 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| IL 00 21 09 08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL 01 04 09 07 | CALIFORNIA CHANGES |
| IL 02 70 09 12 | CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL |

POLICY HOLDER NOTICES

| | |
|---|---|
| PN MP 11 03 03 | IMP NOTCE TO POL HOLDR FUNGUS ROT BACT AND OTR CAS OF LOSS CHNG MP T4 89 MP T4 91 |

* TEXT IN THIS FORM HAS CHANGED, OR THE FORM WAS NOT ON POLICY BEFORE.

# BUSINESSOWNERS

TRA1288

# BUSINESSOWNERS

# *TRAVELERS* ☂J

One Tower Square, Hartford, Connecticut  06183

---

**MORTGAGEES:**

**POLICY NO.:**  680-6F285163-16-42
**ISSUE DATE:**  02/25/2016

| PREMISES LOCATION NUMBER | BUILDING NUMBER | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|---|
| 001 | 001 | JP MORGAN CHASE BANK, NA<br>AND ITS SUCCESSORS AND ASSIGNS<br>ATTN: TX1-0013<br>P.O BOX 9110<br>COPPELL                    TX 75019 |

**TRA1290**

# TRAVELERS

One Tower Square, Hartford, Connecticut  06183

**SPECIAL PROVISIONS:**
**LOSS PAYEE:**

**POLICY NO.:**  680-6F285163-16-42
**ISSUE DATE:** 02/25/2016

| PREMISES LOCATION NUMBER | BUILDING NUMBER | LOSS PAYEE NAME AND MAILING ADDRESS |
|---|---|---|
| 001 | 001 | JPMORGAN CHASE BANK,N.A<br>AND ITS SUCCESSORS AND ASSIGNS<br>ATTN: TX1-0013<br>P.O BOX 9110<br>COPPELL                          TX 75019 |

MP T0 01 02 05     (Page 1  of 1  )

**TRA1291**

COMMERCIAL PROPERTY
ISSUE DATE:  02/25/2016

POLICY NUMBER:  680-6F285163-16-42

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Prem. No. | Bldg. No. |
|---|---|
| 001 | 001 |

| Description of Property | Loss Payee (Name & Address) |
|---|---|
| BUSINESS PERSONAL PROPERTY | JPMORGAN CHASE BANK,N.A AND ITS SUCCESSORS AND ASSIGNS ATTN: TX1-0013 P.O BOX 9110 COPPELL                    TX 75019 |

|  | Loss Payable | Lenders Loss Payable | Contract of Sale |
|---|---|---|---|
| **Provisions Applicable:** | X | | |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an **"X"** in the Schedule:

**B. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**C. LENDER'S LOSS PAYABLE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts:

**b.** A contract for deed:

**c.** Bills of lading:

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property

**c.** If we deny your claim because of your acts or because you have failed to comply with terms of the Coverage Part the Loss Payee will still have the right to receive loss payment if the Loss Payee:

CP 12 18 06 95          Copyright, ISO Commercial Risk Services, Inc., 1994          Page 1 of 2

**TRA1292**

COMMERCIAL PROPERTY

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so:

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so: and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay: and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the dept plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium: or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. CONTRACT OF SALE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interest may appear.

**3.** The following is added to the OTHER INSURANCE Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

Copyright, ISO Commercial Risk Services, Inc., 1994

**CP 12 18 06 95**
**TRA1293**

# GENERAL LIABILITY

# GENERAL LIABILITY

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: **680-6F285163-16-42**                    ISSUE DATE: **02/25/2016**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, SUCCESSOR OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**NAME OF PERSON OR ORGANIZATION:**
**JPMORGAN CHASE BANK,N.A,AND ITS SUCCESSORS AND ASSIGNS**


**ATTN: TX1-0013**
**P.O BOX 9110**
**COPPELL                    TX 75019**


**DESIGNATION OF PREMISES:**
**1123 17TH ST**
**SANTA MONICA              CA  90403**


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

**1.** WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, successor or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

**2.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

CHANGE OVERPRINT /CHANGE SLIP    **POLICY NUMBER:** 680-6F285163-16-42
**ISSUE DATE:** 02/25/2016
**RATER:** VR
**CHANGE EFFECTIVE DATE:**   03-06-16
**EFFECTIVE DATE:** 03/06/2016
**EXPIRATION DATE:** 03/06/2017

**INSURED'S NAME:** BRIDA PROPERTIES LLC

| | | |
|---|---|---|
| **New/Renewal:** R | **Special Code:** | **Watch File:** |
| **Solicitor Code:** | **Program Code:** 10C | **Survey Code:** |
| **SAI:** 5896B1195 | **Paymode:**    L | **Reinsurance:** f |
| **MSI:** I | **Audit Frequency:** N | DOWNSTREAM |
| **Rating Mode:** | **Responsibility:** I | **Pro Rata Factor:** 1.000 |

## PREMIUM SUMMARY

| S.B. | ACCT. MO. | EFF. DATE | PREMIUM |
|---|---|---|---|
| | | | .1500 |
| | 20/03 | 03-06-16 | 0.00 |

**Type Code**                    **Type Code Description**

**OFFICE:** BREA/LA/ORANGE CA  189
**PRODUCER NAME:** NATIONAL INS SOLUTIONS              CHK04                    **TRA1297**
Page 1  of 1

**TRAVELERS J**

NATIONAL INS SOLUTIONS
9400 TOPANGA CANYON BLVD
STE 201
CHATSWORTH CA  91311

Date of this Notice                      09/21/16
Account No.   5896B1195

Please contact your agent
with any questions, future
policy changes and all
address changes.

BRIDA PROPERTIES LLC
1722 WESTWOOD BLVD #207
LOS ANGELES CA  90024

NATIONAL INS SOLUTIONS
(866) 647-4222

**Insuring Company:** TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

---

# REINSTATEMENT NOTICE

We are pleased to tell you that your policy has been reinstated.

| POLICYHOLDER | POLICY IDENTIFICATION NUMBER |
|---|---|
| BRIDA PROPERTIES LLC | 6F285163 680 |
| TYPE OF INSURANCE | POLICY PERIOD |
| Commercial Package | 03/06/16 To 03/06/17 |

Receipt of funds dishonored upon presentment is not a valid means of
reinstatement.  Reinstatement will only occur when all conditions have
been met.  If these conditions have not been met the reinstatement will
be null and void.


We understand that circumstances will occasionally cause a payment to
arrive late, but please be aware that if future payments don't reach us
on time, WE MAY REQUIRE FULL PAYMENT OF THE OUTSTANDING BALANCE ON YOUR
POLICY.  Please contact your Travelers              representative if you
have any questions concerning this notice. Thank you for your business.

648826R     2016265     8724     189 0CHK04



Travelers Casualty Insurance Company of America
P.O. Box 6511
Diamond Bar, CA 91765
Telephone:  (909) 612-3308
Fax:  (866) 557-1197

June 8, 2017


Kathy Golshani
Brida Properties, LLC
1722 Westwood Blvd
Los Angeles, CA 90024


RE:    ***City of Santa Monica v. McNab, et al.***
          Court:                  Superior Court of Los Angeles, California
          Case Number:      SC125490
          Claim Number:    E7G7996
          Insured:              Brida Properties, LLC
          Policy Number:     680-6F285163
          Effective dates:      March 6, 2015 to March 6, 2016
                                      renewed through March 6, 2018
          Issuing Company:  Travelers Casualty Insurance Company of America


Dear Ms. Golshani:

This letter is to confirm our recent conversations in regards to the response of Travelers Casualty Insurance Company of America ("Travelers") to the tender of this matter under the general liability policy of Brida Properties, LLC ("Brida"). Travelers will agree to provide a defense in the Cross complaint filed in this lawsuit. However, this defense is subject to a reservation of rights as the policy may not cover some or all of the damages sought and the Travelers will not indemnify Brida or the other defendants, for uncovered damages. The policy does not cover the complaint filed by the City of Santa Monica.

In order to explain the coverage issues, Travelers must discuss the cross complainants' allegations. Travelers understands that these allegations are unproven facts and may be untrue, incomplete or embellished, and the Travelers does not conclude that any allegation is true. No statement in this letter should be construed otherwise.

The original lawsuit filed was done by the City of Santa Monica. We have a copy of the First Amended complaint, filed on July 20, 2016. This complaint alleges tenant harassment and housing discrimination, along with violations of City and state code sections. It is claimed that the defendants, Cecil McNab, yourself and Brida Properties, LLC, have attempted to disrupt the routine of a mother taking care of her severely disabled quadriplegic daughter to harass them and

1

**TRA1350**

force them out of their rent-controlled home in order to double the rent.  The complaint alleges that the defendants have harassed the by threatening them with eviction due to the manner in which they transfer the daughter from the unit to the car, removal of certain items being stored in the garage area, and failure to move their vehicle from the garage area during a designated time period.  It is noted that the defendants are attempting to harass the tenants and refusing to grant reasonable accommodations.  The City seeks injunctive relief, actual, statutory and punitive damages, along with attorney fees and costs.  ]

We understand that this matter has been in litigation for some time and you have engaged counsel for the defense.  However, in the course of this litigation, the tenants, Julia Browning and Martha Browning, have now filed a cross complaint against the original defendants.  It appears this was in response to the cross complaint filed against them by the defendants.  This cross complaint is dated February 22, 2017 and has also been submitted for potential coverage under the policy.  The plaintiffs claim to have been defendants since September 1, 1999 at 1123 17th Street #6, Santa Monica, CA 90403.  Both of the individual defendants, Cecil McNab and yourself are alleged to have some ownership interest in the property and/or been involved as the property manager at some period of time.  We understand from you that Mr. McNab was the first property manager until you stepped into that role that you currently still hold at this time.

The cross complainants allege that they park their car in a neighbor's space briefly while the father loads Julia Browning into the car once a week.  They claim that since 2014, they have been storing the oxygen tanks used for Julia in their assigned carport area.  This was allegedly permitted by the prior owner.  The cross complainants allege that they have been subject to harassment and intimidation from the landlords, along with unilateral elimination of services and amenities, trespass into the units, threats of eviction, and delays in providing habitable premises.  Complaints in May of 2014 in regards to the carpet were made by the tenants.  The carpet was not repaired and the tenant, Marti Browning, was allegedly verbally abused by the management.  In November or December of 2015, the landlord allegedly restricted use of the balcony, claiming only specific types of planters could be present.  During that same period, the tenant claims the landlord requested their dog be removed from the premises.  The oven became defective during this time and there was a delay to repair it for 8 months.  Unauthorized entry was made by the landlord in January 2016 allegedly to view the oven, but the tenant claims it was an excuse to view the premises and search for violations for an eviction process.  Pictures were allegedly taken and eviction was threatened.  In February 2016, the father was allegedly told he was not able to transport Julia to the car as he was used to doing.  In November 2016, another complaint was made about the carpet, which was not repaired.  In November 2016, another alleged unauthorized entry was made to the premises to serve papers.  Further wrongful entries were made in January and February of 2017.

The following Causes of Action are pled:

1. Violation of FEHA
2. Violation of Unruh Act
3. Breach of Statutory Warranty of Habitability
4. Breach of Implied Warranty of Habitability
5. Negligence
6. Nuisance
7. Breach of Contract

2

**TRA1351**

    8.  Breach of Covenant of Quiet Enjoyment
    9.  Violation of Santa Monica Rent Control Charter Amendment 1809(a)
    10. Violation of Santa Monica Renta Control Charter Amendment 1809(f)
    11. Violation of Santa Monica Tenant Harassment Ordinance
    12. Violation of Santa Monica Housing Anti-Discrimination Code
    13. Violation of Civil Code 1940.2
    14. Trespass

As a result of the defendant's actions, the plaintiffs seek injunctive relief, general and special damages, statutory damages and penalties under FEHA and Unruh Act, attorney fees, civil penalties, punitive damages, costs and interest.

Travelers issued policy number 680-6F285163 to Brida for the policy period of March 6, 2015 through March 6, 2016, and renewed through the current year to March 6, 2018.    The policies include general liability coverage with a $1,000,000 liability limit for each occurrence and a general aggregate of $2,000,000.  The main coverage form is **CG 00 01 10 01 COMMERCIAL GENERAL LIABILITY COVERAGE FORM**.  The Coverage **A** insuring agreement of this form reads in relevant part, as follows:

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
### 1. Insuring Agreement

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
      …

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period;

      **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.
     ...

The policies define the following terms as follows:

    * * * *

    **3.**  "Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time. (CG D1 86 11 03)

**TRA1352**

\* \* \* \*

**17.** "Property damage" means:
    **a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. (CG D2 56 11 03)

\* \* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \*

The plaintiffs' allegations do not appear to raise any specific claim for "bodily injury" or "property damage" arising from an "occurrence".  This is also true for the cross complainant's allegations. Furthermore, all the allegations state the defendants' actions were intentional in nature, so any injuries arising from any behavior that would not be an "occurrence" or accidental in nature, would not be covered.   Furthermore, any "bodily injury" or "property damage" already known by the insured, prior to the inception of the policy, would not be covered.

The policy also contains the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

4

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \* \*

**j.  Damage To Property**

"Property damage" to:

**(1)**     Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property

\* \* \* \*

**o.  Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

These exclusions confirm the further coverage restrictions in relation to this claim.  There is no coverage for any action on the defendants' behalf done with intent to cause harm, nor is there any coverage for contractual liability or for damages to the insured's property, or for any "bodily injury" arising from any "personal or advertising injury".  Travelers reserves the right to limit or exclude coverage for any actions that would be precluded by these exclusions.

The policies also provides coverage under Coverage **B** for "personal injury" and "advertising injury".  This coverage is described in the same policy form and has the following insuring agreement:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.     Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

\* \* \* \*

**b.**  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The definition of "personal injury" is updated in policy form **CG D4 71 02 09 AMENDMENT OF COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** as follows:

"Personal injury":

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

\* \* \* \*

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

\* \* \* \*

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

As there are allegations of wrongful entry during the policy periods, which may constitute a "personal injury" as defined above, and fall within the scope of Coverage **B**. However, to the extent that cross complainants' claims are not for an offense within the definition of "personal injury" there would be no coverage. In regards to the complaint from the City, there is no wrongful entry as the City is not a tenant and no alleged invasion to them is alleged.

It is also noted that this coverage is subject to the following pertinent exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \* \*

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

Again, as the plaintiffs and cross complainants claim intentional behavior on the part of the defendants, some of them possibly criminal acts, these exclusions are relevant and Travelers reserves its rights in regards to these exclusions.

Furthermore, the policies have the following endorsement, CG D1 42 01 99, EXCLUSION – DISCRIMINATION states as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

6

1. **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** – is amended by adding the following additional exclusion:

   (This Insurance does not apply to:)

   "Bodily injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities or characteristics or condition, or mental capabilities or condition.

2. **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** – is amended by adding the following additional exclusion:

   (This insurance does not apply to:)

   "Personal injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities or characteristics or condition, or mental capabilities or condition.

This endorsement would preclude any coverage under Coverage **A** and Coverage **B** for any claims damages resulting from or as a consequence of discrimination. The plaintiff and cross complainants allege that the defendants' actions were discriminatory in nature, due to their minority status. Any injuries arising from this alleged discrimination would not be covered under the policies.

Finally, it is noted that this lawsuit was filed on July 20, 2016 and was in litigation for some time before it was tendered on April 4, 2017. The conditions of the policy state:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
\* \* \* \*
**2.     Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)**     How, when and where the "occurrence" or offense took place;

        **(2)**     The names and addresses of any injured persons and witnesses; and

        **(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**     If a claim is made or "suit" is brought against any insured, you must:

        **(1)**     Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**     Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.**     You and any other involved insured must:

**TRA1356**

**(1)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)**     Authorize us to obtain records and other information;

**(3)**     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)**     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

To the extent that the defense of this claim is compromised by the late notice to Travelers, all rights are reserved. Furthermore, any claims that fall outside the policy period would not be covered.

Travelers reserves all rights in regards to the defense and indemnification provided in this matter. This includes the right to withdraw from the defense and/or seek reimbursement for the defense of uncovered allegations.

Travelers will reimburse the covered defendants for fees from the date of tender of the lawsuit through the present at the rate incurred to date. It is noted that the lawsuit was tendered on April 4, 2017.

In terms of the defendants, we understand that the lawsuit is being tendered on behalf of all the defendants. There is no coverage for the City's complaint, nor for any cost to pursue the affirmative cross complaint filed by Brida against the tenants. The defense will be provided against the cross defendants, Brida, yourself and Mr. McNab as we understand the individual defendants were property managers and they would be covered under the policy as such.

In light of the coverage issues presented by this lawsuit, Travelers recognizes that its insureds may have the right to retain independent counsel, pursuant to Civil Code section 2860. However, an insured also has the ability to waive this right should they choose.

Pursuant to Civil Code section 2860, an insured may select its own independent counsel, to be paid by the insurer, whenever a "conflict" exists. Such a "conflict" exists where the insurer has reserved rights on a coverage issue and that coverage issue can be controlled by the attorney retained by the insurance company to defend the action.

However, the insurer's obligation to pay for independent counsel is limited to rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions. Any disparity between the independent counsel's actual rate and the rate paid by the insurer to its "panel" counsel is paid by the insured.

Accordingly, if independent counsel is chosen in this matter, Travelers shall pay for such counsel in accordance with the limitations set forth in Civil Code Section 2860. Travelers will pay necessary legal expenses as follows:

**TRA1357**

1. The rates paid by Travelers in the ordinary course of business in the defense of a lawsuit such as this as follows:

   | Partner's | $200/hr |
   |---|---|
   | Paralegals | $ 80/hr |

2. Defense costs include only fees incurred for the defense of the defendant insured in connection with the referenced lawsuit and do not include fees related to coverage matters, corporate matters, the City's original complaint or the affirmative cross complaint against the tenants.

3. Disbursements will be billed at the actual out-of-pocket costs, with no law firm surcharge.

Travelers shall also retain the right to retain separate counsel on the insured's behalf, which may associate in as co-counsel.

Regarding minimum qualifications, Travelers is hereby exercising its right to require that counsel provide information and/or documentation establishing at least five years civil litigation practice, which includes substantial defense experience in the subject at issue in this litigation.  In addition, counsel is to submit a résumé for the law firm, similarly detailing the experience of each attorney and/or paralegal who will work on the file.  Counsel must carry errors and omissions coverage and be prepared to submit documentation of this coverage upon request by Travelers.

We consider it extremely important that counsel provide periodic status reports and that counsel copy the cross defendants on all reports unless otherwise specified.  If for any reason a claim of privilege is asserted concerning information relevant to any coverage dispute, Travelers expects counsel to advise that information is being withheld and identify any documents or information not provided to Travelers by stating in writing its general subject matter.  Travelers reserves its right pursuant to Civil Code Section 2860 to have any claim of privilege reviewed by the court.

We understand you currently have counsel assigned for the defense for all the defendants.  Please advise us as to whether you will continue with this counsel as cumis counsel.  Otherwise, the cross defendants can waive their right to independent counsel and have Travelers assign counsel for them.  We can move forward to do this and a Waiver form is enclosed for the signature of the defendants.  We will need a form signed for each defendant.

However, please be advised that the retention and payment of any defense counsel on an insured's behalf is under a reservation of rights, and that Travelers retains the right to withdraw from this defense and/or limit or deny coverage based upon facts which show there is no coverage under insurance afforded by Travelers, or if a court determined that there is no coverage or duty to defend.

As this lawsuit is venued in an unlimited jurisdiction, there is always a possibility the verdict and judgment may be over and above the policy limits.  Please be advised that Travelers will not be responsible for any settlement or verdict over the policy limits.

TRA1358

Furthermore, the plaintiffs seek to recover punitive damages. Such damages, if awarded, are in the nature of a penalty for alleged willful or intentional acts. It is against public policy in California for an insurance policy to afford coverage for punitive and/or exemplary damages. Therefore, they are not covered under the Travelers policies and we will not indemnify for any punitive damage award. The defendants retain the right to engage their own counsel at their own expense in regards to any uncovered damages or in excess of the policy limits. If they will do so, please advise our office and current defense counsel.

California Code of Regulations, Title 10, Chapter 5, Section 2695.7 (B) (3) requires that we advise you that if you think this claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance. The Department's address is:

>California Department of Insurance
>Consumer Insurance Division
>300 South Spring Street, 11th. Floor
>Los Angeles, CA 90013
>(800) 927-HELP or (213) 897-5961

Should you have any questions about this letter or know of any other matters which you believe Travelers has failed to consider which may impact our coverage opinion, please let us know at your earliest convenience.

Sincerely,
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

*Carol Simmons*
Carol Simmons
Sr. Technical Specialist, Liability
Phone: (909) 612-3308
Fax: (866) 557-1197
CUSIMMON@TRAVELERS.COM


cc: Seeman Holtz P&C Inc
     Cecil McNab

TRA1359

JOSEPH LAWRENCE
City Attorney
ADAM RADINSKY, State Bar No. 126208
adam.radinsky@smgov.net
GARY RHOADES, State Bar No. 166149
gary.rhoades@smgov.net
Deputy City Attorneys
1685 Main Street, Room 310
Santa Monica, California 90401
Telephone: (310) 458-8336
Facsimile: (310) 395-6627

Attorneys for Plaintiff
CITY OF SANTA MONICA

*Exempt from filing fee pursuant to Government Code §6103*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CITY OF SANTA MONICA,<br><br>Plaintiff,<br><br>v.<br><br>CECIL McNABB et al.<br><br>Defendants. | Case No. SC 125490<br><br>Hon. Helen Bendix<br><br>**PLAINTIFF CITY OF SANTA MONICA'S SETTLEMENT CONFERENCE BRIEF**<br><br>Date: June 13, 2017<br>Time: 11:00 a.m.<br>Dept.: 18<br><br>Trial Date: Not yet set |

TRA1495

1

## INTRODUCTION

2   At the heart of this case is a campaign by landlords to force tenants out of their rent-

3   controlled home of eighteen years. Knowing that tenant Marti Browning takes care of her

4   profoundly disabled daughter Julia Browning, Defendant-Landlord Kathi Golshani targeted the

5   Brownings with a series of rule and policy changes related to Julia's disabilities. Golshani has

6   also shown that she can't stop herself when it comes to unnecessary and intimidating

7   confrontations at the Brownings' home. When Golshani's harassment persisted despite warnings

8   from City Attorney and the Court, Judge Karlan issued restraining orders against her.

9   The City's principal injunctive relief demands in this settlement conference are that all

10   policy changes aimed at the Brownings in 2016 be rescinded and that a reputable property

11   management company be hired as a barrier between Golshani and the Brownings.

12

13

## FACTS

14   Ms. Martha Browning, 51, is a tenant who lives with and takes care of her severely

15   disabled daughter at 1123 17$^h$ Street in Santa Monica, which is a rent-controlled unit owned

16   and managed by Defendants. [Decl. of Martha Browning ¶ 2-3.][1] She works at an architectural

17   firm as a Project Accountant. [Browning Decl. ¶ 3.] Ms. Browning has been an excellent

18   tenant since 1999 with no Three Day Notices in the sixteen years before the Defendants took

19   over. [Browning Decl. ¶ 4, 10.] She also gives back to her community including seven years as

20   a City Commissioner on the City of Santa Monica Disabilities Commission. [Decl. ¶ 4.]

21   Her daughter Julia is blind, nonverbal, and quadriplegic with developmental delays and

22   intractable epilepsy. [Browning Decl. ¶ 5; Exhibit B, letter from UCLA Children's Hospital's

23   Dr. Sankar]. Stress such as arguments and loud voices exacerbates Julia's risk of seizure. [Decl.

24   of Nicole Milton ¶ 4; Browning Decl. ¶ 7.]

25   Due to rent control in Santa Monica and because they have lived continuously in the

26

27   [1] Most exhibits arise from the City's successful application for restraining orders. Exhibit 1 is the First Amended Complaint, Ex. 2 is the pending Preliminary Injunction brief (with Exhibits A-M and declarations), and Ex. 3 is Judge Karlan's order for restraining orders against Golshani.

28

1

**TRA1496**

1   building since 1999, the Brownings' monthly rent for this two-bedroom apartment is $2058.28,

2   well below market value. [Browning Decl. ¶ 9.]  In the fifteen years that the Brownings had the

3   apartment under the previous ownership, they never received a Three Day Notice. [Browning

4   Decl. ¶ 4, 10.] That changed when Defendants began managing the property in late 2015.

5        Since then, there has been a barrage of harassment including false accusations, letters,

6   entries into home, threats and rule changes aimed at the family and Julia' disabilities along with

7   delays in making needed repairs. [Browning Decl. ¶ 11; Exhibit E, letters from Golshani].

8        Here are the key aspects of the harassment campaign:

9        1.    In response to needed repair requests, Golshani told Ms. Browning that Browning

10  was "a nuisance," she and Brida LLC are "not making any money off this building" and so "the

11  repairs are your responsibility." [Browning Decl. ¶ 11a.]  Referring to Julia's severe disabilities,

12  Golshani told Browning, "You should contact the city, they have programs, there are better

13  places for people like you to live." [Browning Decl. ¶ 11b.]

14       2.    Reversing a policy of many years, Golshani suddenly stated that the Browning

15  family could no longer have storage of equipment related to Julia's disability in and below a

16  cabinet next to their parking space; [Browning Decl. ¶ 11c.]

17       3.    In February 2016, Golshani in writing ordered Julia's parents to stop using the

18  adjacent parking spot and driveway to make a fifteen-minute transfer of Julia to a ramp-

19  equipped van for Julia's wheelchair. This transfer had occurred without incident and with the

20  neighbors' permission for 14 months. The transfer prohibited by the defendants is necessary for

21  Julia Browning to use and enjoy her dwelling. Supported with a letter from their doctor which

22  made the obvious connection that Julia Browning's disabilities the need for this transfer, the

23  Brownings submitted to the Defendants a reasonable accommodation from this order, the

24  request going to the defendants. The defendants refused to grant the request. [Browning Decl. ¶

25  11d.; Verified FAC ¶ 14(1); Exhibit E, page 1, the February 23, 2016 letter[2] from Golshani

26

27  ────────────

28  [2]Golshani's February 23, 2016 letter (Ex. E of City's Preliminary Injunction Brief is one of the key exhibits in the case.

1   telling Ms. Browning that she would have to pay for the second parking space.]

2       4.      Despite medical documentation from Ms. Browning, defendants also in February

3   2016 ordered her to remove a heavy device that helps the family move Julia and her wheelchair

4   safely up and down the carport stairs. Ms. Browning had stored the device in front of her

5   parking space. With a letter from their doctor, the Brownings submitted to the defendants a

6   reasonable accommodation from this order, which defendants refused.[Verified FAC ¶ 14(2).]

7       5.      In the middle of discussions about the family's need to make the parking space

8   switch and transfer on Fridays, Defendants suddenly implemented a rule that all cars had to be

9   removed from the garage for three hours every Friday afternoon. [Browning Decl. ¶ 11e.]

10      6.      Sending the CAO a letter with language from an insurance company saying that it

11  is not safe to carry Julia down stairs and therefore the family should move to another building.

12  [Rhoades Decl. ¶ 5; Browning Decl. ¶ 11f.]

13      With this barrage, Martha Browning often felt targeted and harassed. Ms. Golshani has

14  seen Julia in her bed, and so Ms. Browning was understandably shocked and dismayed that

15  Golshani was doing these things after knowing how severely disabled Julia really is. The stress

16  adversely affects Julia and such stress could cause a seizure. [Milton Decl. ¶ 3-4.]

17      The City filed suit on March 3, 2016 [Rhoades Decl. ¶ 3-6.] and there have been several

18  hearings since including a failed Motion to Strike by the Defendants and then two hearings

19  regarding Golshani's conduct pending litigation.[3] On February 14, 2017, the Court granted the

20  City's requests for three injunctions prohibiting Golshani from entering the apartment, blocking

21  the parking space or taking photographs. [Temporary Restraining Order; OSC, Feb. 14, 2017.]

22

23  **DEFENDANTS' CONDUCT IS UNLAWFUL UNDER CITY'S HOUSING LAWS**

24      Based on the documentary evidence alone, the City will prevail on the merits of their

25  claims under the Tenant Harassment Ordinance and Housing Anti-Discrimination Ordinance.

26

27      [3] Please see Exhibit 2, Points & Authorities at page 6-9 for a summary of what Golshani did
28  before and between two court hearings, severe conduct that prompted the restraining orders.

1   Julia's disabilities and the need for her accommodations are well documented [Exh. B;

2   Browning Decl. ¶ 5, ¶ 11] and the defendants cannot prove any hardship (as required under

3   the fair housing laws' reasonable accommodation analysis) in providing them. The City's,

4   California's, and United States' fair housing laws are all violated when the landlord denies a

5   reasonable accommodation request even knowing that a tenant has a disability and that "such

6   accommodation may be necessary to afford a person with a disability equal opportunity to

7   use and enjoy any dwelling." S.M.M.C section 4.28.020 (g); Cal. Gov. Code section

8   12927(c)(1); 42 U.S.C. section 3604(f)(3)(b).

9     The Defendants' only possible defense would be that the accommodations are not

10   reasonable, that the accommodations for parking and storage somehow create an undue burden

11   for the manager. *But that defense is not available in a situation where Golshani inexplicably*

12   *took away parking and storage privileges that had been provided for years without incident.*

13     There is also no question that Julia Browning needs the protection from Golshani's

14   harassment. The restraining orders and the documents from her doctor, caregiver, and mother

15   regarding the threat of seizure under the stress of Golshani's conduct all confirm this.

16     In conclusion, this harassment campaign sets up an unusual and especially egregious

17   reasonable accommodation case. The Brownings never should have been put in the position of

18   suddenly having to ask for several reasonable accommodations—Golshani assessed Julia's

19   situation, saw the disabilities as vulnerabilities, and began a campaign of changes that made it

20   more difficult for the Brownings.

21

22        **RELIEF SOUGHT & SETTLEMENT POSITION**

23     In order to avoid the considerable time and expense of proceeding through trial, the City

24   is willing to compromise and settle this case under the following terms:

25     1. Injunctive Relief: First, as our judge has already recognized with the three TROs, the City

26   City is entitled to an injunction to protect the tenants. The City's Settlement position is that

27   Golshani must agree to a permanent injunction that includes:

28     a. Prohibition against her personally doing any further management of the rental

1  properties or having contact with any tenants by retaining a professional property management

2  company approved by the City for all management functions and tenant relations;

3        b. Restoration of Brownings' parking, storage and balcony amenities and privileges.

4        2. Actual or statutory damages.

5      Golshani and her co-defendants are also liable for actual damages suffered by the tenants

6  or statutory damages of $10,000 for each separate act of harassment or discrimination.  By a

7  conservative estimate, Golshani is responsible for at least seven significant acts of

8  discrimination or harassment before the case was filed and several more after.

9        3. Punitive damages.

10      The court may also award punitive damages to any plaintiff. (S.M.M.C. §4.56.040(d)).

11  In this case, the City will prove that Golshani is guilty of oppression, fraud, and bad faith.

12      The City has not yet conducted discovery regarding the defendants' income and assets.

13        4. Attorneys' Fees.

14      The City is entitled to its attorneys' fees should it prove tenant harassment at trial.

15  (S.M.M.C. §4.56.040(d)) The City's lead counsel, Deputy City Attorney Gary Rhoades, has

16  expended over ninety hours to date in working on this case over a period of more than two

17  years. His hourly rate is $400, based on twenty-four years of housing litigation experience.

18      Should the case proceed to trial, the City's attorneys' fees would increase dramatically

19  due to remaining discovery and law and motion matters as well as trial preparation and a

20  lengthy trial. However, to settle the case at this juncture, and to allow the Browning family to

21  obtain damages and fees, the City would agree to partial attorneys' fees and costs.

22

23  Dated: June 6, 2017             JOSEPH LAWRENCE

24                       Interim Santa Monica City Attorney

25

26                       by _____

27                       GARY RHOADES

                          Deputy City Attorney

28                       Attorneys for Plaintiff City of Santa Monica

TRA1500

PLAINTIFF CITY OF SANTA MONICA SETTLEMENT CONFERENCE BRIEF

1   John C. Taylor, State Bar No. 78389
    Natalie Weatherford, State Bar No. 278522
2   **TAYLOR & RING, LLP**
    1230 Rosecrans Avenue, Suite 360
3   Manhattan Beach, California 90266

4   Telephone: (310) 209-4100
    Facsimile: (310) 208-5052
5
    Attorneys for Plaintiffs,
6   Martha Browning and Julia Browning, by and
    through her conservator, Martha Browning
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES, WEST DISTRICT

10

11  MARTHA BROWNING; and JULIA          ) CASE NO. SC128983 r/w SC125490
    BROWNING, by and through her conservator,  )
12  MARTHA BROWNING,                     ) [Complaint Filed: 03/12/2018; Assigned to the
                                         ) Hon. Craig Karlan, Dept. N]
13                                       )
                Plaintiffs,              )
14  vs.                                  ) **FIRST AMENDED COMPLAINT**
15  BRIDA, LLC; CECIL McNABB;            )
    KATHY GOLSHANI; and DOES 1 through 100,  ) **DEMAND FOR JURY TRIAL**
16  inclusive,                           )
                Defendants.              )
17                                       )
                                         )
18  _____  )

19        Plaintiffs, Martha Browning and Julia Browning, a legally incompetent person, by and through

20  her conservator, Martha Browning, seek damages sustained to them by Defendants, Brida, LLC, Cecil

21  McNab, Kathy Golshani (also known as Novin Golshani, Novin Kathy Golshani and Novin Golshani

22  Samimi) and ZOES 1 through 100, inclusive, as follows:

23          **THE PARTIES AND THEIR RELATIONSHIP TO EACH OTHER**

24        1.    Plaintiffs, JULIA BROWNING ("Julia") is, and at all times mentioned herein was, a

25  resident of the County of Los Angeles, State of California. From on or about September 1, 1999 to the

26  present, Julia has been a tenant of the residential real property commonly known as 1123 17th Street,

27  Unit 6, Santa Monica, California 90403 (the "Rental Unit").

28  ///

                                            1

**TRA1613**

2.    Plaintiffs, MARTHA BROWNING ("Marti," and together with Julia, "Plaintiffs") is, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California. From on or about September 1, 1999 to the present, Marti has been a tenant of the Rental Unit. Marti is Julia's mother and legally-appointed conservator. At all times relevant hereto, Marti was an "aggrieved person" and "person" within the meaning of the Fair Employment and Housing Act ("FEHA"). Gov. C. §§ 12927(f), (g), 12955(a). In addition, Marti is also a person aggrieved under the Unruh Act, Civil Code § 55.

3.    Plaintiffs are informed and believe, and on that basis, allege, that at all times relevant and mentioned herein, cross-defendant and landlord, KATHY GOLSHANI, also known as Novin Golshani, Novin Kathy Golshani and Novin Golshani Samimi ("Golshani") was and is a resident of the County of Los Angeles, State of California. Plaintiffs are further informed and believe, and on that basis, allege, that at all times relevant and mentioned herein, Golshani had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

4.    Plaintiffs are further informed and believe, and on that basis, allege, that at all times relevant and mentioned herein, McNab had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

5.    Plaintiffs are informed and believe, and on that basis allege, that at all times relevant and mentioned herein, cross-defendant and landlord, BRIDA, LLC ("Brida") was and is a limited liability company organized under the laws of the State of California, with its principal place of business in the County of Los Angeles, State of California. Plaintiffs are further informed and believe, and on that basis allege, that at all times relevant and mentioned herein, Brida had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

6.    Plaintiffs are informed and believe, and on that basis, allege, that at all times relevant and mentioned herein, cross-defendant and landlord, Cecil McNab ("McNab") was and is a resident of the County of Los Angeles, State of California. Plaintiffs are further informed and believe, and on that

2

TRA1614

1   basis, allege, that at all times relevant and mentioned herein, McNab had a beneficial and/or ownership
2   interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the
3   owners and/or managers of the Rental Unit.

4       7.      Plaintiffs are informed and believe, and on that basis, allege, that at all times relevant
5   and mentioned herein, Defendants were the "owners" of the Rental Unit within the meaning of FEHA,
6   Government Code §§ 12927(e) and 12955(a), as well as "persons" within the meaning of Government
7   Code §§ 12927(f) and 12955(c), and Civil Code § 54.1 (b)(3).

8       8.      At all times relevant and mentioned herein, the Rental Unit was a "housing
9   accommodation" within the meaning of Government Code §§ 12927(d) and 12955(a), (c) and (d), a
10  "business establishment" within the meaning of Civil Code § 51 and a "housing accommodation"
11  within the meaning of Civil Code § 54.1.

12      9.      At all times relevant and mentioned herein, Defendants were persons providing
13  accommodations, advantages, facilities, privileges, and/or services in a business establishment, within
14  the meaning of the Unruh Act, Civil Code § 51 (b), and persons and entities providing housing
15  accommodations, within the meaning of the Disabled Persons Act, Civil Code § 54.1.

16      10.     Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as
17  Does I through 100 inclusive, and therefore sue these Defendants by such fictitious names under the
18  provisions of Code of Civil § 474.  Plaintiffs will seek leave to amend this Cross-Complaint to allege
19  their true names and capacities when ascertained.

20      11.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned
21  herein, and continuing to the present, each of the Defendants was and is the agent, employee, servant,
22  co-partner, joint venturer, and/or co-conspirator of each other Cross-Defendant, and in doing, inter alia,
23  the acts and omissions alleged herein, acted and continues to act within the purpose and scope, and in
24  furtherance, of said agency, employment, co-partnership, joint venture and/or co-conspiracy, and that
25  such acts were and continue to be consented to and ratified by each of the other Defendants.

26      12.     Plaintiffs are informed and believe, and on that basis, allege, that at all times mentioned
27  herein, and continuing to the present, each of the Defendants was Plaintiffs' landlord, and Plaintiffs
28  were the tenants of the Defendants, as the terms "landlord" and "tenant" are defined under California

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

TRA1615

1 | common law, Code of Civil Procedure §§ 1161, et seq., Civil Code § 1980, et seq., under S.M.M.C. §§
2 | 4.56.010(f), (i) and 4.56.020 and as defined under other California statutory law.

3 |      13.    At all times relevant and mentioned herein, the Rental Unit was a "controlled rental unit"
4 | pursuant to the provisions of Santa Monica Rent Control Charter Amendment ("S.M.R.C.C.A.") §§
5 | 1800, et seq., and a "rental housing unit" pursuant to S.M.M.C. §§ 4.56.01 0(h) and 4.56.020.

6 |      14.    Plaintiffs moved into the Rental Unit on or about September 1, 1999, pursuant to a
7 | written lease (the "Rental Agreement") with Defendants' predecessors-in-interest; a copy of which is
8 | attached hereto as Exhibit A.  When Plaintiffs moved into the Rental Unit, they and the Defendants or
9 | their predecessors-in-interest entered into a landlord-tenant relationship.  This relationship, as well as
10 | the Rental Unit is subject to the Rent Control Laws, municipal law, California state law and the Rental
11 | Agreement.

12 |      15.    Plaintiffs' monthly rent at the time they moved in was $1,500.00.  Due to the length of
13 | their tenancy and the rent control laws, Plaintiffs' monthly rent is very low in relation to comparable
14 | market-rate units in the same area.

15 | **JULIA'S DISABILITY**

16 |      16.    At all times relevant and mentioned herein, Julia was also disabled under the meaning of
17 | state and federal law, and specifically an "aggrieved person" and "person" within the meaning of the
18 | Fair Employment and Housing Act ("FEHA"): Gov. C. §§ 12927(f), (g), 12955(a).  In addition, Julia is
19 | also a "person" as defined by the Unruh Act, Civil Code § 51 (b), and an "individual with a disability,"
20 | as defined by Civil Code § 54.1(b)(l). She is also a tenant with disabilities within the meaning of Santa
21 | Monica Municipal Code ("S.M.M.C.") § 4.28.030(i).  Specifically, Julia has a genetic condition that
22 | has caused severe neurological deficits including but not limited to intellectual disability, quadriplegia
23 | and intractable epilepsy.  She is unable to expressively communicate and is completely reliant on Marti
24 | and other caregivers for all activities of daily living.  She also requires the use of oxygen tanks and a
25 | wheelchair.

26 |      17.    From 2007 to the present, Julia has kept an emotional support dog, which was granted as
27 | an accommodation by Defendants' predecessor-in-interest.

28 | ///

TRA1616

18.    Marti's Rental Unit comes with the amenity of one parking stall in a carport.  Typically, she uses her parking stall to park a vehicle that has been specially-modified to transport Julia when necessary.  Every Friday afternoon, Julia's father (who does not live in the Rental Unit) drives to the apartment building to visit and transport Julia.  While he loads Julia, her wheelchair and other necessary supplies into Marti's vehicle, he briefly parks his vehicle in the parking stall adjacent to Plaintiffs' stall, which that is assigned to Plaintiffs' neighbors.  Plaintiffs' neighbors have given express consent to the use of their stall for this purpose.  Once Julia is safely in Marti's vehicle, Julia's father moves Marti's vehicle out of the parking stall, and moves his own vehicle into the parking stall assigned to the Rental Unit.  Plaintiffs are informed and believe, and on that basis, allege, that Defendants knew that Julia's father used the two parking stalls to transport Julia every Friday afternoon.

19.    Since at least 2014, Marti has stored Julia's oxygen tanks and equipment used with Julia's wheelchair to transport her from the carport to the Rental Unit (the "Stair Climber") near her vehicle in the carport.  Defendants' predecessor-in-interest granted the storage of both as an accommodation to Plaintiffs.

20.    At all times relevant and mentioned herein, Defendants have had actual and constructive notice of Julia's status as a disabled person.

## DEFENDANTS' ACTS OF HARASSMENT AND DISCRIMINATION
## AGAINST PLAINTIFFS

21.    Throughout Defendants' time as Plaintiffs' landlords, Defendants have engaged in a pattern and practice of harassment and intimidation including, but not limited to, their unilateral elimination of services and amenities, their trespassing and entering the Rental Unit without consent or prior written notice, their unending threats of eviction, and their delay and sometimes refusal to provide habitable premises.

22.    In or about May 2014, Marti complained to Defendants' predecessor-in-interest who was acting as the current owners' agent and manager about several items including carpet that was in disrepair.  Plaintiffs are informed and believe, and on that basis, allege, that the former manager sought approval from Defendants to address the carpet.  Within days, Defendants fired him.  Defendants later viewed the carpet in the Rental Unit.  Despite open and obvious hazards attributed to the carpet's poor

5

TRA1617

1  condition, Defendants refused to repair the carpet.  Defendants then proceeded to berate and disparage
2  Marti, calling her names and accusing her of contacting the management company too often.  They also
3  suggested to that Marti and her family should move out of the Rental Unit and live in "public housing"
4  because of Julia's medical condition.

5        23.    In or about November and December 2015, Defendants unilaterally removed one of the
6  Rental Unit's amenities by forbidding Plaintiffs' reasonable use and exclusive possession of the private
7  balcony.  Specifically, Defendants told Plaintiffs that they may use the balcony only for "planters in
8  organized manner [sic]" and threatened to evict them if they failed to immediately remove all patio
9  furniture on their patio.  To avoid the expense of defending an eviction proceeding, Plaintiffs agreed to
10  remove their possessions from the Rental Unit's patio.

11        24.    In or about November and December 2015, Defendants sought to prohibit Julia from
12  keeping the emotional support dog that she had for approximately eight years.  Plaintiffs informed
13  Defendants that removing the reasonable accommodation of Julia's emotional support animal violated
14  federal, state and local laws.  However, Defendants were undeterred.  They served Plaintiffs with a
15  letter falsely accusing Plaintiffs of having unauthorized occupants in the Rental Unit, smoking in the
16  Rental Unit (even though Marti's son suffers from asthma) and questioning their predecessor-in-
17  interest's granting of an accommodation to Julia regarding the dog, threatening to increase the monthly
18  rent and threatening to evict Plaintiffs.

19        25.    In December 2015, Plaintiffs oven became defective, leaking and emitting a heavy gas
20  smell, through no fault of Plaintiffs.  The Southern California Gas Company inspected the oven, and
21  forbade the use of the oven due to, as the Gas Company put it, a "hazardous condition."  Plaintiffs
22  promptly notified Defendants of the Gas Company's findings and conclusion, and asked for the oven to
23  be repaired.  Defendants waited over a month to inspect the oven.  Defendants' agent informed
24  Plaintiffs that he had repaired the oven and that it was safe to use.  That turned out to be untrue.  The
25  Gas Company, upon re-inspection of the oven, informed Plaintiffs that the oven was not in fact
26  repaired, was emitting approximately twelve times the acceptable amount carbon monoxide, and was
27  not safe for use.  Defendants did not repair or replace the defective and dangerous oven until July 2016
28  – about eight months after they became aware of it.

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

TRA1618

26.    In or about January 2016, Golshani and an agent of Defendants caused an agent of theirs to enter the Rental Unit unannounced and without written notice pursuant to Civil Code § 1954. Plaintiffs complained that they had not been given proper notice of entry pursuant to Civil Code § 1954.    In response to Plaintiffs' complaint McNab served Plaintiffs with a "Final Warning Letter" (presumably as a first step in an eviction proceeding), threatening to evict them.

27.    In or about January 2016, Defendants served Plaintiffs with a Notice of Entry pursuant to Civil Code § 1954 giving notice that they would enter the Rental Unit to inspect the oven.  Days after Defendants' unauthorized entry into Plaintiffs' Rental Unit, Defendants and their agent entered the Rental Unit under the guise of inspecting the oven.  Plaintiffs are informed and believe, and on that basis, allege, that Defendants' true intention in entering the Rental Unit was not to inspect the oven, but rather to invade Plaintiffs' privacy by passing through the entire Rental Unit in search of violations that might underlie an eviction proceeding.  Days after the Defendants' "inspection" of the oven, McNab threatened to evict Plaintiffs, admitting that Defendants took pictures of Plaintiffs' private balcony, and demanding that Plaintiffs remove everything from the balcony or be evicted.

28.    In or about February 2016, Defendants again disparaged and threatened to evict Plaintiffs.  Defendants threatened to evict Plaintiffs if Plaintiffs' personal property, including Julia's Stair Lift, were not removed from the carport assigned to Plaintiffs.  Defendants made this threat even though the only property belonging to Plaintiffs was Julia's oxygen tanks and the Stair Climber.

29.    In or about February 2016, Julia's father arrived at the Rental Unit to transport Julia as he always had on Friday afternoon.  Defendants told him that was not allowed to do so, forcing Marti to have to leave her job to meet Julia and her father at the Rental Unit.

30.    In or about February 2016, Plaintiffs met with a Deputy City Attorney for the City of Santa Monica and complaint about Defendants harassment and discrimination.  Shortly thereafter, the Deputy City Attorney sent a letter to McNab and Brida asserting Plaintiffs' rights to, among other things, store the Stair Climber and use an adjacent parking space for the safe transportation of Julia. Defendants did not respond to the Deputy City Attorney's letter but refused the reasonable accommodation of allowing Plaintiffs to store the Stair Climber in the carport.

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

TRA1619

31.     In or about November 2016, Marti complained to Defendants regarding significant trip hazards in the Rental Unit due to the aging carpet. In response, Golshani, acting on behalf of herself and on behalf of Defendants, accused Julia of being a culprit and blamed her for the carpet's condition. As Golshani put it, Julia and her wheelchair were at least partly to blame for the carpet's poor condition. Golshani concluded that Plaintiffs - not Defendants - would therefore be obligated to repair the carpet.

32.     In or about November 2016, an unidentified agent of Cross-Defendant entered the Rental Unit without permission, consent or prior written notice. Plaintiffs are informed and believe, and on that basis, allege, that this unidentified agent entered the Rental Unit for the sole purpose of serving a legal notice on Plaintiffs. She was asked to leave immediately, at which point she walked away from the Rental Unit and toward Golshani.

33.     In or about January and February 2017, Defendants increased their acts of harassment and discrimination. On at least two separate occasions, Defendants' agent entered the Rental Unit without consent or prior written notice. Days later, Golshani entered the property in which the Rental Unit is located and blocked Marti's specially-modified vehicle in a way that was intended to prevent Marti from being able to transport Julia in it. The very next day, Golshani entered the property in which the Rental Unit is located and proceeded to take photographs of Marti's guest leaving the Rental Unit. The aforementioned conduct resulted in a restraining order being issued against Golshani.

## FIRST CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA FEHA HOUSING DISCRIMINATION (Cal. Gov't. Code § 12900, et seq.)

### (by Plaintiffs against all Defendants)

34.     Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

35.     Julia's medical condition qualifies her as disabled under Government Code § 12900, et seq. Defendants knew or reasonably should have known that Julia suffered from her disability. Plaintiffs are "aggrieved persons" under FEHA since they "claim to have been injured by a discriminatory housing practice or believes that they will be injured by a discriminatory housing practice."

///

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL    **TRA1620**

36.     FEHA makes it unlawful for the owners, lessees, agents or any person having any legal or equitable right of ownership or possession or the right to rent or lease a housing accommodation to discriminate against any person because of disability.  By engaging in the conduct set forth herein, Defendants engaged in unlawful discrimination on the basis of Julia's disability.

37.     Plaintiffs are informed and believe that the course of conduct by Defendants was an effort to intimidate and harass Plaintiffs, which was motivated, in part or in whole, and/or has had a discriminatory effect on the basis of disability in violation of their rights under Government Code § 12900, et seq.  In so doing, Defendants were committing a discriminatory housing practice.

38.     Defendants knew, or in the exercise of reasonable care should have known, that their conduct as alleged herein would cause Plaintiffs financial and emotional harm.

39.     As a direct and proximate result of the conduct of Defendants alleged herein, Plaintiffs have suffered financial and emotional harm in an amount exceeding the jurisdictional limits of this Court, to be established according to proof at trial.

40.     The conduct of Defendants alleged herein was and continues to be oppressive, fraudulent, malicious, and done with conscious disregard of Plaintiffs' rights.  Plaintiffs are therefore entitled to recover punitive damages against Defendants in an amount to be determined at trial.

## SECOND CAUSE OF ACTION FOR VIOLATION OF UNRUH CIVIL RIGHTS ACT- HOUSING DISCRIMINATION (Cal. Civ. Code § 51, et seq.)

### (by Plaintiffs against all Defendants)

41.     Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

42.     Julia's medical conditions qualifies her as disabled under the definition provided by FEHA, section 12900, et seq. Defendants knew or reasonably should have known that Julia suffered from her disability.

43.     The Unruh Civil Rights Act ("Unruh Act") makes it unlawful for the landlords of a housing accommodation to discriminate against any person because of disability.  By engaging in the conduct set forth herein, Defendants engaged in unlawful discrimination on the basis of Julia's disability, and targeted Plaintiffs based upon Julia's disability status.

9

**TRA1621**

1    44.    Plaintiffs are informed and believe that the course of conduct by Defendants described

2    herein, was in an effort to intimidate and harass Plaintiffs, and was motivated, in part or in whole,

3    and/or has had a discriminatory effect on the basis of disability in violation of their rights under the

4    Unruh Act. In so doing, Defendants were committing a discriminatory housing practice.

5    45.    Defendants knew, or in the exercise of reasonable care should have known, that their

6    conduct as alleged herein would cause Plaintiffs and others similarly situated to suffer financial and

7    emotional harm.

8    46.    As a direct and proximate result of the conduct of Defendants alleged herein, Plaintiffs

9    have suffered financial and emotional harm in an amount exceeding the jurisdictional limits of this

10   Court, to be established according to proof at trial.

11   47.    The conduct of Defendants alleged herein was oppressive, fraudulent, malicious, and

12   done with conscious disregard of Plaintiffs' rights. Plaintiffs are therefore entitled to recover punitive

13   damages against the Defendants in an amount to be determined at trial.

14   ### THIRD CAUSE OF ACTION FOR BREACH OF STATUTORY WARRANTY OF

15   ### HABITABILITY

16   #### (by Plaintiffs against all Defendants)

17   48.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set

18   forth herein.

19   49.    By the acts and omissions alleged herein, Defendants have violated various statutes

20   pertaining to the warranty of habitability under California Jaw, including, among others, Civil Code §

21   Section 1941, et seq. and Health and Safety Code § 17920.3, related to the warranty of habitability for

22   the Rental Unit.

23   50.    Marti notified Defendants of these unhealthy and defective conditions. Defendants

24   inspected the Rental Unit but failed to and refused to repair these dangerous and defective conditions

25   within a reasonable time. Accordingly, Plaintiffs are informed and believe and hereon alleges, that

26   Defendants had actual and or constructive notice of each of the defective conditions described herein at

27   all relevant times. Despite said notice, Defendants failed to take all reasonable and necessary steps to

28   repair such conditions at all times relevant herein.

10

TRA1622

1    51.    Plaintiffs paid rent to Defendants during their tenancy at the Rental Unit.

2    52.    Plaintiffs paid rent to Defendants during their tenancy at the Rental Neither Plaintiffs

3    nor anyone acting on their behalf have done anything to cause, create or contribute to the existence of

4    the defective conditions alleged herein.  Further, the Rental Unit, as they existed in a defective and

5    dangerous condition, had no rental value whatsoever or a very limited rental value.

6    53.    As a direct and proximate result of Defendants' breach of statutory warranty of

7    habitability and Defendants' failure to repair the defective and dangerous conditions of the Rental Unit,

8    Plaintiffs have suffered damages in an amount to be proven at trial.

9    54.    Defendants failed to protect the life, safety and property of Plaintiffs.  Instead, they

10   disregarded housing and safety laws to Plaintiffs' detriment and for their benefit.

11   55.    Defendants knew or should have known that permitting the defective conditions alleged

12   herein to exist at the Rental Unit injured, and would continue to injure, Plaintiffs' physical and

13   emotional health and well-being, and that such conduct would constitute a serious threat and danger to

14   their health and safety.

15   56.    As a direct and proximate result of Defendants' conduct, the Rental Unit was and is in a

16   substandard condition.  Plaintiffs have suffered damages, including personal injury, economic loss,

17   non-economic loss and general damages, as well as emotional distress, all to their detriment, in an

18   amount to be determined at trial.  As alleged herein, Defendants' conduct also justifies the imposition of

19   punitive damages.

20                          **FOURTH CAUSE OF ACTION**

21                  **FOR BREACH OF IMPLIED WARRANTY OF HABITABILITY**

22                       **(by Plaintiffs against all Defendants)**

23   57.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set

24   forth herein.

25   58.    The warranty of habitability is implied in all residential rental agreements and imposes

26   upon a landlord the obligation to maintain the leased dwelling in a habitable condition throughout the

27   term of the lease.  This implied warranty of habitability is a corollary to the residential landlord's

28   statutory obligation under Civil Code § 1941, et seq.

11

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL     **TRA1623**

59. Defendants violated the warranty of habitability implied in the Rental Agreement and implied by their tenancy at the Rental Unit, by undertaking the course of conduct described herein that directly resulted in the existence of the defective and dangerous conditions alleged herein.

60. Defendants failed to protect the life, safety and property of Plaintiffs. Instead, they disregarded housing and safety laws to Plaintiffs' detriment and for their benefit.

61. Defendants knew or should have known that permitting the defective conditions alleged herein to exist at the Rental Unit injured, and would continue to injure, Plaintiffs' physical and emotional health and well-being, and that such conduct would constitute a serious threat and danger to their health and safety.

62. As a direct and proximate result of Defendants' conduct, the Rental Unit were in a substandard condition. Plaintiffs have suffered damages, including personal injury, economic loss, non-economic loss and general damages, as well as emotional distress, all to their detriment, in an amount to be determined at trial. As alleged herein, Defendants' conduct also justifies the imposition of punitive damages.

## FIFTH CAUSE OF ACTION FOR NEGLIGENCE

### (by Plaintiffs against all Defendants)

63. Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

64. By reason of the landlord-tenant relationship between the Plaintiffs and Defendants, Defendants owed Plaintiffs the duty to exercise reasonable care in the management and control of their real property, a duty to provide Plaintiffs with a residential rental property meeting minimum standards of habitability, and were required to allow Plaintiffs the peaceful and quiet enjoyment of the Rental Unit.

65. By the conduct alleged herein, the Defendants negligently breached the duties owed to Plaintiffs.

66. As a direct and proximate result of the conduct of Defendants alleged herein, Plaintiffs have suffered and continue to suffer actual and special damages, including physical injuries, mental/emotional trauma, and general damages in an amount to be determined at trial.

12

**TRA1624**

## SIXTH CAUSE OF ACTION FOR NUISANCE

### (by Plaintiffs against **all Defendants**)

67.  Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

68.  The defective and dangerous conditions of the Rental Unit as alleged herein, as well as the invasive photographic surveillance and incessant entrances into the Rental Unit by the landlord (both with and without proper notice), constituted a nuisance within the meaning of Civil Code § 3479 and Code of Civil Procedure § 731 in that they deprived Plaintiffs of the safe, healthy and comfortable use of the Rental Unit, were indecent and offensive to the senses, were obtrusive to the free use of the Rental Unit, and caused Plaintiffs significant damage and injury.

69.  Defendants owed a duty to Plaintiffs as the as the owners, landlords and managers of the Rental Unit, which they breached by, among other things, maintaining and/or failing to abate a nuisance within the meaning of Civil Code § 3479 and Code of Civil Procedure § 731.

70.  As a proximate result Defendants' maintenance and/or failure to abate the nuisance, Plaintiffs suffered personal injury, discomfort, emotional distress and annoyance, in an amount to be determined at trial.

71.  In maintaining the nuisance, the Defendants have acted and continue to act with full knowledge of the consequences thereof and of the damage being caused to Plaintiffs.  Despite this knowledge, Defendants failed to fully abate the nuisance as alleged herein, as well as the invasive photographic surveillance and incessant entrances into the Rental Unit by the landlord (both with and without proper notice) or causing the oven and heater to be repaired in a timely and proper manner, and by continuing their invasive video surveillance.  Defendants' acts and omissions alleged herein have proximately caused Plaintiffs to suffer the following damages: loss of use of the Rental Unit and rent differential damages, personal injury, emotional distress, decrease in housing services without a corresponding reduction rent, overpayment and/or excessive payment of rent, loss of employment, loss of earning capacity, loss of wages, loss of use and enjoyment of the property, fear of loss of housing, substantial discomfort and annoyance, the amount of which exceeds the minimum jurisdictional threshold of this Court and which will be proven at trial.

13

TRA1625

72.    Defendants' actions and/or failure to act were both oppressive and malicious within the meaning of Civil Code § 3294, in that it subjected Plaintiffs to cruel and unjust hardship in willful and conscious disregard of their rights and safety.  As such, Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT
### (by Plaintiffs against all Defendants)

73.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

74.    A Rental Agreement exists between Plaintiffs and Defendants' predecessor-in-interest pertaining to Plaintiffs' tenancy at the Rental Unit.  This Rental Agreement contains express covenants and implied covenants including, but not limited to, the following: an implied warranty of habitability, an implied covenant of quiet use and enjoyment, as well as Defendants' abiding by state and federal disability discrimination laws.  Plaintiffs performed all of the obligations under the Rental Agreement except those obligations for which they were excused or which they were prevented from performing by Defendants' actions and/or omissions.

75.    Defendants violated the implied covenants referenced above by, in part, verbally harassing Plaintiffs, threatening to evict Plaintiffs, commencing eviction proceedings against Plaintiff without lawful cause or justification, making disparaging and offensive statements about Plaintiff Julia's disability, entering Plaintiffs' Rental Unit without notice, consent or permission, and failing to make repairs within a reasonable period of time, including but not limited to failing to repair a leaking gas stove that was deemed a "hazardous condition" by the Gas Company for eight months after being made aware of the problem.

76.    Defendants also violated "Paragraph 20" of the Rental Agreement which provides: "Right of Entry and Inspection: Owner or Owner's agent and/or repair persons by themselves or with others may enter Renter's premises for any lawful purpose including but not limited to: inspecting, making repairs, decorations, alternations, or improvements; to supply necessary or agreed services…Owner shall give Renter 24 hours advance notice and shall enter during normal business hours."

14

TRA1626

77.     Defendants, and each of them, entered Plaintiffs' Rental Unit without 24 hours prior notice, consent or permission on several occasions, including one occasion where Defendant Golshani entered the Rental Unit without notice, permission or consent to take unlawful photographs of the Rental Unit and photographs of Plaintiff Martha's guest.

78.     As set forth herein, Defendants unlawfully and intentionally mismanaged the Rental Unit in violation of the Rental Agreement between the parties.  In committing the acts complained of, Defendants materially breached the implied and express terms of the Rental Agreement between Plaintiffs and Defendants' predecessor-in-interest, and caused the damages and injuries to Plaintiffs complained of above.

79.     As a proximate cause of the conduct of Defendants, Plaintiffs have suffered, and continue to suffer, actual damages and general damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION FOR BREACH OF COVENANT OF QUIET ENJOYMENT

### (by Plaintiffs against all Defendants)

80.     Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

81.     By the acts and omissions described above, Defendants interfered with, interrupted, and deprived Plaintiffs of the full and beneficial use of the Rental Unit and disturbed his peaceful possession of the Rental Unit.

82.     These acts of interference, interruption, deprivation, and disturbance by the Defendants amounted to breaches of the covenant of quiet enjoyment implied in all rental agreements, .and codified in California Civil Code § 1927.

83.     As a direct and proximate result of Defendants' violation of Plaintiffs' right to the quiet enjoyment of the Rental Unit, Plaintiffs have suffered, and continue to suffer, actual damages and general damages in an amount to be determined at trial.  Defendants' conduct as alleged herein also justifies the imposition of punitive damages.

///

///

///

15

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

TRA1627

1 | **NINTH CAUSE OF ACTION FOR UNLAWFUL THREAT TO TERMINATE**

2 | **TENANCY (S.M.R.C.C.A . § 1806(f))**

3 | **(by Plaintiffs against all Defendants)**

4 | 84.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set

5 | forth herein.

6 | 85.    At all pertinent times, Plaintiffs' tenancy at the Rental Unit was covered by the Rent

7 | Control Laws.  S.M.R.C.C.A. prohibits a landlord from recovering possession of a rental unit, except as

8 | provided by S.M.R.C.C.A. § 1806(a).

9 | 86.    Plaintiffs are informed and believe and thereby alleges that Defendants' actions, as set

10 | forth herein, lacked any good faith basis, and said actions included but were not limited to attempting to

11 | influence Plaintiffs to vacate the Rental Unit through coercion, intimidation and a barrage of eviction

12 | threats.  Defendants had the unlawful intention, ulterior motive and dishonest intent to force Plaintiffs

13 | to vacate their Rental Unit in violation of the Santa Monica Rent Control Charter Amendment,

14 | including but not limited to Section 1806(a), which provides the legal just causes for eviction.

15 | 87.    As a direct and proximate result of said acts and omissions on the part of Defendants,

16 | Plaintiffs have suffered special and general damages as is alleged herein.

17 | 88.    S.M.R.C.C.A. § 1806 (f) provides for an award of reasonable attorney's fees to the

18 | prevailing party to any action brought under this section, and Plaintiffs are entitled to such an award of

19 | attorney's fees from Defendants.

20 | 89.    Also, pursuant to S.M.R.C.C.A. § 1806(f), Plaintiffs are entitled to recover punitive

21 | damages against Defendants in an amount to be determined at trial.

22 | **TENTH CAUSE OF ACTION FOR TENANT HARASSMENT**

23 | **(S.M.M.C. § 4.56.010, et seq.)**

24 | **(by Plaintiffs against all Defendants)**

25 | 90.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set

26 | forth herein.

27 | 91.    By the acts and omissions described above, Defendants have violated the Santa Monica

28 | Tenant Harassment Ordinance (S.M.M.C. § 4.56.010, et seq.).

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

TRA1628

1    92.    For each act of wrongful harassment, Defendants are liable for all of the remedies

2  established in S.M.M.C. § 4.56.040.

3    93.    Defendants have violated the following subsections of S.M.M.C. §4.56.020:

4    a.    S.M.M.C. §4.56.020 (a) for interrupting, terminating or failing to provide housing

5  services required by contract or by State, County or local housing, health or safety laws.

6  Defendants failed to make routine and timely repairs on the Rental Unit including but not limited

7  to repairing a leaking and defective gas stove that was deemed a "hazardous condition" by the

8  Gas Company. Defendants did not repair the stove for eight months after being made aware of

9  the hazardous condition. Defendants, and each of them entered Plaintiffs' apartment without

10  permission and with no notice to Plaintiffs on numerous occasions, and harassed the Plaintiffs by

11  words and written correspondence, including making offensive and disparaging comments about

12  Plaintiff Julia's disability.

13    b.    S.M.M.C. §4.56.020 (b)  for failing to perform repairs and maintenance

14  required by contract or by State, County or local housing, health or safety laws.

15  Defendants failed to make routine and timely repairs on the Rental Unit including but not

16  limited to failing to repair a leaking and defective gas stove that was deemed a

17  "hazardous condition" by the Gas Company for eight months after being made aware of

18  the hazardous condition.

19    c.    S.M.M.C. §4.56.020 (c) for failing to exercise due diligence in

20  completing repairs and maintenance once undertaken. Defendants failed to make routine

21  and timely repairs on the Rental Unit including but not limited to repairing a leaking and

22  defective gas stove that was deemed a "hazardous condition" by the Gas Company for

23  eight months after being made aware of the hazardous condition.

24    d.    S.M.M.C. §4.56.020 (e) for abusing the tenant with words which are

25  offensive and inherently likely to provoke an immediate violent reaction. Defendants, and

26  each of them, made disparaging and offensive statements about Plaintiff Julia's severe

27  disability and accused Plaintiff Martha of violating laws and endangering her disabled

28  daughter.

17

TRA1629

e.    S.M.M.C. §4.56.020 (f) for influencing or attempting to influence a tenant to vacate a rental housing unit through fraud, intimidation or coercion. Defendants, and each of them entered the property in which the Rental Unit was located and blocked Plaintiffs' specially-modified vehicle in a way that was intended to prevent Plaintiff Martha from being able to transport her handicapped daughter Plaintiff Julie. Defendants entered the Rental Unit without consent, notice or permission, and took photographs of Plaintiff Martha's guest leaving the Rental Unit (this conduct resulted in a restraining order being issued against Defendant Golshani). Defendants made disparaging and offensive statements about Plaintiff Julia's severe disability.

f.    S.M.M.C. §4.56.020 (h) for violating any law which prohibits discrimination based on race, gender, sexual preference, sexual orientation, ethnic background, nationality, religion, age, parenthood, marriage, pregnancy, disability, AIDS or occupancy by a minor child. Defendants and each of them made disparaging and offensive statements to Plaintiffs and others about Plaintiff Julia's severe disability.

g.    S.M.M.C. §4.56.020 (j) for interfering with a tenant's right to quiet use and enjoyment of a rental housing unit as that right is defined by California law. Defendants entered the Rental Unit without consent, permission or notice and took photographs of the Rental Unit, as well as the Plaintiff Martha's guest leaving the Rental Unit (this conduct resulted in a restraining order being issued against Defendant Golshani).

h.    S.M.M.C. §4.56.020 (l) by interfere with a tenant's right to privacy, including, but not limited to, entering or photographing portions of a rental housing unit that are beyond the scope of a lawful entry or inspection. Defendants, and each of them, on numerous occasions, entered the property in which the Rental Unit was located without consent, permission or notice and took photographs of the Unit, as well as the Plaintiff Martha's guest leaving the Rental Unit (this conduct resulted in a restraining order being issued against Defendant Golshani).

94.    Pursuant to S.M.M.C. § 4.56.040(d), Defendants are liable for each separate act in violation of the Tenant Harassment Ordinance, for the actual damages suffered or for statutory damages in the sum of $10,000 per offence, which is greater, and for Plaintiffs' fees and costs.

18

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

TRA1630

95.     Pursuant to S.M.M.C. § 4.56.040(d), Defendants are liable for each separate act in violation of the Tenant Harassment Ordinance, in the sum of an additional penalty not to exceed $5,000 per offence.

96.     The conduct of Defendants alleged herein was oppressive, fraudulent, malicious, and done with conscious disregard of Plaintiffs' rights. Plaintiffs are therefore entitled to recover punitive damages against the Defendants in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION FOR TENANT HARASSMENT**

**(S.M.M.C. § 4.28.010, et seq.)**

**(by Plaintiffs against all Defendants)**

97.     Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

98.     By the acts and omissions described above, Defendants have violated the Santa Monica Housing Anti-Discrimination Code (S.M.M.C. § 4.28.010, et seq.).

99.     Defendants violated S.M.M.C. § 4.28.030(g) by refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy any dwelling. Defendants and each of them refused to provide reasonable accommodations for Plaintiff Julia, who is disabled within the meaning of S.M.M.C. § 4.28.010, et seq, including denying Julia storage of her oxygen tanks and chair lifts, threatening eviction due to Julia's use of a licensed disability Support Animal, and harassing Julia and Martha and preventing Martha from using her specially modified vehicle to transport Julia to and from the premises.

100.    Defendants violated S.M.M.C. § 4.28.030 (h) by refusing to allow a person to make reasonable modifications, alterations or additions to existing premises occupied or to be occupied by a person with a disability that are necessary to make the rental property accessible by persons with disabilities. Defendants and each of them have refused to provide reasonable accommodations for Plaintiff Julia, who is disabled within the meaning of S.M.M.C. § 4.28.010, et seq, including denying Julia storage of her oxygen tanks and chair lifts, threatening eviction due to Julia's use of a licensed

19

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

TRA1631

1  disability Support Animal, and harassing Julia and Martha and preventing Martha from using her
2  specially modified vehicle to transport Julia to and from the premises.

3        101.   For each act of wrongful harassment, Defendants are liable for all of the remedies
4  established in S.M.M.C. §§ 4.28.060 and 4.28.070.

5        **TWELFTH CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE§ 1940.2**
6                           **(by Plaintiffs against all Defendants)**

7        102.   Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set
8  forth herein.

9        103.   Civil Code § 1940.2(a) prohibits a landlord from influencing a tenant to vacate a
10  dwelling by certain prohibited acts, including intentional significant violations of entry rights pursuant
11  to Civil Code § 1954.

12       104.   As alleged above, Defendants entered the Rental Unit for the purpose of harassing
13  Plaintiffs in violation of Civil Code § 1954.  These entries were done intentionally to cause or influence
14  Plaintiffs to vacate the Rental Unit.

15       105.   By committing the acts complained of above, Defendants are liable for actual damages
16  sustained by Plaintiffs, and for statutory damages in an amount up to $2,000 for each violation.

17                     **THIRTEENTH CAUSE OF ACTION FOR TRESPASS**
18                           **(by Plaintiffs against all Defendants)**

19       106.   Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set
20  forth herein.

21       107.   As set forth herein, on numerous occasions, Defendants entered the Rental Unit without
22  lawful and adequate notice or permission.

23       108.   Each herein mentioned entry into the Rental Unit by Defendants overreached the limits
24  of the consent granted for such an entry by Plaintiffs and according to law, amounting to a trespass to
25  land by the Defendants.

26       109.   As a proximate result of the conduct of the Defendants, Plaintiffs have suffered physical
27  injury and emotional and mental distress in an amount to be proven at trial.

28  ///

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL      **TRA1632**

110.    The acts of Defendants were willful, wanton, malicious and oppressive, and justify the awarding of exemplary and punitive damages.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    For a preliminary and permanent injunction enjoining Defendants and their officers, directors, shareholders, employees, agents, independent contractors, partners, assignees, successors, representatives and all persons acting under, in concert with, or for them from any activities resulting in further harassment and/or discrimination against Plaintiffs;

2.    For general damages according to proof, but in excess of the jurisdictional limits of this Court;

3.    For special damages according to proof, but in excess of the jurisdictional limits of this Court;

4.    For statutory damages and penalties under FEHA and Unruh Act;

5.    For attorney's fees under FEHA, Unruh, the Santa Monica Municipal Code, and as otherwise allowed by law;

6.    For civil penalties, pursuant to the Santa Monica Municipal Code;

7.    For civil penalties, pursuant to Civil Code § 1940.2;

8.    For exemplary and punitive damages as allowed by law;

9.    For costs of suit;

10.    For interest, including prejudgment interest at the legal rate; and

11.    For such other and further relief as the Court deems just and proper.

Dated: July 23, 2018                    TAYLOR & RING, LLP


                                        By: _____
                                            John C. Taylor
                                            Natalie Weatherford
                                            Attorneys for Plaintiffs,
                                            Martha Browning and Julia Browning, by and
                                            through her conservator, Martha Browning

TRA1633

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all claims and issues triable by a jury.

Dated: July 23, 2018

TAYLOR & RING, LLP

By: _____
John C. Taylor
Natalie Weatherford
Attorneys for Plaintiffs,
Martha Browning and Julia Browning, by and
through her conservator, Martha Browning

22

TRA1634

PROOF OF SERVICE
(Code of Civil Procedure §§ 1011, 1013, 1013a, 2015.5)

STATE OF CALIFORNIA      )
                                     )     ss.
COUNTY OF LOS ANGELES    )

I, Kimberly Oadell-Arian, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action or proceeding; my business address is 1230 Rosecrans Avenue, Suite 360, Manhattan Beach, California 90266; telephone (310) 209-4100.

On July 23, 2018, I served the foregoing document described as **FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL** on all interested parties in this action

[XX] By placing [ ] the original [XX] a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

[ ]    **BY U.S. MAIL.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated on the attached service list.

[ ]    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **BY FAX** as indicated on the attached service list. A copy of the transmission verification report is attached hereto.

[XX]   **BY PERSONAL/HAND SERVICE** by causing a true copy of said document to be hand-delivered as indicated on the attached service list via messenger.

[ ]    **BY OVERNIGHT DELIVERY.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses on the attached service list. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

Executed on July 23, 2018, at Manhattan Beach, California.

[XX]   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Kimberly Oadell-Arian

23

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

**TRA1635**

**Service List**

Shari Rosenthal, Esq.
Sharon S. Jeffrey, Esq.
MANNING & KASS
Ellrod, Ramirez, Trester LLP
801 S. Figueroa Street, 15th Floor
Los Angeles, California 90017
(213) 624-6900
Fax (213) 624-6999
Email slr@manningllp.com
Email ssj@manningllp.com

Attorneys for Defendants/Cross-Complainants/Cross-Defendants, CECIL McNAB,
KATHY GOLSHANI and BRIDA, LLC

Marsha Jones Moutrie, City Attorney
Adam Radinsky, Deputy City Attorney
Gary Rhoades, Deputy City Attorney
SANTA MONICA CITY ATTORNEY
1685 Main Street, Room 310
Santa Monica, California 90401
(310) 458-8336
Fax (310) 395-6727
Email Gary.Rhoades@smgov.net

Attorneys for CITY OF SANTA MONICA (related case)

24

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

TRA1636

Electronically FILED by Superior Court of California, County of Los Angeles on 09/03/2019 08:33 PM Sherri R. Carter, Executive Officer/Clerk of Court, by L. Kulkin,Deputy Clerk

Case 2:20-cv-06359-DMG-GJS   Document 36-3   Filed 07/11/24   Page 115 of 223
Page ID #:719

**CM-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robert M. Moss, Attorney at Law (SBN 051198)<br>Law Offices of Robert M. Moss, Inc.<br>1717 Fourth Street, Third Floor<br>Santa Monica, CA 90401<br>TELEPHONE NO.: 310-260-7650   FAX NO. *(Optional):* 310-260-7654<br>E-MAIL ADDRESS *(Optional):* rmmosslaw@hotmail.com<br>ATTORNEY FOR *(Name):* Plaintiff, BRIDA, LLC | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS: 1725 Main Street
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME: West District

| | |
|---|---|
| PLAINTIFF/PETITIONER: BRIDA, LLC, a California limited liability, etc | CASE NUMBER: |
| DEFENDANT/RESPONDENT: MARTHA BROWNING, ET AL | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: City of Santa Monica v. Cecil McNabb, et al
   b. Case number: SC 125490
   c. Court: [✓] same as above
      [ ] other state or federal court *(name and address):*
   d. Department: N
   e. Case type: [ ] limited civil [✓] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*
   f. Filing date: March 3, 2016
   g. Has this case been designated or determined as "complex?" [ ] Yes [✓] No
   h. Relationship of this case to the case referenced above *(check all that apply):*
      [✓] involves the same parties and is based on the same or similar claims.
      [✓] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      [ ] involves claims against, title to, possession of, or damages to the same property.
      [✓] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
      [ ] Additional explanation is attached in attachment 1h
   i. Status of case:
      [✓] pending
      [ ] dismissed [ ] with [ ] without prejudice
      [ ] disposed of by judgment

2. a. Title: Martha Browning v. Brida, LLC, et al
   b. Case number: SC128983
   c. Court: [✓] same as above
      [ ] other state or federal court *(name and address):*
   d. Department: N

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
www.courtinfo.ca.gov

**TRA2026**

CM-015

| PLAINTIFF/PETITIONER: BRIDA, LLC, etc | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: MARTHA BROWNING, ET AL | |

2. *(continued)*

e. Case type: ☐ limited civil  ☑ unlimited civil  ☐ probate  ☐ family law  ☐ other *(specify):*

f. Filing date: March 12, 2018

g. Has this case been designated or determined as "complex?"  ☐ Yes  ☑ No

h. Relationship of this case to the case referenced above *(check all that apply):*

☑ involves the same parties and is based on the same or similar claims.

☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 2h

i. Status of case:

☑ pending

☐ dismissed  ☐ with  ☐ without prejudice

☐ disposed of by judgment

3. a. Title: BRIDA, LLC v. NAPPIN, ANDREW

b. Case number: 19STRO04561

c. Court: ☐ same as above

☑ other state or federal court *(name and address):* Los Angeles County Superior Court (Central)

d. Department: 111 N. Hill St., Los Angeles, CA 90012. Dept. 74

e. Case type: ☐ limited civil  ☐ unlimited civil  ☐ probate  ☐ family law  ☑ other *(specify):* TRO

f. Filing date: July 9, 2019

g. Has this case been designated or determined as "complex?"  ☐ Yes  ☑ No

h. Relationship of this case to the case referenced above *(check all that apply):*

☐ involves the same parties and is based on the same or similar claims.

☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

☐ involves claims against, title to, possession of, or damages to the same property.

☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

☐ Additional explanation is attached in attachment 3h

i. Status of case:

☐ pending

☐ dismissed  ☐ with  ☐ without prejudice

☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: September 3, 2019

Robert M. Moss, Atty. at Law (SBN 051198)
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

**NOTICE OF RELATED CASE**

TRA2027

312 PICO BLVD.    SANTA MONICA, CA 90405
TEL  310 394 9831    FAX  310 452 3950    EMAIL  ROSARIO@OCEANLAW.COM

# ROSARIO PERRY, A PROFESSIONAL LAW CORPORATION

**AUGUST 19, 2019 AT 5:45 PM**

Carol Simmons | Claim Professional | General Liability
Travelers
Southern California Claim Center
P.O. Box 650293
Dallas, TX 75265-0293
W: 909.612.3308   F: 877 801 9677
CUSIMMON@travelers.com

**Brida LLC Insurance Coverage Claim for Defense; Policy # 680-6F285163-16-42**
**Property Address: 1123 17th Street, Santa Monica, CA**
**City v. McNab, Brida LLC, et al. SC 125490**

Dear Ms. Simmons

This letter is being sent on behalf of Brida LLC. We are demanding coverage for the lawsuit City
of Santa Monica v. McNab, Brida, et al. I believe that the insurance policy you sent me is
missing important pages. I am enclosing with this letter the Traveler's "Businessowners
Coverage Part Declarations." This page shows that there is coverage for amount other items
"Personal and Advertising Injury." However that endorsement is not included in the policy you
sent me. I have taken the same endorsement from a CNA policy from another client. I believe the
language is the same between the two policies.

**Coverage Issue I.**
**Personal and Advertising Injury**
The "Personal and Advertising Injury" endorsement is 16 pages. I sent the entire Endorsement to
you. At page 14, paragraph 14: "Personal and Advertising Injury" is defined as "injury" arising
out of one or more of the following offenses:

> *"(c ) The wrongful eviction from, wrongful entry into, or invasion of the right of private
> occupancy of a room, dwelling or premises that person occupies, committed by or on
> behalf of its owner, landlord, or lessor."*

This clearly covers the City lawsuit's allegations. While "bodily injury" is required in wrongful
eviction coverage, under this Endorsement it is not required. Note that the language is very clear.

Again,  reference to Page 14, paragraph 14:

Page 1

**TRA2112**

> *"Personal and advertising injury" means injury, **including consequential 'bodily injury,'**
> arising out of one or more of the following offenses"* (bolding added).

Thus the "including" phrase means that there are other injuries covered including but not limited to "bodily injury." The injury we refer to is the City's statutory claim of $5,000 to $10,000 per incident.

We note that the word "injury" is not defined in the policy. However a common definition is "damages" incurred. Clearly, the insured will be damaged, and the city can also claim damages in this regard.


**Coverage Issue II.**
**Employment Practices Liability**

We believe that your policy must have included an "Employment Practices Liability" endorsement, because the policy page which states:  LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS has on page 2, the following:
CG D2 88 11 03 EMPLOYMENT-RELATED PRACTICES EXCLUSION
We submit that this exclusion  is not of the entire Endorsement, but limits the Endorsement. A reference to CNA's policy exclusion is included with this letter. Until we can read what the Travelers exclusion is we believe that the CNN policy language is the same as our policy, and thus our policy would provide coverage. See enclosed pages 1 through 3 of the CNN policy, page 3, section P, definition of  "Wrongful Employment Practice." See also, page 1 of CNA Employment Practices Exclusion.

Coverage Issue III.
**Business Owners Coverage.**

The Title page "Businessowners Property Coverage" page 2, specifically lists
"MP T0 01 02 05 Businessowners Coverage Part Declarations" which is not included in the policy you sent me. However, another reference to the CNA policy with the same classification / heading shows that damages under this provision applies to "Personal and Advertising Injury." Again that topic covers the City's lawsuit against Brida, LLC.

Page 2

**TRA2113**

**312 PICO BLVD.     SANTA MONICA, CA 90405**
**TEL  310 394 9831     FAX  310 452 3950     EMAIL  ROSARIO@OCEANLAW.COM**

In summation, I again ask that your company provide me with the entire Brida policy, but absent that, it is clear that Brida should be provided coverage.

If you have any questions or need clarification please contact me at any time.

Sincerely

Rosario Perry

**TRA2114**

1  Eric A. Puritsky (SBN 239577)
   **PURITSKY LAW**
2  2001 Wilshire Blvd Ste 210
   Santa Monica, CA 90403
3  Telephone: (310) 857-5297
   Facsimile: (310) 315-1557
4  eric@puritskylaw.com

5  Attorneys for Cross-Complainants,
6  Martha Browning and Julia Browning, an incompetent person,
   by and through her conservator, Martha Browning

7           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8                  **COUNTY OF LOS ANGELES**

9  CITY OF SANTA MONICA,                  Case No.: SC125490
                                          [Assigned to Hon. Craig D. Karlan, Dept. N]
10            Plaintiff,

11            v.                          **JULIA BROWNING AND MARTHA
                                          BROWNING'S CROSS-COMPLAINT FOR:**
12 CECIL MCNABB, et al.,
                                              1.  **VIOLATION OF FEHA;**
13            Defendants.                     2.  **VIOLATION OF UNRUH ACT;**
                                              3.  **BREACH OF STATUTORY
14                                                WARRANTY OF HABITABILITY;**
   _____       4.  **BREACH OF IMPLIED
15                                                WARRANTY OF HABITABILITY**
   JULIA BROWNING, an individual; and        5.  **NEGLIGENCE;**
16 MARTHA BROWNING, an individual,           6.  **NUISANCE;**
                                              7.  **BREACH OF CONTRACT;**
17            Cross-Complainants,             8.  **BREACH OF COVENANT OF
                                                  QUIET ENJOYMENT;**
18            v.                              9.  **VIOLATION OF SANTA MONICA
                                                  RENT CONTROL CHARTER
19 BRIDA, LLC, a California LLC;                   AMENDMENT § 1809(a);**
20 CECIL MCNAB, an individual;              10.  **VIOLATION OF SANTA MONICA
   KATHY GOLSHANI (aka NOVIN                      RENT CONTROL CHARTER
21 GOLSHANI, aka NOVIN KATHY                      AMENDMENT § 1809(f);**
   GOLSHANI, aka NOVIN GOLSHANI            11.  **VIOLATION OF SANTA MONICA
22 SAMIMI), an individual; and                   TENANT HARASSMENT
   ZOES 1-100, inclusive,                         ORDINANCE**
23                                         12.  **VIOLATION OF SANTA MONICA
                                                  HOUSING ANTI-DISCRIMINATION
24            Cross-Defendants.                   CODE;**
                                           13.  **VIOLATION OF CIVIL CODE §
25                                                1940.2; AND**
                                           14.  **TRESPASS**
26
                                          **DEMAND FOR JURY TRIAL**
27

28

           **JULIA BROWNING AND MARTHA BROWNING'S CROSS-COMPLAINT**    TRA2226

Cross-Complainants, Martha Browning and Julia Browning, an incompetent person, by and through her conservator, Martha Browning, seek damages sustained to them by Cross-Defendants, Brida, LLC, Cecil McNab, Kathy Golshani (also known as Novin Golshani, Novin Kathy Golshani and Novin Golshani Samimi) and ZOES 1 through 100, inclusive, as follows:

## THE PARTIES AND THEIR RELATIONSHIP TO EACH OTHER

1.      Cross-Complainant, JULIA BROWNING ("Julia") is, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California. From on or about September 1, 1999 to the present, Julia has been a tenant of the residential real property commonly known as 1123 17th Street, Unit 6, Santa Monica, California 90403 (the "Rental Unit").

2.      Cross-Complainant, MARTHA BROWNING ("Marti," and together with Julia, "Cross-Complainants") is, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California. From on or about September 1, 1999 to the present, Marti has been a tenant of the Rental Unit. Marti is Julia's mother and legally-appointed conservator. At all times relevant hereto, Marti was an "aggrieved person" and "person" within the meaning of the Fair Employment and Housing Act ("FEHA"). *Gov. C.* §§ 12927(f), (g), 12955(a). In addition, Marti is also a person aggrieved under the Unruh Act, *Civil Code* § 55.

3.      Cross-Complainants are informed and believe, and on that basis allege, that at all times relevant and mentioned herein, cross-defendant and landlord, KATHY GOLSHANI, also known as Novin Golshani, Novin Kathy Golshani and Novin Golshani Samimi ("Golshani") was and is a resident of the County of Los Angeles, State of California. Cross-Complainants are further informed and believe, and on that basis allege, that at all times relevant and mentioned herein, Golshani had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

4.      Cross-complainants are further informed and believe, and on that basis allege, that at all times relevant and mentioned herein, McNab had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

1

**JULIA BROWNING AND MARTHA BROWNING'S CROSS-COMPLAINT**      **TRA2227**

5.    Cross-Complainants are informed and believe, and on that basis allege, that at all times relevant and mentioned herein, cross-defendant and landlord, BRIDA, LLC ("Brida") was and is a limited liability company organized under the laws of the State of California, with its principal place of business in the County of Los Angeles, State of California.  Cross-complainants are further informed and believe, and on that basis allege, that at all times relevant and mentioned herein, Brida had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

6.    Cross-Complainants are informed and believe, and on that basis allege, that at all times relevant and mentioned herein, cross-defendant and landlord, Cecil McNab ("McNab") was and is a resident of the County of Los Angeles, State of California.  Cross-complainants are further informed and believe, and on that basis allege, that at all times relevant and mentioned herein, McNab had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

7.    Cross-Complainants are informed and believe, and on that basis allege, that at all times relevant and mentioned herein, Cross-Defendants were the "owners" of the Rental Unit within the meaning of FEHA, *Government Code* §§ 12927(e) and 12955(a), as well as "persons" within the meaning of *Government Code* §§ 12927(f) and 12955(c), and *Civil Code* § 54.1(b)(3).

8.    At all times relevant and mentioned herein, the Rental Unit was a "housing accommodation" within the meaning of Government Code §§ 12927(d) and 12955(a), (c) and (d), a "business establishment" within the meaning of *Civil Code* § 51 and a "housing accommodation" within the meaning of *Civil Code* § 54.1.

9.    At all times relevant and mentioned herein, Cross-Defendants were persons providing accommodations, advantages, facilities, privileges, and/or services in a business establishment, within the meaning of the Unruh Act, *Civil Code* § 51(b), and persons and entities providing housing accommodations, within the meaning of the Disabled Persons Act, *Civil Code* § 54.1.

10.    Cross-Complainants are ignorant of the true names and capacities of the Cross-Defendants sued herein as Zoes 1 through 100 inclusive, and therefore sue these Cross-Defendants by

2

**JULIA BROWNING AND MARTHA BROWNING'S CROSS-COMPLAINT**    **TRA2228**

1    such fictitious names under the provisions of *Code of Civil* § 474.  Cross-Complainants will seek

2    leave to amend this Cross-Complaint to allege their true names and capacities when ascertained.

3          11.    Cross-Complainants are informed and believe, and on that basis allege, that at all

4    times mentioned herein, and continuing to the present, each of the Cross-Defendants was and is the

5    agent, employee, servant, co-partner, joint venturer, and/or co-conspirator of each other Cross-

6    Defendant, and in doing, *inter alia*, the acts and omissions alleged herein, acted and continues to act

7    within the purpose and scope, and in furtherance, of said agency, employment, co-partnership, joint

8    venture and/or co-conspiracy, and that such acts were and continue to be consented to and ratified by

9    each of the other Cross-Defendants.

10          12.    Cross-Complainants are informed and believe, and on that basis allege, that at all

11    times mentioned herein, and continuing to the present, each of the Cross-Defendants was Cross-

12    Complainants' landlord, and Cross-Complainants were the tenants of the Cross-Defendants, as the

13    terms "landlord" and "tenant" are defined under California common law, *Code of Civil Procedure* §§

14    1161, *et seq.*, *Civil Code* § 1980, *et seq.*, under S.M.M.C. §§ 4.56.010(f), (i) and 4.56.020 and as

15    defined under other California statutory law.

16          13.    At all times relevant and mentioned herein, the Rental Unit was a "controlled rental

17    unit" pursuant to the provisions of Santa Monica Rent Control Charter Amendment

18    ("S.M.R.C.C.A.") §§ 1800, *et seq*, and a "rental housing unit" pursuant to S.M.M.C. §§ 4.56.010(h)

19    and 4.56.020.

20          14.    Cross-Complainants moved into the Rental Unit on or about September 1, 1999,

21    pursuant to a written lease (the "Rental Agreement") with Cross-Defendants' predecessors-in-

22    interest, a copy of which is attached hereto as Exhibit A.  When Cross-Complainants moved into the

23    Rental Unit, they and the Cross-Defendants or their predecessors-in-interest entered into a landlord-

24    tenant relationship.  This relationship, as well as the Rental Unit is subject to the Rent Control Laws,

25    municipal law, California state law and the Rental Agreement.

26          15.    Cross-Complainants' monthly rent at the time they moved in was $1,500.00.  Due to

27    the length of their tenancy and the rent control laws, Cross-Complainants' monthly rent is very low in

28    relation to comparable market-rate units in the same area.

3

1

**JULIA'S DISABILITY**

2    16.    At all times relevant and mentioned herein, Julia was also disabled under the meaning

3 of state and federal law, and specifically an "aggrieved person" and "person" within the meaning of

4 the Fair Employment and Housing Act ("FEHA"). *Gov. C.* §§ 12927(f), (g), 12955(a). In addition,

5 Julia is also a "person" as defined by the Unruh Act, *Civil Code* § 51(b), and an "individual with a

6 disability," as defined by *Civil Code* § 54.1(b)(1). She is also a tenant with disabilities within the

7 meaning of Santa Monica Municipal Code ("S.M.M.C.") § 4.28.030(i). Specifically, Julia has a

8 genetic condition that has caused severe neurological deficits including but not limited to intellectual

9 disability, quadriplegia and intractable epilepsy. She is unable to expressively communicate and is

10 completely reliant on Marti and other caregivers for all activities of daily living. She also requires

11 the use of oxygen tanks and a wheelchair.

12    17.    From 2007 to the present, Julia has kept an emotional support dog, which was granted

13 as an accommodation by Cross-Defendants' predecessor-in-interest.

14    18.    Marti's Rental Unit comes with the amenity of one parking stall in a carport.

15 Typically, she uses her parking stall to park a vehicle that has been specially-modified to transport

16 Julia when necessary. Every Friday afternoon, Julia's father (who does not live in the Rental Unit)

17 drives to the apartment building to visit and transport Julia. While he loads Julia, her wheelchair and

18 other necessary supplies into Marti's vehicle, he briefly parks his vehicle in the parking stall adjacent

19 to Cross-Complainants' stall, which that is assigned to Cross-Complainants' neighbors. Cross-

20 Complainants' neighbors have given express consent to the use of their stall for this purpose. Once

21 Julia is safely in Marti's vehicle, Julia's father moves Marti's vehicle out of the parking stall, and

22 moves his own vehicle into the parking stall assigned to the Rental Unit. Cross-Complainants are

23 informed and believe, and on that basis allege, that Cross-Defendants knew that Julia's father used

24 the two parking stalls to transport Julia every Friday afternoon.

25    19.    Since at least 2014, Marti has stored Julia's oxygen tanks and equipment used with

26 Julia's wheelchair to transport her from the carport to the Rental Unit (the "Stair Climber") near her

27 vehicle in the carport. Cross-Defendants' predecessor-in-interest granted the storage of both as an

28 accommodation to Cross-Complainants.

4

20.     At all times relevant and mentioned herein, Cross-Defendants have had actual and constructive notice of Julia's status as a disabled person.

<strong>CROSS-DEFENDANTS' ACTS OF HARASSMENT AND DISCRIMINATION</strong>

<strong>AGAINST CROSS-COMPLAINANTS</strong>

21.     Throughout Cross-Defendants' time as Cross-Complainants' landlords, Cross-Defendants have engaged in a pattern and practice of harassment and intimidation including, but not limited to, their unilateral elimination of services and amenities, their trespassing and entering the Rental Unit without consent or prior written notice, their unending threats of eviction, and their delay and sometimes refusal to provide habitable premises.

22.     In or about May 2014, Marti complained to Cross-Defendants' predecessor-in-interest who was acting as the current owners' agent and manager about several items including carpet that was in disrepair. Cross-Complainants are informed and believe, and on that basis allege, that the former manager sought approval from Cross-Defendants to address the carpet. Within days, Cross-Defendants fired him. Cross-Defendants later viewed the carpet in the Rental Unit. Despite open and obvious hazards attributed to the carpet's poor condition, Cross-Defendants refused to repair the carpet. Cross-Defendants then proceeded to berate and disparage Marti, calling her names and accusing her of contacting the management company too often. They also suggested to that Marti and her family should move out of the Rental Unit and live in "public housing" because of Julia's medical condition.

23.     In or about November and December 2015, Cross-Defendants unilaterally removed one of the Rental Unit's amenities by forbidding Cross-Complainants' reasonable use and exclusive possession of the private balcony. Specifically, Cross-Defendants told Cross-Complainants that they may use the balcony only for "planters in organized manner [sic]" and threatened to evict them if they failed to immediately remove all patio furniture on their patio. To avoid the expense of defending an eviction proceeding, Cross-Complainants agreed to remove their possessions from the Rental Unit's patio.

24.     In or about November and December 2015, Cross-Defendants sought to prohibit Julia from keeping the emotional support dog that she had for approximately eight years. Cross-

1  Complainants informed Cross-Defendants that removing the reasonable accommodation of Julia's

2  emotional support animal violated federal, state and local laws. However, Cross-Defendants were

3  undeterred. They served Cross-Complainants with a letter falsely accusing Cross-Complainants of

4  having unauthorized occupants in the Rental Unit, smoking in the Rental Unit (even though Marti's

5  son suffers from asthma) and questioning their predecessor-in-interest's granting of an

6  accommodation to Julia regarding the dog, threatening to increase the monthly rent and threatening to

7  evict Cross-Complainants.

8      25.    In December 2015, Cross-Complainants oven became defective, leaking and emitting

9  a heavy gas smell, through no fault of Cross-Complainants. The Southern California Gas Company

10 inspected the oven, and forbade the use of the oven due to, as the Gas Company put it, a "hazardous

11 condition." Cross-Complainants promptly notified Cross-Defendants of the Gas Company's findings

12 and conclusion, and asked for the oven to be repaired. Cross-Defendants waited over a month to

13 inspect the oven. Cross-Defendants' agent informed Cross-Complainants that he had repaired the

14 oven and that it was safe to use. That turned out to be untrue. The Gas Company, upon re-inspection

15 of the oven, informed Cross-Complainants that the oven was not in fact repaired, was emitting

16 approximately twelve times the acceptable amount carbon monoxide, and was not safe for use.

17 Cross-Defendants did not repair or replace the defective and dangerous oven until July 2016 – about

18 eight months after they became aware of it.

19     26.    In or about January 2016, Golshani and an agent of Cross-Defendants caused an agent

20 of theirs to enter the Rental Unit unannounced and without written notice pursuant to *Civil Code* §

21 1954. Cross-Complainants complained that they had not been given proper notice of entry pursuant

22 to *Civil* Code § 1954. In response to Cross-Complainants' complaint McNab served Cross-

23 Complainants with a "Final Warning Letter" (presumably as a first step in an eviction proceeding),

24 threatening to evict them.

25     27.    In or about January 2016, Cross-Defendants served Cross-Complainants with a Notice

26 of Entry pursuant to *Civil Code* § 1954 giving notice that they would enter the Rental Unit to inspect

27 the oven. Days after Cross-Defendants' unauthorized entry into Cross-Complainants' Rental Unit,

28 Cross-Defendants and their agent entered the Rental Unit under the guise of inspecting the oven.

**JULIA BROWNING AND MARTHA BROWNING'S CROSS-COMPLAINT**    **TRA2232**

Cross-Complainants are informed and believe, and on that basis allege, that Cross-Defendants' true intention in entering the Rental Unit was not to inspect the oven, but rather to invade Cross-Complainants' privacy by passing through the entire Rental Unit in search of violations that might underlie an eviction proceeding. Days after the Cross-Defendants' "inspection" of the oven, McNab threatened to evict Cross-Complainants, admitting that Cross-Defendants took pictures of Cross-Complainants' private balcony, and demanding that Cross-Complainants remove everything from the balcony or be evicted.

28.    In or about February 2016, Cross-Defendants again disparaged and threatened to evict Cross-Complainants . Cross-Defendants threatened to evict Cross-Complainants if Cross-Complainants' personal property, including Julia's Stair Lift, were not removed from the carport assigned to Cross-Complainants. Cross-Defendants made this threat even though the only property belonging to Cross-Complainants was Julia's oxygen tanks and the Stair Climber.

29.    In or about February 2016, Julia's father arrived at the Rental Unit to transport Julia as he always had on Friday afternoon. Cross-Defendants told him that was not allowed to do so, forcing Marti to have to leave her job to meet Julia and her father at the Rental Unit.

30.    In or about February 2016, Cross-Complainants met with a Deputy City Attorney for the City of Santa Monica and complaint about Cross-Defendants harassment and discrimination. Shortly thereafter, the Deputy City Attorney sent a letter to McNab and Brida asserting Cross-Complainants' rights to, among other things, store the Stair Climber and use an adjacent parking space for the safe transportation of Julia. Cross-Defendants did not respond to the Deputy City Attorney's letter but refused the reasonable accommodation of allowing Cross-Complainants to store the Stair Climber in the carport.

31.    In or about November 2016, Marti complained to Cross-Defendants regarding significant trip hazards in the Rental Unit due to the aging carpet. In response, Golshani, acting on behalf of herself and on behalf of Cross-Defendants, accused Julia of being a culprit and blamed her for the carpet's condition. As Golshani put it, Julia and her wheelchair were at least partly to blame for the carpet's poor condition. Golshani concluded that Cross-Complainants – not Cross-Defendants – would therefore be obligated to repair the carpet.

32.     In or about November 2016, an unidentified agent of Cross-Defendant entered the Rental Unit without permission, consent or prior written notice.  Cross-Complainants are informed and believe, and on that basis allege, that this unidentified agent entered the Rental Unit for the sole purpose of serving a legal notice on Cross-Complainants.  She was asked to leave immediately, at which point she walked away from the Rental Unit and toward Golshani.

33.     In or about January and February 2017, Cross-Defendants increased their acts of harassment and discrimination.  On at least two separate occasions, Cross-Defendants' agent entered the Rental Unit without consent or prior written notice.  Days later, Golshani entered the property in which the Rental Unit is located and blocked Marti's specially-modified vehicle in a way that was intended to prevent Marti from being able to transport Julia in it.  The very next day, Golshani entered the property in which the Rental Unit is located and proceeded to take photographs of Marti's guest leaving the Rental Unit.  The aforementioned conduct resulted in a restraining order being issued against Golshani.

**FIRST CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA FEHA – HOUSING DISCRIMINATION (Cal. Gov't. Code § 12900, *et seq.*)**

**(by Cross-Complainants against all Cross-Defendants)**

34.     Cross-Complainants reallege and incorporate each of the foregoing allegations as though fully set forth herein.

35.     Julia's medical condition qualifies her as disabled under *Government Code* § 12900, *et seq.*  Cross-Defendants knew or reasonably should have known that Julia suffered from her disability.  Cross-Complainants are "aggrieved persons" under FEHA since they "claim to have been injured by a discriminatory housing practice or believes that they will be injured by a discriminatory housing practice."

36.     FEHA makes it unlawful for the owners, lessees, agents or any person having any legal or equitable right of ownership or possession or the right to rent or lease a housing accommodation to discriminate against any person because of disability. By engaging in the conduct set forth herein, Cross-Defendants engaged in unlawful discrimination on the basis of Julia's disability.

37.     Cross-Complainants are informed and believe that the course of conduct by Cross-Defendants was an effort to intimidate and harass Cross-Complainants, which was motivated, in part or in whole, and/or has had a discriminatory effect on the basis of disability in violation of their rights under *Government Code* § 12900, *et seq.* In so doing, Cross-Defendants were committing a discriminatory housing practice.

38.     Cross-Defendants knew, or in the exercise of reasonable care should have known, that their conduct as alleged herein would cause Cross-Complainants financial and emotional harm.

39.     As a direct and proximate result of the conduct of Cross-Defendants alleged herein, Cross-Complainants have suffered financial and emotional harm in an amount exceeding the jurisdictional limits of this Court, to be established according to proof at trial.

40.     The conduct of Cross-Defendants alleged herein was and continues to be oppressive, fraudulent, malicious, and done with conscious disregard of Cross-Complainants' rights. Cross-Complainants are therefore entitled to recover punitive damages against Cross-Defendants in an amount to be determined at trial.

**SECOND CAUSE OF ACTION FOR VIOLATION OF UNRUH CIVIL RIGHTS ACT –**

**HOUSING DISCRIMINATION (Cal. Civ. Code § 51, et seq.)**

**(by Cross-Complainants against all Cross-Defendants)**

41.     Cross-Complainants reallege and incorporate each of the foregoing allegations as though fully set forth herein.

42.     Julia's medical conditions qualifies her as disabled under the definition provided by FEHA, section 12900, *et seq.* Cross-Defendants knew or reasonably should have known that Julia suffered from her disability.

43.     The Unruh Civil Rights Act ("Unruh Act") makes it unlawful for the landlords of a housing accommodation to discriminate against any person because of disability. By engaging in the conduct set forth herein, Cross-Defendants engaged in unlawful discrimination on the basis of Julia's disability, and targeted Cross-Complainants based upon Julia's disability status.

44.     Cross-Complainants are informed and believe that the course of conduct by Cross-Defendants described herein, was in an effort to intimidate and harass Cross-Complainants, and was

motivated, in part or in whole, and/or has had a discriminatory effect on the basis of disability in violation of their rights under the Unruh Act. In so doing, Cross-Defendants were committing a discriminatory housing practice.

45.     Cross-Defendants knew, or in the exercise of reasonable care should have known, that their conduct as alleged herein would cause Cross-Complainants and others similarly situated to suffer financial and emotional harm.

46.     As a direct and proximate result of the conduct of Cross-Defendants alleged herein, Cross-Complainants have suffered financial and emotional harm in an amount exceeding the jurisdictional limits of this Court, to be established according to proof at trial.

47.     The conduct of Cross-Defendants alleged herein was oppressive, fraudulent, malicious, and done with conscious disregard of Cross-Complainants' rights. Cross-Complainants are therefore entitled to recover punitive damages against the Cross-Defendants in an amount to be determined at trial.

## THIRD CAUSE OF ACTION FOR BREACH OF STATUTORY WARRANTY OF HABITABILITY

### (by Cross-Complainants against all Cross-Defendants)

48.     Cross-Complainants reallege and incorporates each of the foregoing allegations as though fully set forth herein.

49.     By the acts and omissions alleged herein, Cross-Defendants have violated various statutes pertaining to the warranty of habitability under California law, including, among others, *Civil Code* § Section 1941, *et seq*. and *Health and Safety Code* § 17920.3, related to the warranty of habitability for the Rental Unit.

50.     Marti notified Cross-Defendants of these unhealthy and defective conditions. Cross-Defendants inspected the Rental Unit but failed to and refused to repair these dangerous and defective conditions within a reasonable time. Accordingly, Cross-Complainants are informed and believe and hereon alleges, that Cross-Defendants had actual and or constructive notice of each of the defective conditions described herein at all relevant times. Despite said notice, Cross-Defendants failed to take all reasonable and necessary steps to repair such conditions at all times relevant herein.

1    51.    Cross-Complainants paid rent to Cross-Defendants during their tenancy at the Rental

2    Unit.

3    52.    Neither Cross-Complainants nor anyone acting on their behalf have done anything to

4    cause, create or contribute to the existence of the defective conditions alleged herein.  Further, the

5    Rental Unit, as they existed in a defective and dangerous condition, had no rental value whatsoever or

6    a very limited rental value.

7    53.    As a direct and proximate result of Cross-Defendants' breach of statutory warranty of

8    habitability and Cross-Defendants' failure to repair the defective and dangerous conditions of the

9    Rental Unit, Cross-Complainants have suffered damages in an amount to be proven at trial.

10    54.    Cross-Defendants failed to protect the life, safety and property of Cross-Complainants.

11    Instead, they disregarded housing and safety laws to Cross-Complainants' detriment and for their

12    benefit.

13    55.    Cross-Defendants knew or should have known that permitting the defective conditions

14    alleged herein to exist at the Rental Unit injured, and would continue to injure, Cross-Complainants'

15    physical and emotional health and well-being, and that such conduct would constitute a serious threat

16    and danger to their health and safety.

17    56.    As a direct and proximate result of Cross-Defendants' conduct, the Rental Unit was

18    and is in a substandard condition.  Cross-Complainants have suffered damages, including personal

19    injury, economic loss, non-economic loss and general damages, as well as emotional distress, all to

20    their detriment, in an amount to be determined at trial.  As alleged herein, Cross-Defendants' conduct

21    also justifies the imposition of punitive damages.

22    **FOURTH CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY OF**

23    **HABITABILITY**

24    **(by Cross-Complainants against all Cross-Defendants)**

25    57.    Cross-Complainants realleged and incorporate each of the foregoing allegations as

26    though fully set forth herein.

27    58.    The warranty of habitability is implied in all residential rental agreements and imposes

28    upon a landlord the obligation to maintain the leased dwelling in a habitable condition throughout the

11

1  term of the lease. This implied warranty of habitability is a corollary to the residential landlord's

2  statutory obligation under *Civil Code* § 1941, *et seq.*

3       59.    Cross-Defendants violated the warranty of habitability implied in the Rental

4  Agreement and implied by their tenancy at the Rental Unit, by undertaking the course of conduct

5  described herein that directly resulted in the existence of the defective and dangerous conditions

6  alleged herein.

7       60.    Cross-Defendants failed to protect the life, safety and property of Cross-Complainants.

8  Instead, they disregarded housing and safety laws to Cross-Complainants' detriment and for their

9  benefit.

10      61.    Cross-Defendants knew or should have known that permitting the defective conditions

11  alleged herein to exist at the Rental Unit injured, and would continue to injure, Cross-Complainants'

12  physical and emotional health and well-being, and that such conduct would constitute a serious threat

13  and danger to their health and safety.

14      62.    As a direct and proximate result of Cross-Defendants' conduct, the Rental Unit were

15  in a substandard condition. Cross-Complainants have suffered damages, including personal injury,

16  economic loss, non-economic loss and general damages, as well as emotional distress, all to their

17  detriment, in an amount to be determined at trial.  As alleged herein, Cross-Defendants' conduct also

18  justifies the imposition of punitive damages.

19                **FIFTH CAUSE OF ACTION FOR NEGLIGENCE**

20              **(by Cross-Complainants against all Cross-Defendants)**

21      63.    Cross-Complainants reallege and incorporate each of the foregoing allegations as

22  though fully set forth herein.

23      64.    By reason of the landlord-tenant relationship between the Cross-Complainants and

24  Cross-Defendants, Cross-Defendants owed Cross-Complainants the duty to exercise reasonable care

25  in the management and control of their real property, a duty to provide Cross-Complainants with a

26  residential rental property meeting minimum standards of habitability, and were required to allow

27  Cross-Complainants the peaceful and quiet enjoyment of the Rental Unit.

28

65.     By the conduct alleged herein, the Cross-Defendants negligently breached the duties owed to Cross-Complainants.

66.     As a direct and proximate result of the conduct of Cross-Defendants alleged herein, Cross-Complainants have suffered and continue to suffer actual and special damages, including physical injuries, mental/emotional trauma, and general damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION FOR NUISANCE

### (by Cross-Complainants against all Cross-Defendants)

67.     Cross-Complainants reallege and incorporate each of the foregoing allegations as though fully set forth herein. §

68.     The defective and dangerous conditions of the Rental Unit as alleged herein, as well as the invasive photographic surveillance and incessant entrances into the Rental Unit by the landlord (both with and without proper notice), constituted a nuisance within the meaning of *Civil Code* § 3479 and *Code of Civil Procedure* § 731 in that they deprived Cross-Complainants of the safe, healthy and comfortable use of the Rental Unit, were indecent and offensive to the senses, were obtrusive to the free use of the Rental Unit, and caused Cross-Complainants significant damage and injury.

69.     Cross-Defendants owed a duty to Cross-Complainants as the as the owners, landlords and managers of the Rental Unit, which they breached by, among other things, maintaining and/or failing to abate a nuisance within the meaning of *Civil Code* § 3479 and *Code of Civil Procedure* § 731.

70.     As a proximate result Cross-Defendants' maintenance and/or failure to abate the nuisance, Cross-Complainants suffered personal injury, discomfort, emotional distress and annoyance, in an amount to be determined at trial.

71.     In maintaining the nuisance, the Cross-Defendants have acted and continue to act with full knowledge of the consequences thereof and of the damage being caused to Cross-Complainants. Despite this knowledge, Cross-Defendants failed to fully abate the nuisance as alleged herein, as well as the invasive photographic surveillance and incessant entrances into the Rental Unit by the landlord

(both with and without proper notice) or causing the oven and heater to be repaired in a timely and proper manner, and by continuing their invasive video surveillance. Cross-Defendants' acts and omissions alleged herein have proximately caused Cross-Complainants to suffer the following damages: loss of use of the Rental Unit and rent differential damages, personal injury, emotional distress, decrease in housing services without a corresponding reduction in rent, overpayment and/or excessive payment of rent, loss of employment, loss of earning capacity, loss of wages, loss of use and enjoyment of the property, fear of loss of housing, substantial discomfort and annoyance, the amount of which exceeds the minimum jurisdictional threshold of this Court and which will be proven at trial.

72.    Cross-Defendants' actions and/or failure to act were both oppressive and malicious within the meaning of *Civil Code* § 3294, in that it subjected Cross-Complainants to cruel and unjust hardship in willful and conscious disregard of their rights and safety. As such, Cross-Complainants are entitled to recover punitive damages in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT

### (by Cross-Complainants against all Cross-Defendants)

73.    Cross-Complainants realleged and incorporate each of the foregoing allegations as though fully set forth herein.

74.    A Rental Agreement exists between Cross-Complainants and Cross-Defendants' predecessor-in-interest pertaining to Cross-Complainants' tenancy at the Rental Unit. This Rental Agreement contains implied covenants including, but not limited to, the following: an implied warranty of habitability and an implied covenant of quiet use and enjoyment as well as Cross-Defendants' abiding by state and federal disability discrimination laws. Cross-Complainants performed all of the obligations under the Rental Agreement except those obligations for which they were excused or which they were prevented from performing by Cross-Defendants' actions and/or omissions.

75.    As set forth herein, Cross-Defendants unlawfully and intentionally mismanaged the Rental Unit in violation of the Rental Agreement between the parties. In committing the acts complained of, Cross-Defendants materially breached the implied terms of the Rental Agreement

1  between Cross-Complainants and Cross-Defendants' predecessor-in-interest, and caused the damages

2  and injuries to Cross-Complainants complained of above.

3      76.    As a proximate cause of the conduct of Cross-Defendants, Cross-Complainants have

4  suffered, and continue to suffer, actual damages and general damages in an amount to be determined

5  at trial.

6  **EIGHTH CAUSE OF ACTION FOR BREACH OF COVENANT OF QUIET ENJOYMENT**

7  **(by Cross-Complainants against all Cross-Defendants)**

8      77.    Cross-Complainants realleged and incorporate each of the foregoing allegations as

9  though fully set forth herein.

10     78.    By the acts and omissions described above, Cross-Defendants interfered with,

11  interrupted, and deprived Cross-Complainants of the full and beneficial use of the Rental Unit and

12  disturbed his peaceful possession of the Rental Unit.

13     79.    These acts of interference, interruption, deprivation, and disturbance by the Cross-

14  Defendants amounted to breaches of the covenant of quiet enjoyment implied in all rental

15  agreements, and codified in *California Civil Code* § 1927.

16     80.    As a direct and proximate result of Cross-Defendants' violation of Cross-

17  Complainants' right to the quiet enjoyment of the Rental Unit, Cross-Complainants have suffered,

18  and continue to suffer, actual damages and general damages in an amount to be determined at trial.

19  Cross-Defendants' conduct as alleged herein also justifies the imposition of punitive damages.

20  **NINTH CAUSE OF ACTION FOR RENT OVERCHARGE**

21  **(S.M.R.C.C.A. § 1809(a))**

22  **(by Cross-Complainants against all Cross-Defendants)**

23     81.    Cross-Complainants realleged and incorporate each of the foregoing allegations as

24  though fully set forth herein.

25     82.    Due to the length of Cross-Complainants' tenancy, Cross-Complainants' rent was

26  below market rate based upon the rental limitations set forth in the Rent Control Laws.  Cross-

27  Defendants violated the Rent Control Laws by causing Cross-Complainants to pay a monthly rental

28  amount for the Rental Unit which exceeded the limitations set forth in the Rent Control Laws, due to

the decrease in housing services without a corresponding reduction in rent resulting from the

defective and dangerous conditions of the Rental Unit, the loss of use of the patio, and the invasive

entries into the Rental Unit as alleged herein, the breaches of the warranty of habitability alleged

herein, and the breaches of covenant of quiet enjoyment alleged herein.

83.    The Cross-Defendants had actual and constructive knowledge of the decreases in

housing services described herein and they failed to grant Cross-Complainants a corresponding

reduction in rent.  By failing to reduce Cross-Complainants' rent to compensate for the decreases in

housing services at the Rental Unit, as well as the other allegations herein, Cross-Defendants have

charged Cross-Complainants a rental amount which exceeds the limitations set forth in the Rent

Control Laws.

84.    Pursuant to S.M.R.C.C.A. § 1809(a), Cross-Complainants are entitled to a rebate of all

rent overcharges paid in amounts to be proven at trial, a penalty of treble damages, and an award of

reasonable attorney's fees.

## TENTH CAUSE OF ACTION FOR UNLAWFUL THREAT TO TERMINATE TENANCY

## (S.M.R.C.C.A. § 1806(f))

### (by Cross-Complainants against all Cross-Defendants)

85.    Cross-Complainants realleged and incorporates each of the foregoing allegations as

though fully set forth herein.

86.    At all pertinent times, Cross-Complainants' tenancy at the Rental Unit was covered by

the Rent Control Laws.  S.M.R.C.C.A. prohibits a landlord from recovering possession of a rental

unit, except as provided by S.M.R.C.C.A. § 1806(a).

87.    Cross-Complainants are informed and believe and thereby alleges that Cross-

Defendants' actions, as set forth herein, lacked any good faith basis, and said actions included but

were not limited to attempting to influence Cross-Complainants to vacate the Rental Unit through

coercion, intimidation and a barrage of eviction threats.  Cross-Defendants had the unlawful

intention, ulterior motive and dishonest intent to force Cross-Complainants to vacate their Rental

Unit in violation of the Santa Monica Rent Control Charter Amendment, including but not limited to

Section 1806(a), which provides the legal just causes for eviction.

88.    As a direct and proximate result of said acts and omissions on the part of Cross-Defendants, Cross-Complainants have suffered special and general damages as is alleged herein.

89.    S.M.R.C.C.A. § 1806 (f) provides for an award of reasonable attorney's fees to the prevailing party to any action brought under this section, and Cross-Complainants are entitled to such an award of attorney's fees from Cross-Defendants.

90.    Also pursuant to S.M.R.C.C.A. § 1806(f), Cross-Complainants are entitled to recover punitive damages against Cross-Defendants in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION FOR TENANT HARASSMENT

### (S.M.M.C. § 4.56.010, *et seq.*)

### (by Cross-Complainants against all Cross-Defendants)

91.    Cross-Complainants reallege and incorporate each of the foregoing allegations as though fully set forth herein.

92.    By the acts and omissions described above, Cross-Defendants have violated the Santa Monica Tenant Harassment Ordinance (S.M.M.C. § 4.56.010, *et seq.*).

93.    For each act of wrongful harassment, Cross-Defendants are liable for all of the remedies established in S.M.M.C. § 4.56.040.

94.    Pursuant to S.M.M.C. § 4.56.040(d), Cross-Defendants are liable for each separate act in violation of the Tenant Harassment Ordinance, for the actual damages suffered or for statutory damages in the sum of $10,000 per offence, which is greater, and for Cross-Complainants' fees and costs.

95.    Pursuant to S.M.M.C. § 4.56.040(d), Cross-Defendants are liable for each separate act in violation of the Tenant Harassment Ordinance, in the sum of an additional penalty not to exceed $5,000 per offence.

96.    The conduct of Cross-Defendants alleged herein was oppressive, fraudulent, malicious, and done with conscious disregard of Cross-Complainants' rights. Cross-Complainants are therefore entitled to recover punitive damages against the Cross-Defendants in an amount to be determined at trial.

1

## TWELFTH CAUSE OF ACTION FOR TENANT HARASSMENT

2

### (S.M.M.C. § 4.28.010, *et seq.*)

3

### (by Cross-Complainants against all Cross-Defendants)

4       97.    Cross-Complainants reallege and incorporate each of the foregoing allegations as

5   though fully set forth herein.

6       98.    By the acts and omissions described above, Cross-Defendants have violated the Santa

7   Monica Housing Anti-Discrimination Code (S.M.M.C. § 4.28.010, *et seq.*).

8       99.    For each act of wrongful harassment, Cross-Defendants are liable for all of the

9   remedies established in S.M.M.C. §§ 4.28.060 and 4.28.070.

10

## THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE § 1940.2

11

### (by Cross-Complainants against all Cross-Defendants)

12      100.    Cross-Complainants reallege and incorporate each of the foregoing allegations as

13  though fully set forth herein.

14      101.    *Civil Code* § 1940.2(a) prohibits a landlord from influencing a tenant to vacate a

15  dwelling by certain prohibited acts, including intentional significant violations of entry rights

16  pursuant to Civil Code § 1954.

17      102.    As alleged above, Cross-Defendants entered the Rental Unit for the purpose of

18  harassing Cross-Complainants in violation of *Civil Code* § 1954.  These entries were done

19  intentionally to cause or influence Cross-Complainants to vacate the Rental Unit.

20      103.    By committing the acts complained of above, Cross-Defendants are liable for actual

21  damages sustained by Cross-Complainants, and for statutory damages in an amount up to $2,000 for

22  each violation.

23

## FOURTEENTH CAUSE OF ACTION FOR TRESPASS

24

### (by Cross-Complainants against all Cross-Defendants)

25      104.    Cross-Complainants reallege and incorporate each of the foregoing allegations as

26  though fully set forth herein.

27      105.    As set forth herein, on numerous occasions, Cross-Defendants entered the Rental Unit

28  without lawful and adequate notice or permission.

106.    Each herein mentioned entry into the Rental Unit by Cross-Defendants overreached the limits of the consent granted for such an entry by Cross-Complainants and according to law, amounting to a trespass to land by the Cross-Defendants.

107.    As a proximate result of the conduct of the Cross-Defendants, Cross-Complainants have suffered physical injury and emotional and mental distress in an amount to be proven at trial.

108.    The acts of Cross-Defendants were willful, wanton, malicious and oppressive, and justify the awarding of exemplary and punitive damages.

### PRAYER

WHEREFORE, Cross-Complainants pray for judgment as follows:

1.    For a preliminary and permanent injunction enjoining Cross-Defendants and their officers, directors, shareholders, employees, agents, independent contractors, partners, assignees, successors, representatives and all persons acting under, in concert with, or for them from any activities resulting in further harassment and/or discrimination against Cross-Complainants;

2.    For general damages according to proof, but in excess of the jurisdictional limits of this Court;

3.    For special damages according to proof, but in excess of the jurisdictional limits of this Court;

4.    For statutory damages and penalties under FEHA and Unruh Act;

5.    For attorney's fees under FEHA, Unruh, the Santa Monica Municipal Code, and as otherwise allowed by law;

6.    For civil penalties pursuant to the Santa Monica Municipal Code;

7.    For civil penalties pursuant to *Civil Code* § 1940.2;

8.    For exemplary and punitive damages as allowed by law;

9.    For costs of suit;

10.    For interest, including prejudgment interest at the legal rate; and

**JULIA BROWNING AND MARTHA BROWNING'S CROSS-COMPLAINT**    **TRA2245**

11.    For such other and further relief as the Court deems just and proper.

DATED:  February 22, 2017                    PURITSKY LAW


                                             By _____
                                                 Eric A. Puritsky
                                             Attorneys for  Cross-Complainants,
                                             Martha Browning and Julia Browning, an incompetent
                                             person, by and through her conservator, Martha
                                             Browning

JULIA BROWNING AND MARTHA BROWNING'S CROSS-COMPLAINT                **TRA2246**



Travelers Casualty Insurance Company of America
P.O. Box 6511
Diamond Bar, CA 91765
Telephone:  (909) 612-3308
Fax:  (866) 557-1197

April 27, 2020


BY EMAIL and US Mail:  rosario@oceanlaw.com


Rosario Perry
Law Offices of Rosario Perry
312 Pico Blvd
Santa Monica, CA 90405-1108


RE:     ***City of Santa Monica v. McNab, et al.***
         Court:               Superior Court of Los Angeles, California
         Case Number:         SC125490
         Claim Number:        E7G7996
         Insured:             Brida Properties, LLC
         Policy Number:       680-6F285163
         Effective dates:     March 6, 2015 to March 6, 2016
                              renewed through March 6, 2018
         Issuing Company:     Travelers Casualty Insurance Company of America


Dear Mr. Perry:

This letter is to respond to your tender of the Second Amended Complaint filed by the City of Los Angeles to Travelers Casualty Insurance Company of America ("Travelers") under the general liability policy of Brida Properties, LLC ("Brida").

Travelers understands that the City's allegations are disputed by the defendants and may be untrue, incomplete or embellished, and the Travelers does not conclude that any allegation is true.  No statement in this letter should be construed otherwise.  However, they are referred to in order to determine any coverage obligation under the policy.

The Second Amended Complaint, filed by the City of Los Angeles on January 29, 2020, alleges that the defendant landlords harassed and discriminated against their tenants, Marti Browning and her disabled and handicapped daughter, Julia Browning, in bad faith in order to get them to vacate their units.  The defendants harassed, vexed and annoyed the tenants by restricting their parking and affecting the transfer of Julia from her wheelchair to their vehicle.  It is also alleged the defendants threatened to evict the tenants for failing to remove a wheelchair lift device from their parking space and failing to move their vehicle from the adjacent sidewalk area on Friday

1

**TRA2301**

afternoons, when the usual transfer from apartment to vehicle occurred.  It is alleged that the defendants caused the tenants' hot water to be shut off for 4 days in February 2016.  Furthermore, it is alleged that defendant Kathy Golshani ("Golshani") wrongfully entered the Browning's apartment adverse to a court order and that she wrongfully blocked the access to the Browning's parking space with her vehicle.  The  City asserts the defendants' harassment was discriminatory based on the disability of Julia Browning.  It is also claimed that Golshani took pictures of Marti Browning's friend, Andrew Nappin, in February 2017 and on June 13, 2019, she allegedly reported him to the police as a threatening and suspicious person.  The City alleges these acts are violations of the California Unruh Act, California Fair Employment and Housing Act, and the City of Santa Monica's Housing Anti-Discrimination Ordinance and resulted in 7 restraining orders against Golshani.

The complaint states the following Causes of Action:

|   |   |
|---|---|
| 1. | Tenant Harassment |
| 2 | Housing Anti-Discrimination Ordinance |
| 3 | Unruh Civil Rights Act |
| 4 | Injunctive Relief |
| 5 | Tenant Harassment Ordinance |

The City seeks injunctive relief, damages on behalf of Marti Browning and Julia Browning, statutory damages, punitive damages, investigative costs, attorney fees and costs.    ]

Travelers issued policy number 680-6F285163 to Brida for the policy period of March 6, 2015 through March 6, 2016, and renewed through March 6, 2018 ("Policy").   Any allegations outside the Policy periods, including the alleged police phone call regarding Andrew Nappin, fall outside the Policy periods and would not be covered.   The Policy includes general liability coverage with a $1,000,000 each occurrence/personal and advertising injury limit;  and a general aggregate of $2,000,000.   The main coverage form is **CG 00 01 10 01 COMMERCIAL GENERAL LIABILITY COVERAGE FORM**.  The Coverage **A** insuring agreement of this form reads in relevant part, as follows:

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
### 1.  Insuring Agreement

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

      **(1)** The amount we will pay for damages is limited as described in Section **III-** Limits Of Insurance; and

      **(2)**  Our right and duty to defend ends when we have used up the applicable limit Of insurance in the payment of judgments or settlements under Coverages **A**

Or **B** or medical expenses under Coverage **C.**
No other obligation or liability to pay sums or perform acts or services is covered
Unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence"
that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period;

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** –
Who Is An Insured and no "employee" authorized by you to give or receive
notice of an "occurrence" or claim, knew that the "bodily injury" or "property
damage" had occurred, in whole or in part.
...

The Policy defines the following terms as follows:

\* \* \* \*

**3.** "Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright,
disability, humiliation, sickness or disease sustained by a person, including death
resulting from any of these at any time. (CG D1 86 11 03)

\* \* \* \*

**17.** "Property damage" means:
**a.** Physical injury to tangible property, including all resulting loss of use of
that property. All such loss of use shall be deemed to occur at the time
of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such
loss of use shall be deemed to occur at the time of the "occurrence" that
caused it. (CG D2 56 11 03)

\* \* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure
to substantially the same general harmful conditions.

\* \* \* \*

The City's allegations do not raise any specific claim for "bodily injury" or "property damage"
arising from an "occurrence". All of the allegations by the City assert intentional acts and would
not be considered an accident or an "occurrence".

**TRA2303**

The policy also contains the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \* \*

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Additionally, the Policy has the following endorsement, **CG D1 42 01 99, EXCLUSION – DISCRIMINATION** which states in pertinent part, as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** – is amended by adding the following additional exclusion:

   (This Insurance does not apply to:)

   "Bodily injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

   \* \* \* \*

The City's complaint asserts that the defendants acted in bad faith, with intent to vex, harass and annoy, and with discriminatory intent towards the Brownings. The above exclusions confirm the further coverage restrictions in relation to this claim. There is no coverage for any action on the defendants' behalf done intentionally and with intent to cause harm, nor for any "bodily injury" arising from any "personal or advertising injury", or arising out of discrimination based on a person's physical or mental capabilities or condition.

The Policy also provides coverage under Coverage **B** for "personal injury" and "advertising injury". This coverage is described in the same Policy form and has the following insuring agreement:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

4

**TRA2304**

1.    **Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

      **(1)**  The amount we will pay for damages is limited as described in Section **III**- Limits Of Insurance; and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    **b.**  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The definition of "personal injury" is updated in Policy form **CG D4 71 02 09 AMENDMENT OF COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** as follows:

"Personal injury":

**a.**  Means injury, other than "advertising injury", caused by one or more of the following offenses:

    **(1)**  False arrest, detention or imprisonment;

    **(2)**  Malicious prosecution;

    **(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

    **(4)**  Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparages; or

    **(5)**  Oral or written publication, including publication by electronic means, of material that:

      **(a)**  Appropriates a person's name, voice, photograph or likeness;

      **(b)**  Unreasonably places a person in a false light; or

      **(c)**  Discloses information about a person's private life.

**TRA2305**

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

This coverage is subject to the following pertinent exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

The Policy also contains endorsement **CG D1 42 01 99, EXCLUSION – DISCRIMINATION**, which states in pertinent part as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

\* \* \* \*

2.    **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** – is amended by adding the following additional exclusion:

(This insurance does not apply to:)

"Personal injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

While there is an allegation of wrongful entry into the tenants' unit, the City was not a tenant and there is no injury to the City for this act. The City alleges the defendants' actions were in bad faith with intent to harass and discriminate against the Brownings and in violation of Santa Monica municipal code sections. The Policy exclusions noted above apply to preclude coverage for the City's lawsuit. Moreover, the City's complaint alleges that it is pursuing actual damages suffered by the Brownings. However, as you know, the Brownings previously filed their own lawsuit alleging the same acts as asserted by the City and settled and resolved their claims against the defendants for the Policy limit of $1,000,000. The Brownings cannot assert any further damages against defendants for these same acts. Additionally, as the Policy limit has been exhausted, it is Travelers' position that there is no duty to defend any remaining claims arising from the City's lawsuit, even if coverage were triggered, which Travelers contends it is not.

6

**TRA2306**

Due to the lack of coverage found under the Policy, along with the exhaustion of the Policy limits, Travelers declines to provide a defense or indemnity to any defendants in this matter. It is noted that there may be other terms, conditions and exclusion in the Policy that may apply to this claim. Reference to some of those terms, conditions and exclusions in this letter is not intended to waive or estop Travelers from relying on other terms, conditions and exclusions that may be applicable. Travelers expressly reserves all rights under the Policy.

Travelers' position is based on the information presently available to us. If you have any information that you feel would be relevant to our coverage determination, please forward that information to our office for further consideration. We are also available to review any further amended complaint for any potential change in our coverage position.

California Code of Regulations, Title 10, Chapter 5, Section 2695.7 (B) (3) requires that we advise you that if you think this claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance. The Department's address is:

> California Department of Insurance
> Consumer Insurance Division
> 300 South Spring Street, 11th. Floor
> Los Angeles, CA 90013
> (800) 927-HELP or (213) 897-5961

Should you have any questions about this letter or know of any other matters which you believe Travelers has failed to consider which may impact our coverage opinion, please let us know at your earliest convenience.

Sincerely,
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

*Carol Simmons*
Carol Simmons
Claim Professional, Liability
Phone: (909) 612-3308
Fax: (866) 557-1197
CUSIMMON@TRAVELERS.COM

cc: Seeman Holtz P&C Inc

**TRA2307**

Electronically FILED by Superior Court of California, County of Los Angeles on 01/29/2020 01:15 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Watson,Deputy Clerk

LANE DILG
City Attorney
GARY RHOADES, Bar No. 166149
Deputy City Attorney
1685 Main Street, Room 310
Santa Monica, California 90401
Telephone: (310) 458-8336 Facsimile:
(310) 395-6727

Attorneys for Plaintiff
CITY OF SANTA MONICA

*Exempt from filing fee pursuant
to Government Code §6103*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CITY OF SANTA MONICA,<br><br>           Plaintiff,<br><br>   v.<br><br>CECIL MCNABB, KATHY GOLSHANI,<br>BRIDA LLC, and DOES 1-10,<br><br>           Defendants. | CASE NO.: SC125490<br><br>Honorable Craig O. Karlan<br><br>**SECOND AMENDED COMPLAINT**<br><br>(Tenant Harassment and Housing<br>Discrimination, Santa Monica Municipal<br>Code sections 4.56.020 and 4.28.030;<br>California Civil Code section 51) |

## <u>INTRODUCTION</u>

1.     The defendants are Santa Monica landlords who have tried to disrupt the already challenging daily routine of a mother taking care of her severely developmentally disabled daughter. The daughter is quadriplegic with cerebral palsy and intractable epilepsy, and she requires special care in the transfer of herself and wheelchair in a ramp-equipped van. The landlords' sudden actions, including an attempt to stop an innocuous but much needed fifteen-minute transfer of the daughter to the accessible van in the owners' carport, are transparently intended to force the mother and daughter out of their longtime and rent-

controlled home so that the landlords can double the rent.

2.      Under the landlords' harassment campaign, they have threatened the mother and daughter with eviction and other sanctions if the tenants did any one of three things: 1) continue to use an adjacent parking space and driveway once a week for fifteen minutes to make a safe transfer for  Julia Browning (in her wheelchair) into the ramp- equipped van; 2) fail to remove from a storage area adjacent to their parking space a two- hundred pound lift device that moves wheelchairs up and down stairs, particularly from the carport; and, 3) in a new rule suddenly imposed this year, fail to move their vehicle from their own parking space on Friday afternoons, the very day the switch occurs.

3.      This lawsuit arises from the defendants' proactive harassment of the tenants as well as their refusal to grant a disabled tenant reasonable accommodations. The City of Santa Monica brings this case pursuant to the Tenant Harassment Ordinance, Santa Monica Municipal Code sections 4.56.010-4.56.040 ("the THO") and the Housing Anti- Discrimination Ordinance, section t28.030 ("the HADO"), and California Civil Code section 51. The City seeks injunctive relief; actual, statutory, and punitive damages; and attorneys' fees and costs.

## **PARTIES**

4.      The City is a municipal corporation and a California charter city. The City has standing to bring this action pursuant to Santa Monica Municipal Code sections 4.56.040(b) and (c); section 4.28.070; and California Civil Code section 52(c).

5.      The City is informed and believes and on that basis alleges that the defendant and landlord Cecil McNabb is a Los Angeles County resident doing business as Brida LLC in Los Angeles County. McNabb also manages the subject property. To the extent that he is an agent of Brida, he performed the acts of harassment and discrimination described below wrongfully and with bad faith.

6.      The City is informed and believes and on that basis alleges that the defendant and landlord Kathy Golshani is a Los Angeles County resident who manages the subject

TRA2309

Property on behalf of Brida LLC and Cecil McNabb. To the extent that he is an agent of Brida, he performed the acts of harassment and discrimination described below wrongfully and with bad faith.

7.      The City is informed and believes and on that basis alleges that the defendant Brida, LLC is a California limited liability company doing business in Los Angeles County.

8.      The City is informed and believes and on that basis alleges that at all times described below, each of the defendants was the agent and employee of each of the other defendants, and in doing the things alleged was acting within the course and scope of that agency and employment.

## **FACTUAL BACKGROUND**

9.      This case concerns a residential rental property located at 1123 17th Street in the City of Santa Monica, California ("the Property"). At all times relevant to this lawsuit, the Property was owned by defendants Cecil McNabb and Brida LLC and managed by Kathy Golshani and Cecil McNabb. At all times relevant to this lawsuit, the defendants were "landlords" with respect to the Property pursuant to Santa Monica Municipal Code sections 4.56.010(c) and 4.56.020. As a landlord with a Santa Monica business license, each defendant also operated a "business establishment" under California Civil Code section 51(b).

10.      The subject rental unit at the Property, Unit 6, was a "controlled rental unit" pursuant to the Santa Monica Rent Control laws, City Charter sections 1800 et seq.; and "rental housing unit" pursuant to Santa Monica Municipal Code sections 4.56.010(f) and 4.56.020.

11.      Marti Browning and Julia Browning are "tenants" at the Property within the meaning of Santa Monica Municipal Code sections 4.56.010(g) and 4.56.020. At all times relevant to this lawsuit, their units at the Property are "rental housing units" within the meaning of Santa Monica Municipal Code sections 4.56.010(f) and 4.56.020.

12.      Julia Browning is a tenant with disabilities within the meaning of S.M.M.C.

TRA2310

section 4.28.030(i) and California Civil Code sections 51(c)(l) and (3). Moreover, Julia's disabilities are severe: Julia has a genetic condition that has caused severe neurological deficits including but not limited to intellectual disability, quadriplegia, cerebral palsy, and intractable epilepsy. She is unable to expressively communicate and is completely reliant on her family and caregivers for all activities of daily living. Because of these severe disabilities, she also requires the use of oxygen and a wheelchair.

13.    Marti Browning and her daughter Julia have lived at the Property since 1999. They live in a rent-controlled two-bedroom unit and due to the length of their tenancy and the rent control law, their monthly rent is very low in relation to comparable market-rate units in the same area.

## ACTS OF HARASSMENT

14.    The defendants were aware of Julia Browning's conditions described in Paragraph 12 and of the relatively low rent paid by the Brownings. They performed the following acts with a bad faith to harass, vex and annoy the tenants in order to get them vacate their units:

(1)    In February 2016, the defendants ordered Julia's parents to stop using the adjacent parking spot and driveway to make a fifteen-minute transfer of Julia to a ramp-equipped van for Julia's wheelchair. This transfer had occurred without incident and with the neighbors' permission for 14 months. The transfer prohibited by the defendants is necessary for Julia Browning to use and enjoy her dwelling. Supported with a letter from their doctor which made the obvious connection that Julia Browning's disabilities the need for this transfer, the Brownings submitted to the defendants a reasonable accommodation from this order, the request going to the defendants. The defendants refused to grant the request.

(2)    Despite medical documentation from Ms. Browning, defendants also in February 2016 ordered Ms. Browning to remove a heavy (at least 200 pounds) device

that helps the family move Julia and her wheelchair safely up and down the carport stairs. Ms. Browning has stored the device in front of her parking space-the obvious place to keep such a device-for at least eight years. Supported with a letter from their doctor, the Brownings submitted to the defendants a reasonable accommodation from this order. The defendants refused to grant the request.

(3)    In the middle of discussions about the family's need to make the parking space switch and transfer on Fridays, on Friday, February 12, 2016 Defendants suddenly implemented a new rule that all vehicles had to be removed from the parking garage for three hours every Friday afternoon.

(4)    On or about February 19, 2016, Defendant caused the Brownings' hot water to be shut off for four days.

(5)    After this litigation commenced, Defendant increased the harassment.

(6)    On Saturday, January 28, 2017, one day after a hearing and court-brokered agreement that Kathy Golshani will not enter the Brownings' apartment, Golshani sent a worker without notice (oral or written) to Ms. Browning's door when she wasn't home, and the worker persuaded her son into letting him enter the apartment and balcony.

(7) When Ms. Browning arrived home on the 28th, while the man was still othe balcony, apparently applying some kind of treatment, and leaving a cone. On Saturday, February 4th she noticed that someone had entered her private balcony again and taken the cone without telling her.

(8) On February 8, 2017, Ms. Browning returned home at around 12:30 pm and found Golshani's car parked at an angle in the driveway in a way that blocked access to parking spaces under the building, including Ms. Browning's space. She had to honk to get Golshani out to move her car. Ms. Browning stated that it appeared that Golshani deliberately took a long time to move the car. Given Julia's severe disabilities, this revived tactic of focusing on the parking space was especially troubling.

(9) On February 9, 2017, at about 8:30 am, Ms. Browning's friend and future husband Andrew Nappin called
to tell her that Golshani was at the building and had photographed him as he was getting into his car.  Ms. Browning could hardly believe it, but she looked outside and saw Golshani herself.

(10)    On June 13, 2019, after confronting Ms. Browning's husband Andrew Nappin with glares in the carport of the subject property, Ms. Golshani made a 911 call to the Santa Monica Police Department (SMPD). She told the SMPD dispatcher that "there was a suspicious person" in the carport who said to her "that he's going to beat me up."

15.     All the acts described above were in violation of the California Unruh Act, California Fair Employment and Housing Act, and the City of Santa Monica's Housing Anti-Discrimination Ordinance.  All acts described in (6)-(10) resulted in seven restraining orders against defendant Golshani, including a final one that banned her from the entire apartment building.

### ACTS OF DISCRIMINATION

16.     In February of 2016, the defendants ordered the Brownings to stop using the adjacent parking spot and driveway to make a fifteen-minute transfer of Julia to a ramp-equipped vehicle for Julia's wheelchair. Supported with a letter from their doctor, the Brownings requested a reasonable accommodation from this order. The defendants refused to grant the request even though the transfer has occurred without incident and with the neighbor's permission for 14 months and even though the transfer is required for Julia Browning to be able to use and enjoy her dwelling.

17.     Despite medical documentation from Ms. Browning, defendants also ordered Ms. Browning to remove a heavy (at least 200 pounds) device that helps the family move

TRA2313

Julia and her wheelchair safely up and down the carport stairs. Supported with a letter from their doctor, the Brownings requested a reasonable accommodation from this order. The defendants refused to grant the request even though the Brownings have stored the device in front of her parking space-the obvious place to keep such a device-for at least eight years. As Julia Browning needs the device to get to her dwelling, it is necessary for her to use and enjoy her dwelling.

18.     In the middle of discussions about the family's need to make the parking space switch and transfer on Fridays, Defendants suddenly implemented a new rule that all vehicles had to be removed from the parking garage for three hours every Friday afternoon. Banning vehicles from the garage makes it extremely difficult to move Julia Browning and her wheelchair as the Brownings are forced to get her all the way out to the street.

19.     All the acts described above were in violation of the California Unruh Act, California Fair Employment and Housing Act, and the City of Santa Monica's Housing Anti-Discrimination Ordinance.

20.     As the direct and proximate result of the defendant's wrongful acts described above, Marti Browning, Julia Browning, and the City suffered actual damages in an amount according to proof.

**FIRST CAUSE OF ACTION**
**(Tenant Harassment)**

21.     The City incorporates and re-alleges the allegations of paragraphs 1 through 20.

22.     The acts of the defendants described above constitute violations of the THO as follows:

        a.     They interrupted, terminated or failed to provide housing services required by contract or by State, County or local housing, health or safety laws, in violation of Santa Monica Municipal Code section 4.56.020(a).

        b.     They violated city and state fair housing laws that prohibit

7

discrimination against a tenant with a disability, in violation of S.M.M.C. section 4.56.020(f).

23.    For each act of wrongful harassment, the defendants are liable for all of the remedies established in Santa Monica Municipal Code section 4.56.040.

24.    Pursuant to Santa Monica Municipal Code section 4.56.040(d), the defendants are liable for each separate act in violation of the Harassment Ordinance, for the actual damages suffered or for statutory damages in the sum often thousand dollars, whichever is greater; and for the City's attorneys' fees and costs.

25.    The court may award punitive damages pursuant to Santa Monica Municipal Code section 4.56.040(d). This is an appropriate case for punitive damages because, among other things, the defendants' actions were deliberate, willful, and malicious. The actions continued even after attempts at intervention by the Santa Monica City Attorney's Office in which that office, among other things, provided the Defendant additional information about the tenants' needs for accommodations.

**SECOND CAUSE OF ACTION**
**(Housing Anti-Discrimination Ordinance)**

26.    The City incorporates and realleges the allegations of paragraphs 1 through 25.

27.    The acts of the defendants described above constitute violations of the HADO because they refused to make or provide reasonable accommodations necessary for their disabled tenants in violation of Santa Monica Municipal Code §4.28.030(g).

28.    For each act of wrongful discrimination, the defendants are liable for all of the remedies established in Santa Monica Municipal Code sections 4.28.060 and 4.28.070.

**THIRD CAUSE OF ACTION**
**(Unruh Civil Rights Act)**

29.    The City incorporates and realleges the allegations of paragraphs I through 28.

8

TRA2315

30.    The acts of the defendants described above constitute violations of the Unruh Civil Rights Act as they intentionally refused to make or provide reasonable accommodations necessary for their disabled tenants in violation of California Civil Code section 51(b).

31.    For each act of wrongful discrimination, the defendants are liable for all of the remedies established in California Civil Code section 52.

## FOURTH CAUSE OF ACTION
### (Injunctive Relief)

32.    The City incorporates and realleges the allegations of paragraphs 1 through 31.

33.    Unless the defendants are enjoined from the alleged misconduct, the current and future tenants at the Property and other Santa Monica buildings owned by the defendants are likely to suffer irreparable injury in the loss of their legal rights as tenants.

34.    The defendants have committed acts, proposed to commit acts, and engaged in a pattern and practice, all of which violated Santa Monica Municipal Code and the California Civil Code. Injunctive relief is expressly authorized by Santa Monica Municipal Code Sections 4.56.040(c) and 4.28.070 along with California Civil Code Section 52.

## FIFTH CAUSE OF ACTION
### (Tenant Harassment Ordinance)
### (As to Defendants Brida LLC and Golshani only)

35.    The acts of the defendants described above at Paragraph 14 (6)- (10) constitute additional violations of the THO as follows:

a.    They interrupted, terminated or failed to provide housing services required by contract or by State, County or local housing, health or safety laws, in violation of Santa Monica Municipal Code section 4.56.020(a).

b.    They violated city and state fair housing laws that prohibit discrimination against a tenant with a disability, in violation of S.M.M.C. section

**TRA2316**

4.56.020(f).

      c.     They attempted to influence the tenants to leave by use of coercion and intimidation, in violation of S.M.M.C. section 4.56.020(f).

      d. They abused a landlord's right of entry, in violation of S.M.M.C. section 4.56.020(d).

      e. They violated the tenants' right to quiet enjoyment of the home, in violation of S.M.M.C. section 4.56.020(j).

36.     For each act of wrongful harassment, the defendants are liable for all of the remedies established in Santa Monica Municipal Code section 4.56.040.

37.     Pursuant to Santa Monica Municipal Code section 4.56.040(d), the defendants are liable for each separate act in violation of the Harassment Ordinance, for the actual damages suffered or for statutory damages in the sum often thousand dollars, whichever is greater; and for the City's attorneys' fees and costs.

38.     The court may award punitive damages pursuant to Santa Monica Municipal Code section 4.56.040(d). This is an appropriate case for punitive damages because, among other things, the defendants' actions were deliberate, willful, and malicious. The actions continued even after attempts at intervention by the Santa Monica City Attorney's Office in which that office, among other things, provided the Defendant additional information about the tenants' needs for accommodations.

## <u>PRAYER</u>

The City prays for judgment against the defendants as follows:

1.     Injunctive relief that the Court deems appropriate, including but not limited to:

      a.     A prohibition against any future acts by the defendants or their agents that violate the Tenant Harassment Ordinance, the Anti-Housing Discrimination

Ordinance, and the California Unruh Act;

        b.      Mandated housing training attended by the defendants that covers the Tenant Harassment Ordinance, the Anti-Housing Discrimination Ordinance and other related housing laws;

        c.      Dedicated parking spaces and storage on the Property for the tenants that reasonably accommodate their disabilities.

2.      Actual damages suffered by Marti Browning and Julia Browning according to proof;

3.      Statutory damages in the amount up to $10,000.00 for each unlawful act;

4.      Punitive damages;

5.      Investigative costs;

6.      Attorneys' fees;

7.      Costs of suit; and

8.      Other relief that the Court deems proper.


DATED:  January 29, 2020           LANE DILG
                                City Attorney


                             By:  */s/ Gary Rhoades*
                                  GARY RHOADES
                                Deputy City Attorney

                             Attorneys for Plaintiff CITY OF SANTA MONICA


**COMPLAINT DEEMED VERIFIED PURSUANT TO C.C.P. §446**

TRA2318

## SETTLEMENT AGREEMENT and RELEASE

FOR AND IN CONSIDERATION of a total sum of ONE MILLION DOLLARS ($1,000,000.00), Plaintiffs, MARTHA BROWNING and JULIA BROWNING by and through her conservator MARTHA BROWNING, individually, (hereinafter individually and collectively designated as the "Plaintiffs") on behalf of themselves and their heirs, representatives, executors, wards, administrators, agents, successors-in-interest, attorneys, subrogors and assigns, do hereby RELEASE, ACQUIT and forever DISCHARGE, Defendants BRIDA, LLC; CECIL McNABB; KATHY GOLSHANI, and each of its heirs, representatives, executors, wards, administrators, agents, successors-in-interest, attorneys, insurers, subrogors and assigns (hereinafter individually and collectively designated as the "Releasees"), of and from any and all past, present and future rights, actions, causes of action, claims, demands, damages, costs, losses, expenses and compensation, including, but not limited to, those for wrongful death, and bad faith, or on account of, or in any way arising out of, any and all known and unknown claims, injuries and/or damages of any nature resulting or to result from or by reason of any act and/or omission on the part of the Releasees occurring at any time prior hereto, including, but not limited to, as alleged and contended in that certain action, entitled: *MARTHA BROWNING and JULIA BROWNING by and through her conservator MARTHA BROWNING v. BRIDA, LLC; CECIL McNABB; KATHY GOLSHANI; and DOES 1 through 100, inclusive*, bearing Case No. SC128983 related to SC125490.

Plaintiffs further agree to RELEASE, ACQUIT and forever DISCHARGE, Defendants BRIDA, LLC; CECIL McNABB; KATHY GOLSHANI and each of its employees, representatives, executors, wards, administrators, agents, successors-in-interest, attorneys, subrogors and assigns (again, hereinafter individually and collectively designated as the "Releasees"), of and from any and all past, present and future rights, actions, causes of action, claims, demands, damages, costs, losses, expenses and compensation, including, but not limited to, those for wrongful death, and bad faith, or on account of, or in any way arising out of, any and all known and unknown claims, injuries and/or damages of any nature resulting or to result from or by reason of any act and/or omission on the part of the Releasees occurring at any time prior hereto, including, but not limited to, as alleged and contended in that certain action, entitled: *MARTHA BROWNING and JULIA BROWNING by and through her conservator MARTHA BROWNING v. BRIDA, LLC; CECIL McNABB; KATHY GOLSHANI; and DOES 1 through 100, inclusive*, bearing Case No. SC128983 related to SC125490.

1.    Plaintiffs hereby acknowledge that this Release and discharge is a general release of all claims.  Plaintiffs have been advised by their counsel and expressly waives and assumes the risk of any and all claims for damages, whether or not plaintiffs know or suspect the same to exist in their favor, and plaintiffs expressly waive the provisions of California Civil Code, Section 1542, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

**TRA2320**

2.       The undersigned affirm that she is currently **not** a Medicare beneficiary and has received Medicare benefits arising out of or related to this claim. The undersigned further acknowledges that the undersigned representation about her Medicare beneficiary status is material and is a condition precedent to settling this claim. The undersigned acknowledges that she shall be solely responsible to Centers for Medicare & Medicaid Services ("CMS") for any claim, right, lien, or cause of action that Medicare may assert pursuant to the Medicare Secondary Payer Act (42 U.S.C. § 1395 (b)). In addition, in the event a conditional payment has been asserted related to this claim, the undersigned hereby agrees to contact the Medicare Secondary Payer Recovery Contractor ("MSPRC") and pay or otherwise resolve any conditional payment asserted by CMS or the MSPRC related to this claim, and further agrees to hold the releasee harmless and indemnify the releasee from any claim, lien, or cause of action brought by any entity pursuant to Medicare Secondary Payer Act (42 U.S.C. § 1395y (b)) related to this claim.

It is not the intention of any party to this Agreement to shift responsibility of future medical benefits to the Federal Government. It is the parties intention to comply with the Medicare Secondary Payer Act (42 U.S.C. §1395y (b)) as amended and the relevant regulations contained in 42 C.F.R. § 411. After considering the parties obligations according to the aforementioned statue and regulations, the parties agree that there is no risk of shifting future medical expenses to the Medicare program after the settlement of this claim because the undersigned hereby acknowledges that no further medical treatment has been recommended as needed, warranted or required with regard to any alleged injuries sustained or arising out of this accident, occurrence or claim. Taking into account the various factors of this claim including the undersigned alleged injuries, claimed economic losses, and claimed pain and suffering, no portion of this settlement is allocated for future medical expenses and is therefore not a settlement contemplated by the Medicare Secondary Payer Act. The Parties in good faith do not believe that Medicare may incur any expense in the future related in any way to the claims asserted in this matter or subject to this Agreement, and any expense that Medicare may incur in this matter is too remote to calculate or reasonably foresee at the time of settlement. In addition, any future medical treatment relating to body parts allegedly injured, sustained or arising out of this accident, occurrence or claim, or expenses incurred by the undersigned for like or similar injuries, are the sole responsibility of the undersigned.

The undersigned expressly Releases and further waives her right to any claim or cause of action against Defendnts BRIDA, LLC; CECIL McNABB; KATHY GOLSHANI and their servants, employees, officers, directors, subsidiaries, agents, successors, and their attorneys, Manning & Kass, Ellrod, Ramirez, Trester, LLP and any of their servants, employees, officers, directors, subsidiaries, agents and successor, for any claim she may currently have or that arises in the future pursuant the Medicare Secondary Payer Act - Private Cause of Action as codified in 42 U.S.0 §1395 y(b)(3)(A) related to the claims and events addressed in this Agreement and subject to the Release set forth above. The undersigned further agrees to hold the releasee harmless and indemnify the releasee from any claim, lien, or cause of action brought by any entity pursuant to Medicare Secondary Payer Act (42 U.S.C. §1395y (b)) related to this claim.

Should the CMS (or any of its affiliates or subcontractors) submit or make any claim, allegation, investigation, or otherwise inquire about any Medicare-related expenses alleged by

**TRA2321**

CMS to be associated with this claim at any time in the future, the undersigned expressly agrees to cooperate with the releasee or any of its agents, subsidiaries, or designees in responding to or addressing the claims raised by CMS. This includes, but is not limited to, providing the releasee with a consent form so it can transmit and receive data to and from CMS (including medical information), providing the releasee with details about any alleged expenses CMS claims is related to this claim, and any other information that is reasonably necessary to allow the releasee to properly address any claim by CMS.

The parties to this Release further agree and state that if the Releasor/undersigned is a Medicate beneficiary and Medicare has paid for any of the Releasor's medical costs, expenses of associated fees giving rise to a conditional payment claim by Medicare, the parties acknowledge and agree that such should be satisfied out of the settlement proceeds. As evidence of the parties' intent to protect the interest of Medicare, a Medicare Advantage Plan and/or a Prescription Drug Plan has been included as a payee on the settlement proceeds as agreed to by the parties. After the Release and settlement check have been executed and endorsed, counsel for Plaintiff shall forward the Release and settlement proceeds to Medicare, the Medicare Advantage Plan and/or Prescription Drug Plan and/or the appropriate contractor within fourteen (14) days after execution of the Release.  Releaser shall also be subsequently responsible for and reimburse any and all Medicare Advantage Plan liens within 60 days of receipt of a final demand post execution of the release from any such entity.

3.      In making this Agreement and Release, it is understood and agreed that Plaintiffs rely wholly on their judgment, belief and knowledge of the nature, extent and duration of alleged damages and injuries, and that they have not been influenced to any extent in making this Agreement and Release by any representations or statements regarding alleged damages or injuries or regarding any other matter made by the persons, firms, representatives, agents, entities or corporations which are hereby released.

4.      Plaintiffs hereby declare and represent that they are effecting this Release and executing this Agreement after having had the opportunity to receive legal advice as to their rights from legal counsel.

5.      In making this Agreement and Release, it is understood and agreed that Plaintiffs on behalf of themselves and their heirs, representatives, executors, wards, administrators, agents, successors in interest, attorneys, subrogors and assigns, acknowledge and agree that the Releasees have at all times pertinent hereto negotiated, bargained and settled this matter in good faith and have, at all times pertinent hereto, conducted themselves in good faith.

6.      Plaintiffs on behalf of themselves and their heirs, representatives, executors, wards, administrators, agents, successors-in-interest, attorneys, subrogors and assigns, do hereby authorize and direct their attorney to dismiss forthwith all claims, with prejudice, in the aforementioned legal action, entitled: *MARTHA BROWNING and JULIA BROWNING by and through her conservator MARTHA BROWNING v. BRIDA, LLC; CECIL McNABB; KATHY GOLSHANI; and DOES 1 through 100, inclusive*, bearing Case No. SC128983 related to SC125490. against the Releasees.

**TRA2322**

7.     It is understood and agreed that this settlement involves the compromise of a disputed claim.  Neither this Agreement and Release, nor any payment of a sum of money in connection herewith, shall constitute or be deemed or construed as an admission of liability on the part of the Releasees, by whom liability is expressly denied.

8.     Plaintiffs hereby represent and warrant that they have not heretofore assigned or transferred or purported to assign or transfer any claim, demand, action, cause of action or right herein released or discharged.

9.     It is solely Plaintiffs responsibility to satisfy any and all liens including any and all Medi-Cal or MediCare liens.

9.5     Plaintiffs are to provide any reasonably necessary documentation as to the absence of, or the amount of, any Medi-Cal or MediCare liens and any Medi-Cal or MediCare set asides for future treatment and/or expenses.

10.     Plaintiffs on behalf of themselves and their heirs, representatives, executors, wards, administrators, agents, successors-in-interest, attorneys, subrogors and assigns, do hereby expressly stipulate and agree, in consideration of the aforesaid consideration, that any and all liens, rights, obligations or claims for services or benefits provided to Martha Browning and Julia Browning, including medical payments, disability payments, attorneys' fees, and/or costs, will be satisfied by Plaintiffs and that Plaintiffs will indemnify, defend and hold harmless the Releasees, and each of them, against any loss from any and all such claims, liens, services, demands, allocations or actions, which have or may hereinafter, or at any time, be made or have been made against the Releasees by the Plaintiffs, anyone claiming through the Plaintiffs for services provided to Plaintiffs and/or by anyone on their behalf, or by anyone claiming an interest or assignment from the Plaintiffs for the purpose of enforcing further claims for money, damages or injuries allegedly sustained as a consequence of or resulting from any of the circumstances set forth in the aforementioned legal action, entitled:  *MARTHA BROWNING and JULIA BROWNING by and through her conservator MARTHA BROWNING v. BRIDA, LLC; CECIL McNABB; KATHY GOLSHANI; and DOES 1 through 100, inclusive,* bearing Case No. SC128983 related to SC125490..

11.     Plaintiffs represents and warrants that they have the right, power, legal capacity and authority to enter into and perform the obligations under this Agreement and Release on behalf of themselves through their legal representatives, and on behalf of anyone they represent or who might claim an interest in this action, and that no further approval or consent of any person or entity is necessary to enter into and perform such obligations.

12.     Plaintiffs represent and warrant that they shall do all acts and execute and deliver all documents necessary or appropriate to effect all provisions of this Agreement and Release.

13.     If any provision of this Agreement and Release is determined by a court of competent jurisdiction to be illegal or unenforceable, said provision shall be deemed to be severed and deleted and neither such provision, its severance nor deletion shall affect the validity of the remaining provisions of this Agreement and Release.

14.    This Agreement and Release and any provision thereof shall be subject to and enforceable under Code of Civil Procedure section 664.6.

15.    If any action or proceeding is brought for the enforcement of this Agreement and Release or for a declaration of rights and duties hereunder or because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this Agreement and Release, the successful or prevailing party shall be entitled to recover actual attorneys' fees and other costs incurred in connection with that action or proceeding, in addition to any other relief to which the party may be entitled.

16.    This Agreement and Release shall not be construed against the party or its representative who drafted this Agreement and Release or any portion hereof.

17.    This Agreement and Release is and shall be subject to, governed by, and construed and enforced pursuant to the laws of the state of California.

18.    This Agreement and Release may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

19.    All parties hereto agree to bear their own costs and attorneys' fees in connection with the aforementioned legal action, entitled: *MARTHA BROWNING and JULIA BROWNING by and through her conservator MARTHA BROWNING v. BRIDA, LLC; CECIL McNABB; KATHY GOLSHANI; and DOES 1 through 100, inclusive*, bearing Case No. SC128983 related to SC125490. Further, all parties specifically waive any right to recover attorneys' fees or costs as a prevailing party and acknowledge and agree that they are not entitled to recover anything from any other party other than the consideration explicitly set forth in this release.

20.    The terms of this Settlement Agreement and Release are contractual and not a mere recital.

21.    The order in which the paragraphs appear in this Agreement and Release has no significance whatsoever.

22.    This Agreement and Release is the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions. This Agreement and Release may be amended only upon an agreement in writing.

23.    Any use of the masculine gender herein is to be construed to include the feminine and the neuter where applicable.

24.    The use of the singular herein is to be construed to include the plural where applicable.

**TRA2324**

DO NOT SIGN UNTIL READ AND FULLY UNDERSTOOD.

DATED: _10/17_____, 2019          _M. Browning_____
                                  Plaintiffs Martha Browning, individually and as
                                  Conservator to, Julia Browning

Approved as to form and content.

                                  TAYLOR & RING, LLP

DATED: _10/18_____, 2019          _____
                                  John C. Taylor, Esq.
                                  Attorneys for Plaintiffs

TRA2325

**From:** CLMPSAUT@travelers.com <CLMPSAUT@travelers.com>
**Sent:** Monday, May 20, 2024 7:47 AM UTC
**To:** Clmpsaut <Clmpsaut@travelers.com>
**Subject:** Claim Summary for FLT2443 - BRIDA PROPERTIES LLC - Travelers Casualty Insurance Company of America

**TRAVELERS**

| Office Nbr: | Loss Designator: | Claim Nbr: | Check Digit: | |
|---|---|---|---|---|
| 152 | LR | FLT2443 | M | |
| Claimant: | Loss Date: | State: | Status: | Insured Name: |
| FILE LEVEL | 03/05/2018 | CA | Active Reg on 11/04/2022 | BRIDA PROPERTIES LLC |

Claim Information

**Loss Information**

Description:

CLAIMANT ALLEGES HARRASSMENT AND DISCRIMINATION AGAINST INSURED

Loss Location:

1123 17TH ST UNIT 6 SANTA MONICA CA 90403

Involved Property Location:

1123 17TH ST SANTA MONICA CA90403

Digital Self Service - VIEW DETAILS

| Sub File Name | Digital Self Service | Type | Follow up Required |
|---|---|---|---|

Messages:(H=High Priority,L=Low Priority)

L: NO WITNESS INFO IDENTIFIED

**Claim Details**

Line of Business:

Liability

Claim Type:

Personal Injury

Supplemental COL:

Level1:

Personal and Advertising Injury

Level3:

Harassment

Legal:

NO

SLG Claim Type:

Lien:

None

**Loss Details**

Loss Date:

03/05/2018

Notice Received:

12/23/2021 5:46 PM

Registration Date:

12/23/2021

File Status:

Active Reg on 11/04/2022

Source:

CLMPLT

Assignment:

IMPACT

CAT Zone:

CAT Code:

Severity Indicator:

**Policy Details**

Policy Nbr:

680-6F285163

Policy Period:

03/06/2017 **-** 03/06/2018

SAC:

NO

Company:

ACJ - TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

CARR Market Code:

25 - CL SBU

SAI:

5896B1195

Account Bank Code:

J99

**TRA2329**



**TRAVELERS J**                                          One Tower Square, Hartford, Connecticut 06183

---

## RENEWAL CERTIFICATE

**COMMON POLICY DECLARATIONS**                    **POLICY NO.:** 680-6P285163-17-42
APARTMENT PAC                                     **ISSUE DATE:** 01/20/2017
BUSINESS: 5-12 UNITS PER

**INSURING COMPANY:**
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

1. **NAMED INSURED AND MAILING ADDRESS:**
   BRIDA PROPERTIES LLC
   1722 WESTWOOD BLVD
   STE 207
   LOS ANGELES CA 90024

2. **POLICY PERIOD:** From 03/06/2017 to 03/06/2018 12:01 A.M. Standard Time at your mailing address.

3. **LOCATIONS:**

| PREM. NO. | BLDG. NO. | OCCUPANCY | ADDRESS (same as Mailing Address unless specified otherwise) | | |
|---|---|---|---|---|---|
| 001 | 001 | 5-12 UNITS PER | 1123 17TH ST | | |
| | | | SANTA MONICA | CA | 90403 |

4. **COVERAGE PARTS AND SUPPLEMENTS FORMING PART OF THIS POLICY AND INSURING COMPANIES**

| COVERAGE PARTS AND SUPPLEMENTS | INSURING COMPANY |
|---|---|
| Businessowners Coverage Part | ACJ |

5. The COMPLETE POLICY consists of this declarations and all other declarations, and the forms and endorse - ments for which symbol numbers are attached on a separate listing.

6. **SUPPLEMENTAL POLICIES:** Each of the following is a separate policy containing its complete provisions.

| POLICY | POLICY NUMBER | INSURING COMPANY |
|---|---|---|

DIRECT BILL

7. **PREMIUM SUMMARY:**

| | | |
|---|---|---|
| Provisional Premium | $ | 2,628.00 |
| Due at Inception | $ | |
| Due at Each | $ | |

NAME AND ADDRESS OF AGENT OR BROKER          COUNTERSIGNED BY:

NATIONAL INS SOLUTIONS          CHK04
9400 TOPANGA CANYON BLVD STE 201
                                             _____
                                             Authorized Representative
CHATSWORTH                      CA 91311-5757
IL T0 25 08 01   (Page 1 of  01)             DATE:  01/20/2017
Office: BREA/LA/ORANGE CA  DOWN

018659

TRA2361
BRIDA 0019

# TRAVELERS J

One Tower Square, Hartford, Connecticut 06183

**BUSINESSOWNERS COVERAGE PART DECLARATIONS**

APARTMENT PAC

POLICY NO.: 680-6F285163-17-42
ISSUE DATE: 01/20/2017

INSURING COMPANY:
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA

POLICY PERIOD:
From 03-06-17 to 03-06-18 12:01 A.M. Standard Time at your mailing address

FORM OF BUSINESS: LIMITED LIAB CORP

COVERAGES AND LIMITS OF INSURANCE: Insurance applies only to an item for which a "limit" or the word "included" is shown.

### COMMERCIAL GENERAL LIABILITY COVERAGE

| OCCURRENCE FORM | LIMITS OF INSURANCE |
|---|---|
| General Aggregate (except Products-Completed Operations Limit) | $ 2,000,000 |
| Products-completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Premises Rented to You | $ 300,000 |
| Medical Payments Limit (any one person) | $ 5,000 |

### BUSINESSOWNERS PROPERTY COVERAGE

DEDUCTIBLE AMOUNT:   Businessowners Property Coverage: $ 1,000 per occurrence.
                     Building Glass:                   $ 1,000 per occurrence.

BUSINESS INCOME/EXTRA EXPENSE LIMIT:   Actual loss for 12 consecutive months

Period of Restoration-Time Period:     Immediately

ADDITIONAL COVERAGE:
    Fine Arts:                $      25,000

Other additional coverages apply and may be changed by an endorsement.   Please read the policy.

SPECIAL PROVISIONS:

## COMMERCIAL GENERAL LIABILITY COVERAGE
## IS SUBJECT TO A GENERAL AGGREGATE LIMIT

MP T0 01 02 05   (Page 1 of 3)

018660

**TRA2362**
BRIDA 0020

**POLICY NUMBER:**  680-6F285163-17-42

**EFFECTIVE DATE:**  03/06/2017

**ISSUE DATE:**  01/20/2017

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS

|   | | | | | |
|---|---|---|---|---|---|
|   | IL T0 19 02 05 | COMMON POLICY DECLARATIONS |
| * | IL T0 25 08 01 | RENEWAL CERTIFICATE |
| * | MP T0 01 02 05 | BUSINESSOWNERS COVERAGE PART DECLARATIONS |
| * | IL T8 01 01 01 | FORMS ENDORSEMENTS AND SCHEDULE NUMBERS |
|   | IL T3 15 09 07 | COMMON POLICY CONDITIONS |

BUSINESSOWNERS

|   | | |
|---|---|---|
| * | MP T0 25 02 05 | SPECIAL PROVISIONS - LOSS PAYEE |
| * | CP 12 18 06 95 | LOSS PAYABLE PROVISIONS |
|   | MP T1 30 02 05 | TABLE OF CONTENTS - BUSINESSOWNERS COVERAGE PART - DELUXE PLAN |
|   | MP T1 02 02 05 | BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM |
|   | CP 02 99 11 85 | CANCELLATION CHANGES |
|   | MP T4 89 08 06 | FUNGUS, ROT, BACTERIA AND OTHER CAUSES OF LOSS CHANGES - CALIFORNIA |
|   | MP T5 22 08 07 | CALIFORNIA AMENDATORY PROVISIONS |
|   | MP T3 25 01 15 | FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE |
| * | MP T3 30 02 05 | REPLACEMENT COST PLUS |
|   | MP T3 50 11 06 | EQUIPMENT BREAKDOWN - SERVICE INTERRUPTION LIMITATION |
|   | MP T3 56 02 08 | AMENDATORY PROVISIONS - GREEN BUILDING AND BUSINESS PERSONAL PROP COV ENHANCEMENTS |
| * | MP T1 71 04 09 | BUILDING OWNERS ENDORSEMENT |
| * | MP T3 36 02 05 | EQUIPMENT BREAKDOWN EXCLUSION |
|   | MP T4 90 05 10 | LIMIT OF INS/OCCURRENCE ENDT - CALIFORNIA |
|   | MP T5 08 01 06 | CALIFORNIA CHANGES - REPLACEMENT COST |

COMMERCIAL GENERAL LIABILITY

|   | | |
|---|---|---|
|   | CG T0 34 11 03 | TABLE OF CONTENTS - COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01 10 01 |
|   | CG 00 01 10 01 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
|   | CG D2 37 11 03 | EXCLUSION - REAL ESTATE DEVELOPMENT ACTIVITIES - COMPLETED OPERATIONS |
|   | CG D2 55 11 03 | AMENDMENT OF COVERAGE - POLLUTION |
|   | CG D3 09 11 03 | AMENDATORY ENDR- PRODUCTS-COMPLETED OPERATIONS HAZARD |
| * | CG D3 25 01 04 | ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE, SUCCESSOR OR RECEIVER |
|   | CG D4 71 01 15 | AMENDMENT OF COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY |
|   | CG D0 37 04 05 | OTHER INSURANCE - ADDITIONAL INSUREDS |
|   | CG D2 03 12 97 | AMEND - NON CUMULATION OF EACH OCC |

* TEXT IN THIS FORM HAS CHANGED, OR THE FORM WAS NOT ON POLICY BEFORE.

TRA2363
BRIDA 0021

# BUSINESSOWNERS

TRA2364



**TRAVELERS**                           One Tower Square, Hartford, Connecticut 06183

MORTGAGEES:                             **POLICY NO.:**  680-6F285163-17-42
                                        **ISSUE DATE:**  01/20/2017

| PREMISES LOCATION NUMBER | BUILDING NUMBER | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|---|
| 001 | 001 | JP MORGAN CHASE BANK, NA AND ITS SUCCESSORS AND ASSIGNS ATTN: TX1-0013 P.O BOX 9110 COPPELL                          TX 75019 |

018663

MP TO 01 02 05   (Page 3 of 3)

POLICY NUMBER: 680-6F285163-17-42

COMMERCIAL PROPERTY
ISSUE DATE: 01/20/2017

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

### SCHEDULE

| Prem.<br>No.<br>001 | Bldg.<br>No.<br>001 |
|---|---|

**Description
of Property**
BUSINESS PERSONAL PROPERTY

**Loss Payee
(Name & Address)**
JPMORGAN CHASE BANK,N.A
AND ITS SUCCESSORS AND ASSIGNS

ATTN: TX1-0013
P.O BOX 9110
COPPELL                    TX 75019

|  | Loss<br>Payable | Lenders<br>Loss Payable | Contract<br>of Sale |
|---|---|---|---|
| **Provisions Applicable:** | X | | |

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY **CP 00 99** the term Coverage Part in this endorsement is re-placed by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an **"X"** in the Schedule:

**B. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**C. LENDER'S LOSS PAYABLE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   **a.** Warehouse receipts:

   **b.** A contract for deed:

   **c.** Bills of lading:

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property

   **c.** If we deny your claim because of your acts or because you have failed to comp-ly with terms of the Coverage Part the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**CP 12 18 06 95**          Copyright, ISO Commercial Risk Services, Inc., 1994          Page 1 of 2

018664

TRA2366
DR1DF00024

POLICY NUMBER: 680-6F285163-17-42

BUSINESSOWNERS
ISSUE DATE: 01/20/2017

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# REPLACEMENT COST PLUS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

## A. SCHEDULE

| Premises Location Number | Building Number |
|---|---|
| ALL | ALL |

**B.** The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:

1. For the described premises shown in the schedule above, Paragraph **E.4.e.(1)** is replaced by the following, but only with respect to building valuation:

   **(1)** At replacement Cost (without deduction for depreciation).

   **(a)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

   **(b)** We will not pay on a replacement cost basis for any loss or damage:

   **(i)** Until the lost or damaged property is actually repaired or replaced; and

   **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

   **(c)** We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs **(i)**, **(ii)** or **(iii)** subject to Paragraph **(d)** below:

   **(i)** The cost to replace, on the same premises, the lost or damaged property with other property:

   **a)** Of comparable design, material and quality; and

   **b)** Used for the same purpose;

   **(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

   **(iii)** Up to 125% of the Limit of Insurance shown in the Declarations for Building at the described premises.

   If a building is rebuilt at a new premises, the cost described in Paragraph **(i)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

   **(d)** The cost of repair or replacement does not include the increased cost

**MP T3 30 02 05**              Copyright, The Travelers Indemnity Company, 2004              Page 1 of 2

018665

TRA2367
BRIDA 0025

POLICY NUMBER:  680-6F285163-17-42

BUSINESSOWNERS
ISSUE DATE: 01/20/2017

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUILDING OWNERS ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

## SCHEDULE

| Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. | Prem. Loc. No. | Bldg. No. |
|---|---|---|---|---|---|---|---|---|---|
| 001 | 001 | | | | | | | | |

Schedule of Limits of Insurance under Paragraph **A.2.** of this endorsement:

$    100,000 in any one occurrence at each described premises

$    250,000 in any one occurrence regardless of the number of described premises involved



**A.** The BUSINESSOWNERS PROPERTY COVER-AGE SPECIAL FORM is changed as follows:

1. The limit applicable to the **Additional Coverage – Debris Removal**, as referenced in Paragraph **A.6.c.(4)**, is increased from $25,000 to $50,000.

2. Paragraph **A.6.k.(6)** is replaced by the following:

   **(6)** The most we will pay for loss under this Additional Coverage for the total of all coverages described in Paragraph **(1)** above in any one occurrence is the amount shown in the above Schedule, at each described premises. But, we will not pay more than the amount shown in the above Schedule, in any one occurrence regardless of the number of described premises involved.

3. The following **Additional Coverages** are added:

   **a. Lessor's Leasehold Interest**

   **(1)** We will pay for the cost of Covered Leasehold Interest you sustain due to the cancellation of lease contracts by your tenants. The cancellation must result from direct physical loss of or damage to your Covered Property at the premises described in the Schedule above caused by or resulting from a Covered Cause of Loss during the term of the policy.

   **(2)** Covered Leasehold Interest:

   **(a)** Means the difference between the:

   **(i)** Rent you were collecting at the described premises prior to the loss; and

   **(ii)** "Rental Value" of the described premises after loss or damage has been repaired or rebuilt; and

   **(b)** Does not mean refunds or rebates of:

   **(i)** Prepaid rent;

   **(ii)** Security or other deposits made by your tenants; or

   **(iii)** Insurance, taxes or other payments made on your behalf by tenants.

   **(3)** The most we will pay under this Additional Coverage is the smallest of:

   **(a)** Your Covered Leasehold Interest for the 12 months immediately

TRA2368
BRIDA 0026

POLICY NUMBER: 680-6F285163-17-42

BUSINESSOWNERS
ISSUE DATE: 01/20/2017

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN EXCLUSION

This endorsement modifies insurance provided under the following:
> BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

**A.  SCHEDULE**

| Premises Location No. | Building No. |
|---|---|
| 001 | 001 |

**B.**  The BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM is changed as follows:

1.  Paragraph **A.7.i.** is deleted for each of the described premises shown in the schedule above.



**MP T3 36 02 05**          Copyright, The Travelers Indemnity Company, 2004          Page 1 of 1

018567

TRA2369
BRIDA 0027

TRA2370
BRIDA 0028

TRA2371
BRIDA 0029

# GENERAL LIABILITY

018668

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: 680-6F285163-17-42

ISSUE DATE: 01/20/2017

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, SUCCESSOR OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**NAME OF PERSON OR ORGANIZATION:**
JPMORGAN CHASE BANK,N.A,AND ITS SUCCESSORS AND ASSIGNS

ATTN: TX1-0013
P.O BOX 9110
COPPELL                    TX 75019

**DESIGNATION OF PREMISES:**
1123 17TH ST
SANTA MONICA             CA   90403

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

1.  WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, successor or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2.  This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

CG D3 25 01 04           Copyright, The Travelers Indemnity Company, 2004          Page 1 of 1
Includes copyrighted material of Insurance Services Offices Inc., with its permission

018669

TRA2373031

COMMERCIAL GENERAL LIABILITY

f.  Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

g.  Anyone other than your "employees", partners, a lessee or borrower or any of their "employees", while moving property to or from a "hired auto" or a "nonowned auto"; or

3.  Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under 1. or 2. above.

**D.  AMENDED DEFINITIONS**

The Definition of "insured contract" of **Section V – Definitions** is amended by the addition of the following exceptions to paragraph **f.**:

Paragraph **f.** does not include that part of any contract or agreement:

(4)  That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

(5)  That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**E.  ADDITIONAL DEFINITIONS**

**Section V – Definitions** is amended by the addition of the following definitions:

1.  "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

2.  "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include:

a.  Any "auto" you lease, hire or rent under a lease or rental agreement for a period of 180 days or more, or

b.  Any "auto" you lease, hire, rent or borrow from any of your "employees", partners, stockholders, or members of their households.

3.  "Nonowned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business at the time of an "occurrence". This includes "autos" owned by your "employees" or partners or members of their households but only while being used in the course and scope of your business at the time of an "occurrence".

If you are a sole proprietor, "nonowned auto" means any "autos" you do not own, lease, hire, rent or borrow that are being used in the course and scope of your business or personal affairs at the time of an "occurrence".

Copyright, The Travelers Indemnity Company, 2003        MP T1 25 11 03
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

018670

TRA2374
BRIDA 0032

# POLICYHOLDER NOTICES

018671

# IMPORTANT NOTICE – INDEPENDENT AGENT AND BROKER COMPENSATION

**NO COVERAGE IS PROVIDED BY THIS NOTICE.  THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY.  YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.**

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com, call our toll-free telephone number 1-866-904-8348, or request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.

**PN T4 54 01 08**

Page 1 of 1

018672

TRA2376
BRIDA 0034

**TRAVELERS**

# IMPORTANT INFORMATION FOR MASTER PAC
# POLICYHOLDERS

Dear Policyholder:

Enclosed is your Travelers Master Pac Renewal Certificate. An asterisk on the Listing of Forms, Endorsements and Schedule Numbers, IL T8 01, indicates forms that are included with this year's renewal. Any forms previously attached to your policy that are not shown on that listing no longer apply.

Please put the Certificate and the attached forms with your policy as soon as possible. If you have misplaced your policy, please contact your agent for a copy.

018673

BRIDA 0033
TRA2377

DocuSign Envelope ID: 97B4FEFB-B19F-4E19-9368-6BFBAB41D689

DOUGLAS SLOAN
City Attorney
GARY RHOADES, Bar No. 166149
JOANTHAN FRANK, Bar No. 308584
*joanthan.erwin-frank@santamonica.gov*
Deputy City Attorney
1685 Main Street, Room 310
Santa Monica, California 90401
Telephone: (310) 458-8336
Facsimile: (310) 395-6727

Attorneys for Plaintiff
CITY OF SANTA MONICA

**FILED**
Superior Court of California
County of Los Angeles

06/23/2023

David W. Slayton, Executive Officer / Clerk of Court

By: _____ S. Hwang _____ Deputy

*Exempt from filing fee pursuant
to Government Code §6103*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CITY OF SANTA MONICA, | Case No. SC125490 |
| Plaintiff | Related to Case No. 21STCV32607 |
| v. | **STIPULATION TO JUDGMENT AND INJUNCTION** |
| BRIDA LLC and KATHY GOLSHANI, | |
| Defendants. | Department: N |

Plaintiff City of Santa Monica, ("City" or "Plaintiff"), having filed the complaint

herein, and appearing through its attorney Gary Rhoades, Deputy City Attorney; and SoCal

Investment Company, LLC, represented by its attorney Binh Bui Esq.. And Kathy Golshani,

representing herself (DEFENDANTS), hereby stipulate and agree as follows:

\\

\\

Electronically Received 06/21/2023 09:42 AM

1    1.    The proposed Final Judgment and Injunction Pursuant to Stipulation

2  ("Judgment"), a copy of which is attached hereto as Exhibit 1, and incorporated by reference,

3  may be signed by a judge of the Superior Court of the State of California for the County of

4  Los Angeles, which has jurisdiction over the parties to this action and is the proper venue for

5  this action, and entered by the clerk without notice, provided that this Stipulation for Entry of

6  Final Judgment ("Stipulation") has been fully executed below.

7    2.    Defendants represent that this Stipulation is their free and voluntary act, that

8  the Stipulation and the Judgment is the result of good faith settlement negotiations between

9  Defendants and the City, and that Defendants have been represented and advised by counsel

10  at all times.

11    3.    This Stipulation may be signed in counterparts and on multiple signature pages

12  by and on behalf of themselves or through their authorized representatives with the same

13  force and effect as if executed in one complete document by all the parties.

14

15  Dated:                          DOUGLAS SLOAN
                                    City Attorney
16

17                                  by _____

18                                      GARY RHOADES
                                        Santa Monica Deputy City Attorney
19                                      Attorneys for Plaintiff
                                        CITY OF SANTA MONICA
20

21  Dated:                          BRIDA LLC

22                                  by _____Kathy Golshani_____
                                        B0E89F1D939F4A5...
23

24                                      _____

25  Dated:                          by _____Kathy Golshani_____
                                        B0E89F1D939F4A5...
26                                      KATHY GOLSHANI

27

28

1   Approved as to form:

2   _____

3   _____

4   Attorney for Defendants

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   DOUGLAS SLOAN
    City Attorney
2   GARY RHOADES, Bar No. 166149
    JOANTHAN FRANK, Bar No. 308584
3   *joanthan.erwin-frank@santamonica.gov*
    Deputy City Attorney
4   1685 Main Street, Room 310
    Santa Monica, California 90401
5   Telephone: (310) 458-8336
    Facsimile:  (310) 395-6727
6
    Attorneys for Plaintiff                    ***Exempt from filing fee pursuant***
7   CITY OF SANTA MONICA                       ***to Government Code §6103***

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF LOS ANGELES

12

13

14  CITY OF SANTA MONICA,              Case No. SC125490

15              Plaintiff             Related to Case No. 21STCV32607

16      v.                            **STIPULATION TO JUDGMENT AND
                                      INJUNCTION**
17  BRIDA LLC and KATHY GOLSHANI,
                                      Department: N
18              Defendants.

19

20

21

22          Plaintiff City of Santa Monica, ("City" or "Plaintiff"), having filed the complaint

23  herein, and appearing through its attorney Gary Rhoades, Deputy City Attorney; and SoCal

24  Investment Company, LLC, represented by its attorney Binh Bui Esq.. And Kathy Golshani,

25  representing herself (DEFENDANTS), hereby stipulate and agree as follows:

26  \\

27  \\

28

                                         1

DocuSign Envelope ID: 33D55F4E-40C5-4E68-9BC2-99698F162FD6

1        1.     The proposed Final Judgment and Injunction Pursuant to Stipulation

2  ("Judgment"), a copy of which is attached hereto as Exhibit 1, and incorporated by reference,

3  may be signed by a judge of the Superior Court of the State of California for the County of

4  Los Angeles, which has jurisdiction over the parties to this action and is the proper venue for

5  this action, and entered by the clerk without notice, provided that this Stipulation for Entry of

6  Final Judgment ("Stipulation") has been fully executed below.

7        2.     Defendants represent that this Stipulation is their free and voluntary act, that

8  the Stipulation and the Judgment is the result of good faith settlement negotiations between

9  Defendants and the City, and that Defendants have been represented and advised by counsel

10  at all times.

11        3.     This Stipulation may be signed in counterparts and on multiple signature pages

12  by and on behalf of themselves or through their authorized representatives with the same

13  force and effect as if executed in one complete document by all the parties.

14

15  Dated:                         DOUGLAS SLOAN
                                 City Attorney

16

17                             by _____

18                               GARY RHOADES
                                Santa Monica Deputy City Attorney

19                               Attorneys for Plaintiff
                               CITY OF SANTA MONICA

20

21  Dated:                         BRIDA LLC

22

23                           by: _____

24                               _____
                               _____

25

26  Dated:                         by:

27                               KATHY GOLSHANI

28

1

Approved as to form:

2

*Binh Bui*
6/20/2023
981052CC17814BC...

3

BINH BUI

4

Attorney for Defendants

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TRA3374

1   1.  The proposed Final Judgment and Injunction Pursuant to Stipulation

2 ("Judgment"), a copy of which is attached hereto as Exhibit 1, and incorporated by reference,

3 may be signed by a judge of the Superior Court of the State of California for the County of

4 Los Angeles, which has jurisdiction over the parties to this action and is the proper venue for

5 this action, and entered by the clerk without notice, provided that this Stipulation for Entry of

6 Final Judgment ("Stipulation") has been fully executed below.

7   2.  Defendants represent that this Stipulation is their free and voluntary act, that

8 the Stipulation and the Judgment is the result of good faith settlement negotiations between

9 Defendants and the City, and that Defendants have been represented and advised by counsel

10 at all times.

11   3.  This Stipulation may be signed in counterparts and on multiple signature pages

12 by and on behalf of themselves or through their authorized representatives with the same

13 force and effect as if executed in one complete document by all the parties.

14

15 Dated: June 20, 2023    DOUGLAS SLOAN
               City Attorney

16

17           by _____

18           GARY RHOADES

19           Santa Monica Deputy City Attorney
           Attorneys for Plaintiff

20           CITY OF SANTA MONICA

21

22 Dated:         BRIDA LLC

23           by: _____

24             _____

25             _____

26 Dated:         by:

27           KATHY GOLSHANI

28

TRA3375

EXHIBIT 1

1

2

3

4

5

6

7

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

9

10

11  CITY OF SANTA MONICA,                    Case No. SC125490

12              Plaintiff                     Related to Case
                                             No._21STCV32607_____
13       v.

14  BRIDA LLC; and KATHY GOLSHANI; and       **FINAL JUDGEMENT AND**
    DOES 1-10,                               **INJUNCTION PURSUANT TO**
15                                           **STIPULATION**

16              Defendants.                   Department: N

17

18

19       Plaintiff, the City of Santa Monica ("Plaintiff") through its attorneys, Douglas Sloan,

20  the City Attorney of the City of Santa Monica and by Gary Rhoades and Jonathan Frank,

21  Deputy City Attorneys; and Defendants Brida LLC and Kathy Golshani ("Defendants"),

22  appearing with their attorney(s) Binh Bui, stipulate to the entry of this Final Judgment and

23  Injunction without the Court taking evidence, and the Court having considered the pleadings

24  and good cause appearing:

25       IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff have

26  judgment against Defendants as follows:

27

28

## I.     INTRODUCTION

Plaintiff filed claims against Defendants under its Tenant Harassment Ordinance and Anti-Housing Discrimination Ordinance. After good faith negotiations between the parties and their attorneys, the parties agreed to resolve the matter through a Stipulated Judgment against Defendants.

The Court has jurisdiction of the subject matter and the parties. Venue is appropriate in this Court.

## II.    INJUNCTION

Pursuant to the Court's authority for equitable remedies, Defendants shall do the following:

1) Comply with the Santa Monica Tenant Harassment Ordinance (Santa Monica Municipal Code Chapter 4.56) and Anti-Housing Discrimination ordinance (Chapter 4.28).

2) Attend either the Apartment Owners Association of Greater Los Angeles or the California Apartment Association's property management course that includes a fair housing component once a year for five years, if they are available. The course must be approved by the City Attorney's Office and proof at attendance must be provided to the CAO by September 1st of each year.

3) Adopt a written policy regarding how the Defendants handle disability-related requests for reasonable accommodations and modifications from applicants and current tenants. The City will approve a policy that is consistent with and a summary of the guidance published jointly by HUD and the U.S. Dept. of Justice at https://www.hud.gov/sites/dfiles/FHEO/documents/reasonable_modifications_mar 08.pdf and https://www.hud.gov/sites/dfiles/FHEO/documents/huddojstatement.pdf

DocuSign Envelope ID: 33D55F4E-40C5-4E68-9BC2-69698F462FD6

With respect to the injunctions, Defendant Golshani is subject to it only in her capacities as either the authorized representative of Brida LLC (or any future LLC she represents or controls and which owns the subject property) or as the manager of the subject property.

## III.    ENFORCEMENT OF INJUNCTION

If the Plaintiff learns of facts or allegations which if true constitute a violation of the Injunction, notice of the potential violation shall be given to Defendants. The Defendants will have fifteen (15) days to cure and/or dispute the alleged violation before Plaintiff pursues the violations in court, except in the case of eviction or attempted eviction, in which case Defendant will have seven (7) days to cure and/or dispute the alleged violation before Plaintiff pursues the violations in court. If a court finds that Defendant has violated the Injunction after this order, then Defendant will be subject to a penalty of $5,000 per violation.

## IV. MONETARY RELIEF

Within twenty days of this Order, Defendants shall deliver to counsel for the City of Santa Monica a cashier's check or money order totaling $45,000.00 in full satisfaction of all fines, penalties, fees, assessments, restitution, unjust enrichment, damages, attorneys' fees and costs of investigation or litigation. The payment shall be made payable to "City of Santa Monica" and sent to the Santa Monica City Attorney's Office at 1685 Main St., 3rd Floor, Santa Monica CA 90401. Defendants are severally and individually liable for the $45,000.

Within twenty days of this Order, Defendants shall deliver to Taylor & Ring a cashier's check or money order totaling $20,000.00 in full settlement of the pending case *Martha McCarty, et al. v. Brida, LLC*, et al. (Case No. 21STCV32607) inclusive of the cross-complaint of *Brida, LLC v. Martha McCarty*, et al (Case No. 21STCV32607).  Within 10 days of payment of the settlement proceeds, a dismissal with prejudice shall be filed with respect to both *Martha McCarty, et al. v. Brida, LLC*, et al. (Case No. 21STCV32607) and

1    the cross-complaint of *Brida, LLC v. Martha McCarty*, et al. (Case No. 21STCV32607).

2    **V.    OTHER PROVISIONS**

3        This judgment shall not constitute an admission of fault or liability on the merits of

4    this action or its claims.

5        The Parties waive the right to appeal this Judgment as to form or content.

6        If an ambiguity arises regarding any provision of this Judgment that requires

7    interpretation, there is no presumption that documents should be interpreted against any

8    party. The presumption in Civil Code section 1654 is not applicable.

9        Pursuant to the Court's inherent authority, the Court shall retain jurisdiction for the

10    purpose of enforcing this Judgment and enabling any party to this Judgment to apply to the

11    Court for such further orders and directions as necessary and appropriate to construe, carry

12    out, enforce, interpret, or modify this Judgment, or to punish violations of this Judgment.

13        This Judgment shall be binding immediately upon its signing by the Court

14    and its filing, without a Notice of Entry of Final Judgment.

15        The parties agree that the clerk may enter this Judgment immediately.

16

17    Dated: _____    _____
                                        JUDGE OF THE SUPERIOR COURT
18

19

20

21

22

23

24

25

26

27

28

John C. Taylor, State Bar No. 78389
Natalie Weatherford, State Bar No. 278522
**TAYLOR & RING, LLP**
1230 Rosecrans Avenue, Suite 360
Manhattan Beach, California 90266

Telephone: (310) 209-4100
Facsimile: (310) 208-5052

Attorneys for Plaintiffs

**FILED**
Superior Court of California
County of Los Angeles

11/04/2021

Sherri R. Carter, Executive Officer / Clerk of Court
By _____ N. Osorio _____ Deputy

7    SUPERIOR COURT OF THE STATE OF CALIFORNIA

8    FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MARTHA MCCARTY; JULIA BROWNING, by and through her conservator, MARTHA MCCARTY; ANDREW NAPPIN, | ) CASE NO. 21STCV32607 |
| | ) [Complaint Filed: 09/02/2021; Assigned to the Hon. Laura A. Seigle, Dept. 48] |
| Plaintiffs, | ) **MARTHA MCCARTY, JULIA BROWNING AND ANDREW NAPPIN'S FIRST AMENDED COMPLAINT FOR:** |
| vs. | ) |
| BRIDA, LLC; KATHY GOLSHANI; and DOES 1 through 100, inclusive, | ) 1. **VIOLATION OF FEHA;** 2. **VIOLATION OF UNRUH ACT;** 3. **BREACH OF STATUTORY** |
| Defendants. | ) **WARRANTY OF HABITABILITY;** 4. **BREACH OF IMPLIED WARRANTY OF HABITABILITY;** 5. **NEGLIGENCE;** 6. **NUISANCE;** 7. **BREACH OF CONTRACT;** 8. **BREACH OF COVENANT OF QUIET ENJOYMENT;** 9. **VIOLATION OF SANTA MONICA RENT CONTROL CHARTER AMENDMENT § 1809(a);** 10. **VIOLATION OF SANTA MONICA RENT CONTROL CHARTER AMENDMENT § 1809(f);** 11. **VIOLATION OF SANTA MONICA TENANT HARASSMENT ORDINANCE;** 12. **VIOLATION OF SANTA MONICA HOUSING ANTI-DISCRIMINATION CODE;** 13. **VIOLATION OF CIVIL CODE § 1940.2; AND** 14. **TRESPASS** |
| | ) **DEMAND FOR JURY TRIAL** |

Electronically Received 11/04/2021 11:28 AM

**TRA3594**

1

FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Plaintiffs, Martha McCarty, Julia Browning, a legally incompetent person, by and through her conservator, Martha McCarty and Andrew Nappin, seek damages sustained to them by Defendants, Brida, LLC, and Kathy Golshani (also known as Novin Golshani, Novin Kathy Golshani and Novin Golshani Samimi) and DOES 1 through 100, inclusive, as follows:

## THE PARTIES AND THEIR RELATIONSHIP TO EACH OTHER

1.      Plaintiff JULIA BROWNING ("Julia") is, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.  From on or about September 1, 1999 to March 3, 2021, Julia has been a tenant of the residential real property commonly known as 1123 17th Street, Unit 6, Santa Monica, California 90403 (the "Rental Unit").

2.      Plaintiff MARTHA MCCARTY ("Marti,") is, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.  From on or about September 1, 1999 to March 3, 2021, Marti has been a tenant of the Rental Unit.  Marti is Julia's mother and legally-appointed conservator.  At all times relevant hereto, Marti was an "aggrieved person" and "person" within the meaning of the Fair Employment and Housing Act ("FEHA").  Gov. C. §§ 12927(f), (g), 12955(a).  In addition, Marti is also a person aggrieved under the Unruh Act, Civil Code § 55.

3.      Plaintiff ANDREW NAPPIN ("Andy") is the husband of Marti and at all times mentioned herein was a resident of the County of Los Angeles, State of California.  At all relevant times herein, Andy was the legal spouse of Marti and a tenant of the Rental Unit.

4.      Plaintiffs are informed and believe, and on that basis, allege, that at all times relevant and mentioned herein, Defendant and landlord, KATHY GOLSHANI, also known as Novin Golshani, Novin Kathy Golshani and Novin Golshani Samimi ("Golshani") was and is a resident of the County of Los Angeles, State of California.  Plaintiffs are further informed and believe, and on that basis, allege, that at all times relevant and mentioned herein, Golshani had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

5.      Plaintiffs are informed and believe, and on that basis allege, that at all times relevant and mentioned herein, Defendant and landlord, BRIDA, LLC ("Brida") was and is a limited liability

2

TRA3595

company organized under the laws of the State of California, with its principal place of business in the County of Los Angeles, State of California. Plaintiffs are further informed and believe, and on that basis allege, that at all times relevant and mentioned herein, Brida had a beneficial and/or ownership interest in the Rental Unit, was involved in the management of the Rental Unit, or was the agent of the owners and/or managers of the Rental Unit.

6.      Plaintiffs are informed and believe, and on that basis, allege, that at all times relevant and mentioned herein, Defendants were the "owners" of the Rental Unit within the meaning of FEHA, Government Code §§ 12927(e) and 12955(a), as well as "persons" within the meaning of Government Code §§ 12927(f) and 12955(c), and Civil Code § 54.1 (b)(3).

7.      At all times relevant and mentioned herein, the Rental Unit was a "housing accommodation" within the meaning of Government Code §§ 12927(d) and 12955(a), (c) and (d), a "business establishment" within the meaning of Civil Code § 51 and a "housing accommodation" within the meaning of Civil Code § 54.1.

8.      At all times relevant and mentioned herein, Defendants were persons providing accommodations, advantages, facilities, privileges, and/or services in a business establishment, within the meaning of the Unruh Act, Civil Code § 51 (b), and persons and entities providing housing accommodations, within the meaning of the Disabled Persons Act, Civil Code § 54.1.

9.      Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 100 inclusive, and therefore sue these Defendants by such fictitious names under the provisions of Code of Civil § 474. Plaintiffs will seek leave to amend this Cross-Complaint to allege their true names and capacities when ascertained.

10.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, and continuing to the present, each of the Defendants was and is the agent, employee, servant, co-partner, joint venturer, and/or co-conspirator of each other Cross-Defendant, and in doing, inter alia, the acts and omissions alleged herein, acted and continues to act within the purpose and scope, and in furtherance, of said agency, employment, co-partnership, joint venture and/or co-conspiracy, and that such acts were and continue to be consented to and ratified by each of the other Defendants.

3

**TRA3596**

11.     Plaintiffs are informed and believe, and on that basis, allege, that at all times mentioned herein, and continuing to the present, each of the Defendants was Plaintiffs' landlord, and Plaintiffs were the tenants of the Defendants, as the terms "landlord" and "tenant" are defined under California common law, Code of Civil Procedure §§ 1161, et seq., Civil Code § 1980, et seq., under S.M.M.C. §§ 4.56.010(f), (i) and 4.56.020 and as defined under other California statutory law.

12.     At all times relevant and mentioned herein, the Rental Unit was a "controlled rental unit" pursuant to the provisions of Santa Monica Rent Control Charter Amendment ("S.M.R.C.C.A.") §§ 1800, et seq., and a "rental housing unit" pursuant to S.M.M.C. §§ 4.56.01 0(h) and 4.56.020.

13.     Plaintiffs moved into the Rental Unit on or about September 1, 1999, pursuant to a written lease (the "Rental Agreement") with Defendants' predecessors-in-interest.   When Plaintiffs moved into the Rental Unit, they and the Defendants or their predecessors-in-interest entered into a landlord-tenant relationship.  This relationship, as well as the Rental Unit is subject to the Rent Control Laws, municipal law, California state law and the Rental Agreement.

14.     Plaintiffs' monthly rent at the time they moved in was $1,500.00.  Due to the length of their tenancy and the rent control laws, Plaintiffs' monthly rent is very low in relation to comparable market-rate units in the same area.

## JULIA'S DISABILITY

15.     At all times relevant and mentioned herein, Julia was also disabled under the meaning of state and federal law, and specifically an "aggrieved person" and "person" within the meaning of the Fair Employment and Housing Act ("FEHA"): Gov. C. §§ 12927(f), (g), 12955(a).  In addition, Julia is also a "person" as defined by the Unruh Act, Civil Code § 51 (b), and an "individual with a disability," as defined by Civil Code § 54.1(b)(l). She is also a tenant with disabilities within the meaning of Santa Monica Municipal Code ("S.M.M.C.") § 4.28.030(i).  Specifically, Julia has a genetic condition that has caused severe neurological deficits including but not limited to intellectual disability, quadriplegia and intractable epilepsy.  She is unable to expressively communicate and is completely reliant on Marti, Andy and other caregivers for all activities of daily living.  She also requires the use of oxygen tanks and a wheelchair.

4

**TRA3597**

16.     At all times relevant and mentioned herein, Defendants have had actual and constructive notice of Julia's status as a disabled person.

## LEGAL HISTORY RELATED DEFENDANTS' ACTS OF HARASSMENT AND DISCRIMINATION AGAINST PLAINTIFFS

17.     Beginning in 2016, when the Defendants' became Plaintiffs Julia and Marti's landlords, Defendants engaged in a pattern and practice of harassment and intimidation of Plaintiffs including, but not limited to, their unilateral elimination of services and amenities, their trespassing and entering the Rental Unit without consent or prior written notice, their unending threats of eviction, and their delay and sometimes refusal to provide habitable premises.

18.     On March 3, 2016, the harassment of Plaintiffs Julia and Marti by Defendants became so severe and pervasive that the City of Santa Monica filed a civil enforcement action against the Defendants. This case is still ongoing and is set for trial 2022, in Department N of the Santa Monica Courthouse, in front of the Honorable Craig Karlan. Superior Court of California, Los Angeles, Case No. SC125490 r/w SC128983.

19.     Two restraining orders were issued by the trial court in the City of Santa Monica's enforcement action against Defendants. The *first* Restraining Order against Golshani was granted on July 6, 2017. And the *second*, more expensive Restraining Order was granted against Golshani granted on June 21, 2019.

20.     Additionally, on February 22, 2017, in response to a frivolous, harassing lawsuit filed *against* Plaintiff Marti and Julia McCarty by Defendants, Marti and Julia McCarty filed a cross-complaint against Defendants alleging several civil causes of action including but not limited to harassment, violation of FEHA, and trespass. The civil action was eventually related to and consolidated with the City of Santa Monica's enforcement action. Superior Court of California, Los Angeles, Case No. SC128983 r/w SC125490.

21.     Plaintiff Marti and Julia's individual civil complaint was eventually settled (by the insurer for Defendants) in November 2019.

22.     After the settlement of Julie and Marti's civil lawsuit, the City of Santa Monica's civil enforcement action continued on, and the restraining orders against Defendants remained in effect.

**TRA3598**

23.    After the November 2019 settlement, Plaintiffs continued to live in the Rental Unit, and the harassment by Defendants continued and *increased* in severity and frequency. In the face of: (1) multiple court orders requiring Defendants to cease their harassing behavior, (2) the City of Santa Monica's continued litigation against Defendants and (3) a civil settlement, the harassment of Plaintiffs by Defendants continued on until Plaintiffs Julie, Marti and Andy were left with no choice but to leave the Rental Unit on March 3, 2021.

## DEFENDANTS' ACTS OF HARASSMENT AND DISCRIMINATION AGAINST PLAINTIFFS

24.    Since March 2019, Andy Nappin has lived in the Rental Unit with his wife, Marti McCarty and step daughter Julia Browning. Marti and Andy were legally married in March 2019, and thereafter Andy became a full-time resident at the Rental Unit. Prior to March 2019, Andy has been present at the Rental Unit frequently, but was not residing there full time.

25.    In June 2019, Defendant Golshani made a false 911 call - reporting that her tenant, Andy Nappin, was a "suspicious person" who was threatening her in the garage of the apartment. Golshani had met Andy on several occasions prior to making the 911 call and she testified about him, at length in her March 20, 2019 deposition in the civil action. The recording from the 911 call was obtained by the City of Santa Monica, and a second, more expansive Restraining Order was granted against Golshani on June 21, 2019.  This restraining order broadened the July 6, 2017 Restraining Order against Golshani, ordering her to stay away from the Plaintiffs and the Rental Unit, to cease taking photos or videos of the rental unit, and ordering her to hire an independent property manager.

26.    In January 2020, Defendants sent an arborist to prune the trees in front of Plaintiffs' apartment. The tree was cut in a way that caused Plaintiffs to lose all privacy and created a clear view from the street into the Rental Unit.

27.    In March 2020, Defendants installed security/surveillance cameras on the premises of the Rental Unit. The cameras were installed in a manner that they were facing into the Rental Unit from several angles. Plaintiffs and the City of Santa Monica repeatedly requested that Defendants provide still shots from the surveillance cameras, as of the date of the filing of this lawsuit, the still shots have not been provided.

**TRA3599**

28.    In April 2020, Defendants failed to fix a long-standing plumbing issue and black mold issue at the Rental Unit.

29.    On September 28, 2020, Plaintiff's observed Defendants' agent and attorney, Douglas Weitzman, standing at the corner outside of the Rental Unit, near their balcony, taking photographs of the Rental Unit.

30.    On October 10, 2020, Plaintiffs witnessed two agents of Defendants taking photographs and/or videos of the Rental Unit.

31.    Throughout 2020, various agents of Defendants, including members of her family, were caught by Plaintiffs looking in to Plaintiffs' Rental Unit and photographing the Rental Unit.

32.    Plaintiffs have repeatedly reported to Defendants, throughout 2020, that the Rental Unit's exterior balcony was deteriorating at an accelerating pace. Defendants have failed to repair the balcony and have blamed Plaintiffs for the deterioration, without any evidence that Plaintiffs have contributed to the balcony's poor condition. Beginning in October 2020, Plaintiffs have ceased, almost entirely, using their balcony because of fear that it would collapse.

33.    From November 2019 until the Plaintiffs were forced to move out of the Rental Unit in March 2021 a serious pest management problem existed on the premises and in the Rental Unit.

34.    As a result of Defendants continued harassment and repeated violations of the court's restraining orders, Plaintiffs have suffered increasing levels of anxiety and stress. Julia's disability is exacerbated by stress and anxiety and change. Increased amounts of stress or anxiety, and new or different environments can cause Julia to have seizures. Marti and Andy have to diligently attempted to maintain a calm atmosphere in their home in order to not upset Julia and risk her health.

35.    The anxiety, stress and fear caused by Defendants repeated harassment and complete indifference to the court orders of protection issued against them, became so severe that on March 3, 2021, Plaintiffs were left with no choice but to move out of the rent controlled Rental Unit to protect Julia's health.

///

7

**TRA3600**

# FIRST CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA FEHA HOUSING
## DISCRIMINATION (Cal. Gov't. Code § 12900, et seq.}
### (by Plaintiffs against all Defendants)

36.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

37.    Julia's medical condition qualifies her as disabled under Government Code § 12900, et seq. Defendants knew or reasonably should have known that Julia suffered from her disability. Plaintiffs are "aggrieved persons" under FEHA since they "claim to have been injured by a discriminatory housing practice or believes that they will be injured by a discriminatory housing practice."

38.    FEHA makes it unlawful for the owners, lessees, agents or any person having any legal or equitable right of ownership or possession or the right to rent or lease a housing accommodation to discriminate against any person because of disability. By engaging in the conduct set forth herein, Defendants engaged in unlawful discrimination on the basis of Julia's disability.

39.    Plaintiffs are informed and believe that the course of conduct by Defendants was an effort to intimidate and harass Plaintiffs, which was motivated, in part or in whole, and/or has had a discriminatory effect on the basis of disability in violation of their rights under Government Code § 12900, et seq. In so doing, Defendants were committing a discriminatory housing practice.

40.    Defendants knew, or in the exercise of reasonable care should have known, that their conduct as alleged herein would cause Plaintiffs financial and emotional harm.

41.    As a direct and proximate result of the conduct of Defendants alleged herein, Plaintiffs have suffered financial and emotional harm in an amount exceeding the jurisdictional limits of this Court, to be established according to proof at trial.

42.    The conduct of Defendants alleged herein was and continues to be oppressive, fraudulent, malicious, and done with conscious disregard of Plaintiffs' rights. Plaintiffs are therefore entitled to recover punitive damages against Defendants in an amount to be determined at trial.

///

TRA3601

## SECOND CAUSE OF ACTION FOR VIOLATION OF UNRUH CIVIL RIGHTS ACT-

## HOUSING DISCRIMINATION (Cal. Civ. Code § 51, et seq.)

### (by Plaintiffs against all Defendants)

43.     Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

44.     Julia's medical conditions qualifies her as disabled under the definition provided by FEHA, section 12900, et seq. Defendants knew or reasonably should have known that Julia suffered from her disability.

45.     The Unruh Civil Rights Act ("Unruh Act") makes it unlawful for the landlords of a housing accommodation to discriminate against any person because of disability.  By engaging in the conduct set forth herein, Defendants engaged in unlawful discrimination on the basis of Julia's disability, and targeted Plaintiffs based upon Julia's disability status.

46.     Plaintiffs are informed and believe that the course of conduct by Defendants described herein, was in an effort to intimidate and harass Plaintiffs, and was motivated, in part or in whole, and/or has had a discriminatory effect on the basis of disability in violation of their rights under the Unruh Act. In so doing, Defendants were committing a discriminatory housing practice.

47.     Defendants knew, or in the exercise of reasonable care should have known, that their conduct as alleged herein would cause Plaintiffs and others similarly situated to suffer financial and emotional harm.

48.     As a direct and proximate result of the conduct of Defendants alleged herein, Plaintiffs have suffered financial and emotional harm in an amount exceeding the jurisdictional limits of this Court, to be established according to proof at trial.

49.     The conduct of Defendants alleged herein was oppressive, fraudulent, malicious, and done with conscious disregard of Plaintiffs' rights.  Plaintiffs are therefore entitled to recover punitive damages against the Defendants in an amount to be determined at trial.

///

9

**TRA3602**

## THIRD CAUSE OF ACTION FOR BREACH OF STATUTORY WARRANTY OF

## HABITABILITY

### (by Plaintiffs against all Defendants)

50.    Plaintiffs reallege and incorporates each of the foregoing allegations as though fully set forth herein.

51.    By the acts and omissions alleged herein, Defendants have violated various statutes pertaining to the warranty of habitability under California law, including, among others, Civil Code § Section 1941, et seq. and Health and Safety Code § 17920.3, related to the warranty of habitability for the Rental Unit.

52.    Marti notified Defendants of these unhealthy and defective conditions. Defendants inspected the Rental Unit but failed to and refused to repair these dangerous and defective conditions within a reasonable time. Accordingly, Plaintiffs are informed and believe and hereon alleges, that Defendants had actual and or constructive notice of each of the defective conditions described herein at all relevant times. Despite said notice, Defendants failed to take all reasonable and necessary steps to repair such conditions at all times relevant herein.

53.    Plaintiffs paid rent to Defendants during their tenancy at the Rental Unit.

54.    Plaintiffs paid rent to Defendants during their tenancy at the Rental Neither Plaintiffs nor anyone acting on their behalf have done anything to cause, create or contribute to the existence of the defective conditions alleged herein. Further, the Rental Unit, as they existed in a defective and dangerous condition, had no rental value whatsoever or a very limited rental value.

55.    As a direct and proximate result of Defendants' breach of statutory warranty of habitability and Defendants' failure to repair the defective and dangerous conditions of the Rental Unit, Plaintiffs have suffered damages in an amount to be proven at trial.

56.    Defendants failed to protect the life, safety and property of Plaintiffs. Instead, they disregarded housing and safety laws to Plaintiffs' detriment and for their benefit.

57.    Defendants knew or should have known that permitting the defective conditions alleged herein to exist at the Rental Unit injured, and would continue to injure, Plaintiffs' physical and

**TRA3603**

emotional health and well-being, and that such conduct would constitute a serious threat and danger to their health and safety.

58.     As a direct and proximate result of Defendants' conduct, the Rental Unit was and is in a substandard condition.  Plaintiffs have suffered damages, including personal injury, economic loss, non-economic loss and general damages, as well as emotional distress, all to their detriment, in an amount to be determined at trial.  As alleged herein, Defendants' conduct also justifies the imposition of punitive damages.

## FOURTH CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY OF
## HABITABILITY
### (by Plaintiffs against all Defendants)

59.     Plaintiffs realleged and incorporate each of the foregoing allegations as though fully set forth herein.

60.     The warranty of habitability is implied in all residential rental agreements and imposes upon a landlord the obligation to maintain the leased dwelling in a habitable condition throughout the term of the lease.  This implied warranty of habitability is a corollary to the residential landlord's statutory obligation under Civil Code § 1941, et seq.

61.     Defendants violated the warranty of habitability implied in the Rental Agreement and implied by their tenancy at the Rental Unit, by undertaking the course of conduct described herein that directly resulted in the existence of the defective and dangerous conditions alleged herein.

62.     Defendants failed to protect the life, safety and property of Plaintiffs. Instead, they disregarded housing and safety laws to Plaintiffs' detriment and for their benefit.

63.     Defendants knew or should have known that permitting the defective conditions alleged herein to exist at the Rental Unit injured, and would continue to injure, Plaintiffs' physical and emotional health and well-being, and that such conduct would constitute a serious threat and danger to their health and safety.

64.     As a direct and proximate result of Defendants' conduct, the Rental Unit were in a substandard condition.  Plaintiffs have suffered damages, including personal injury, economic loss, non-economic loss and general damages, as well as emotional distress, all to their detriment, in an

**TRA3604**

amount to be determined at trial.  As alleged herein, Defendants' conduct also justifies the imposition of punitive damages.

## FIFTH CAUSE OF ACTION FOR NEGLIGENCE

### (by Plaintiffs against all Defendants)

65.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

66.    By reason of the landlord-tenant relationship between the Plaintiffs and Defendants, Defendants owed Plaintiffs the duty to exercise reasonable care in the management and control of their real property, a duty to provide Plaintiffs with a residential rental property meeting minimum standards of habitability, and were required to allow Plaintiffs the peaceful and quiet enjoyment of the Rental Unit.

67.    By the conduct alleged herein, the Defendants negligently breached the duties owed to Plaintiffs.

68.    As a direct and proximate result of the conduct of Defendants alleged herein, Plaintiffs have suffered and continue to suffer actual and special damages, including physical injuries, mental/emotional trauma, and general damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION FOR NUISANCE

### (by Plaintiffs against all Defendants)

69.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

70.    The defective and dangerous conditions of the Rental Unit as alleged herein, as well as the invasive photographic surveillance and incessant entrances into the Rental Unit by the landlord (both with and without proper notice), constituted a nuisance within the meaning of Civil Code § 3479 and Code of Civil Procedure § 731 in that they deprived Plaintiffs of the safe, healthy and comfortable use of the Rental Unit, were indecent and offensive to the senses, were obtrusive to the free use of the Rental Unit, and caused Plaintiffs significant damage and injury.

12

**TRA3605**

71.    Defendants owed a duty to Plaintiffs as the as the owners, landlords and managers of the Rental Unit, which they breached by, among other things, maintaining and/or failing to abate a nuisance within the meaning of Civil Code § 3479 and Code of Civil Procedure § 731.

72.    As a proximate result Defendants' maintenance and/or failure to abate the nuisance, Plaintiffs suffered personal injury, discomfort, emotional distress and annoyance, in an amount to be determined at trial.

73.    In maintaining the nuisance, the Defendants have acted and continue to act with full knowledge of the consequences thereof and of the damage being caused to Plaintiffs.  Despite this knowledge, Defendants failed to fully abate the nuisance as alleged herein, as well as the invasive photographic surveillance and incessant entrances into the Rental Unit by the landlord (both with and without proper notice) or causing the oven and heater to be repaired in a timely and proper manner, and by continuing their invasive video surveillance.  Defendants' acts and omissions alleged herein have proximately caused Plaintiffs to suffer the following damages: loss of use of the Rental Unit and rent differential damages, personal injury, emotional distress, decrease in housing services without a corresponding reduction rent, overpayment and/or excessive payment of rent, loss of employment, loss of earning capacity, loss of wages, loss of use and enjoyment of the property, fear of loss of housing, substantial discomfort and annoyance, the amount of which exceeds the minimum jurisdictional threshold of this Court and which will be proven at trial.

74.    Defendants' actions and/or failure to act were both oppressive and malicious within the meaning of Civil Code § 3294, in that it subjected Plaintiffs to cruel and unjust hardship in willful and conscious disregard of their rights and safety.  As such, Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION FOR BREACH OF CONTRACT
### (by Plaintiffs against all Defendants)

75.    Plaintiffs realleged and incorporate each of the foregoing allegations as though fully set forth herein.

76.    A Rental Agreement exists between Plaintiffs and Defendants' predecessor-in-interest pertaining to Plaintiffs' tenancy at the Rental Unit.  This Rental Agreement contains implied covenants

including, but not limited to, the following: an implied warranty of habitability and an implied covenant of quiet use and enjoyment as well as Defendants' abiding by state and federal disability discrimination laws.  Plaintiffs performed all of the obligations under the Rental Agreement except those obligations for which they were excused or which they were prevented from performing by Defendants' actions and/or omissions.

77.    As set forth herein, Defendants unlawfully and intentionally mismanaged the Rental Unit in violation of the Rental Agreement between the parties.  In committing the acts complained of, Defendants materially breached the implied terms of the Rental Agreement between Plaintiffs and Defendants' predecessor-in-interest, and caused the damages and injuries to Plaintiffs complained of above.

78.    As a proximate cause of the conduct of Defendants, Plaintiffs have suffered, and continue to suffer, actual damages and general damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION FOR BREACH OF COVENANT OF QUIET ENJOYMENT

### (by Plaintiffs against all Defendants)

79.    Plaintiffs realleged and incorporate each of the foregoing allegations as though fully set forth herein.

80.    By the acts and omissions described above, Defendants interfered with, interrupted, and deprived Plaintiffs of the full and beneficial use of the Rental Unit and disturbed their peaceful possession of the Rental Unit.

81.    These acts of interference, interruption, deprivation, and disturbance by the Defendants amounted to breaches of the covenant of quiet enjoyment implied in all rental agreements, and codified in California Civil Code § 1927.

82.    As a direct and proximate result of Defendants' violation of Plaintiffs' right to the quiet enjoyment of the Rental Unit, Plaintiffs have suffered, and continue to suffer, actual damages and general damages in an amount to be determined at trial.  Defendants' conduct as alleged herein also justifies the imposition of punitive damages.

///

14

TRA3607

## NINTH CAUSE OF ACTION FOR RENT OVERCHARGE

### (S.M.R.C.C.A. § 1809(a))

### (by Plaintiffs against all Defendants)

83.    Plaintiffs realleged and incorporate each of the foregoing allegations as though fully set forth herein.

84.    Due to the length of Plaintiffs' tenancy, Plaintiffs' rent was below market rate based upon the rental limitations set forth in the Rent Control Laws.  Defendants violated the Rent Control Laws by causing Plaintiffs to pay a monthly rental amount for the Rental Unit which exceeded the limitations set forth in the Rent Control Laws, due to the decrease in housing services without a corresponding reduction in rent resulting from the defective and dangerous conditions of the Rental Unit, the loss of use of the balcony, and the invasive surveillance of the Rental Unit as alleged herein, the breaches of the warranty of habitability alleged herein, and the breaches of covenant of quiet enjoyment alleged herein.

85.    The Defendants had actual and constructive knowledge of the decreases in housing services described herein and they failed to grant Plaintiffs a corresponding reduction in rent.  By failing to reduce Plaintiffs' rent to compensate for the decreases in housing services at the Rental Unit, as well as the other allegations herein, Defendants have charged Plaintiffs a rental amount which exceeds the limitations set forth in the Rent Control Laws.

86.    Pursuant to S.M.R.C.C.A. § 1809(a), Plaintiffs are entitled to a rebate of all rent overcharges paid in amounts to be proven at trial, a penalty of treble damages, and an award of reasonable attorney's fees.

## TENTH CAUSE OF ACTION FOR UNLAWFUL THREAT TO TERMINATE

### TENANCY (S.M.R.C.C.A . § 1806(f))

### (by Plaintiffs against all Defendants)

87.    Plaintiffs realleged and incorporates each of the foregoing allegations as though fully set forth herein.

15

**TRA3608**

88.     At all pertinent times, Plaintiffs' tenancy at the Rental Unit was covered by the Rent Control Laws.  S.M.R.C.C.A. prohibits a landlord from recovering possession of a rental unit, except as provided by S.M.R.C.C.A. § 1806(a).

89.     Plaintiffs are informed and believe and thereby alleges that Defendants' actions, as set forth herein, lacked any good faith basis, and said actions included but were not limited to attempting to influence Plaintiffs to vacate the Rental Unit through coercion, intimidation and a barrage of eviction threats.  Defendants had the unlawful intention, ulterior motive and dishonest intent to force Plaintiffs to vacate their Rental Unit in violation of the Santa Monica Rent Control Charter Amendment, including but not limited to Section 1806(a), which provides the legal just causes for eviction.

90.     As a direct and proximate result of said acts and omissions on the part of Defendants, Plaintiffs have suffered special and general damages as is alleged herein.

91.     S.M.R.C.C.A. § 1806 (f) provides for an award of reasonable attorney's fees to the prevailing party to any action brought under this section, and Plaintiffs are entitled to such an award of attorney's fees from Defendants.

92.     Also pursuant to S.M.R.C.C.A. § 1806(f), Plaintiffs are entitled to recover punitive damages against Defendants in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION FOR TENANT HARASSMENT

### (S.M.M.C. § 4.56.010, et seq.)

### (by Plaintiffs against all Defendants)

93.     Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

94.     By the acts and omissions described above, Defendants have violated the Santa Monica Tenant Harassment Ordinance (S.M.M.C. § 4.56.010, et seq.).

95.     For each act of wrongful harassment, Defendants are liable for all of the remedies established in S.M.M.C. § 4.56.040.

96.     Pursuant to S.M.M.C. § 4.56.040(d), Defendants are liable for each separate act in violation of the Tenant Harassment Ordinance, for the actual damages suffered or for statutory damages in the sum of $10,000 per offence, which is greater, and for Plaintiffs' fees and costs.

**TRA3609**

97.    Pursuant to S.M.M.C. § 4.56.040(d), Defendants are liable for each separate act in violation of the Tenant Harassment Ordinance, in the sum of an additional penalty not to exceed $5,000 per offence.

98.    The conduct of Defendants alleged herein was oppressive, fraudulent, malicious, and done with conscious disregard of Plaintiffs' rights. Plaintiffs are therefore entitled to recover punitive damages against the Defendants in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION FOR TENANT HARASSMENT

### (S.M.M.C. § 4.28.010, et seq.)

### (by Plaintiffs against all Defendants)

99.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

100.    By the acts and omissions described above, Defendants have violated the Santa Monica Housing Anti-Discrimination Code (S.M.M.C. § 4.28.010, et seq.).

101.    For each act of wrongful harassment, Defendants are liable for all of the remedies established in S.M.M.C. §§ 4.28.060 and 4.28.070.

## THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE§ 1940.2

### (by Plaintiffs against all Defendants)

102.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

103.    Civil Code § 1940.2(a) prohibits a landlord from influencing a tenant to vacate a dwelling by certain prohibited acts, including intentional significant violations of entry rights pursuant to Civil Code § 1954.

104.    As alleged above, Defendants entered the Rental Unit for the purpose of harassing Plaintiffs in violation of Civil Code § 1954. These entries were done intentionally to cause or influence Plaintiffs to vacate the Rental Unit.

105.    By committing the acts complained of above, Defendants are liable for actual damages sustained by Plaintiffs, and for statutory damages in an amount up to $2,000 for each violation.

///

**TRA3610**

## FOURTEENTH CAUSE OF ACTION FOR TRESPASS

### (by Plaintiffs against all Defendants)

106.    Plaintiffs reallege and incorporate each of the foregoing allegations as though fully set forth herein.

107.    As set forth herein, on numerous occasions, Defendants entered the Rental Unit without lawful and adequate notice or permission.

108.    Each herein mentioned entry into the Rental Unit by Defendants overreached the limits of the consent granted for such an entry by Plaintiffs and according to law, amounting to a trespass to land by the Defendants.

109.    As a proximate result of the conduct of the Defendants, Plaintiffs have suffered physical injury and emotional and mental distress in an amount to be proven at trial.

110.    The acts of Defendants were willful, wanton, malicious and oppressive, and justify the awarding of exemplary and punitive damages.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    For a preliminary and permanent injunction enjoining Defendants and their officers, directors, shareholders, employees, agents, independent contractors, partners, assignees, successors, representatives and all persons acting under, in concert with, or for them from any activities resulting in further harassment and/or discrimination against Plaintiffs;

2.    For general damages according to proof, but in excess of the jurisdictional limits of this Court;

3.    For special damages according to proof, but in excess of the jurisdictional limits of this Court;

4.    For statutory damages and penalties under FEHA and Unruh Act;

5.    For attorney's fees under FEHA, Unruh, the Santa Monica Municipal Code, and as otherwise allowed by law;

6.    For civil penalties pursuant to the Santa Monica Municipal Code;

7.    For civil penalties pursuant to Civil Code § 1940.2;

**TRA3611**

8.    For exemplary and punitive damages as allowed by law;

9.    For costs of suit;

10.   For interest, including prejudgment interest at the legal rate; and

11.   For such other and further relief as the Court deems just and proper.

Dated: November 3, 2021                         TAYLOR & RING, LLP

                                                By: _____
                                                    John C. Taylor
                                                    Natalie Weatherford
                                                    Attorneys for Plaintiffs

19

**TRA3612**



Travelers Casualty Insurance Company of America
P. O. Box  6511
Diamond Bar, CA 91765-8511
Telephone: (909) 612-3308
Fax: (866) 557-1197

December 23, 2021

By US Mail and email:  bridallc9@gmail.com

Kathy Golshani
Brida Properties LLC
1722 Westwood Blvd
Los Angeles, CA 90024

RE:     ***McCarty, et al. v. Brida, LLC, et al.***
        Court:          Los Angeles Superior Court
        Case #:         21STCV32607
        Claim #:        FLT2443
        Insured:        Brida Properties LLC
        Plaintiffs:     Martha McCarty, Julia Browning through Martha McCarty,
                        Andrew Nappin
        GL Policy #:    680-6F285163
        GL Company:     Travelers Casualty Company of America

Dear Ms. Golshani,

This letter is to respond to the tender of defense of the lawsuit filed by the plaintiffs in the above-referenced matter, under the general liability policy of Brida Properties LLC ("Brida") with Travelers Casualty Insurance Company of America ("Travelers"), policy number 680-6F285163.

After reviewing the complaint along with the policy and the information provided to date regarding the claim, we have determined that there is no coverage for this claim under the general liability section of the policies because:

- The claims being made in this new complaint arise from alleged activities outside the policy period.

In this complaint, the plaintiffs allege they were tenants at the insured property, 1123 17th Street, Unit 6, Santa Monica, California 90403.  It is claimed that in 2016, when Brida became their landlord, they were harassed and intimidated by the defendants, including elimnation of services

1

**TRA3638**

and amenities, trespassing into their unit, eviction threats and alleged delays to provide habitable premises. This resulted in a prior lawsuit, initially filed by the City of Santa Monica in Los Angeles Superior Court, Case Number SC125490, later combined with Case Number SC128983 ("City's lawsuit"). Restraining orders were also filed by the tenants against you. A Cross complaint was filed by Brida and the other defendants in the City's lawsuit, resulting in a counter Cross complaint filed by the tenants against Brida. As you are aware, the Cross complaint was settled by Travelers in November of 2019 ("Travelers settlement"). The City's lawsuit remains pending and the restraining orders allegedly remain in effect. It is claimed that after the Travelers settlement, the plaintiffs continued to live in the rental unit and the harassment allegedly continued and increased in severity and frequency until the plaintiffs had to leave their rental unit on March 3, 2021.

Plaintiff Andrew Nappin claims to have lived in the rental unit with his wife, Marta McCarty as of March 2019. It is claimed that a false 911 call was made by you in June of 2019 about Mr. Nappin. Trees were allegedly pruned to deprive the plaintiffs of privacy to their unit in January 2020. Security/surveillance cameras were allegedly placed facing plaintiffs' unit in March of 2020. A plumbing issue was allegedly not repaired in April 2020. Intrusive photos were allegedly taken by the defendants' attorney on September 28, 2020. Further intrusive photos were allegedly taken by agents of the defendants on October 10, 2020. It is also claimed that various agents of the defendants were caught looking into and photographing the plaintiffs' rental unit. The exterior balcony was allegedly not repaired in response to the plaintiffs' complaints throughout 2020 so that they discontinued use of it in October 2020. A pest control problem is alleged from November 2019 to March 2021. This all allegedly caused so much stress and anxiety that the plaintiffs were forced to move out of their rent controlled unit to protect the health of the handicapped plaintiff, Julia Browning.

The plaintiffs allege discrimination and violations of California FEHA Housing code, the Unruh Civil Rights Act, habitability allegations under the Health and Safety codes and negligent behavior in the alleged harassment of the plaintiffs.

The lawsuit states the following Causes of Action:

1. Violation of FEHA
2. Violation of Unruh Act
3. Breach of Statutory Warranty of Habitability
4. Breach of Implied Warranty of Habitability
5. Negligence
6. Nuisance
7. Breach of Contract
8. Breach of Covenant of Quiet Enjoyment
9. Violation of Santa Monica Rent Control Charter Amendment 1809(a)
10. Violation of Santa Monica Rental Control Charter Amendment 1809(f)
11. Violation of Santa Monica Tenant Harassment Ordinance
12. Violation of Santa Monica Housing Anti-Discrimination Code
13. Violation of Civil Code 1940.2
14. Trespass

TRA3639

As a result of the defendants' actions, the plaintiffs are seeking injunctive relief, general and special damages, statutory damages and penalties under FEHA and Unruh Act, attorney fees under FEHA and Unruh Act and the Santa Monica Municipal Code, civil penalties and punitive damages.

We have reviewed the Brida's general liability policy with Travelers, policy number 680-6F285163.  The policy was originally effective as of March 6, 2016 and renewed through March 6, 2018.  The general liability policy has a limit of $1,000,000 for each occurrence.  The policy has the main policy form, **COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01 10 01** which states in relevant part:

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

        **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

3

**TRA3640**

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

\* \* \* \*

All of the plaintiffs' allegations in this above-referenced lawsuit arise from the defendants' behavior after the settlement of their prior lawsuit in November 2019.  As the Travelers policy was no longer in effect as of March 6, 2018, these allegations all fall outside the policy period and do not trigger coverage.

The policy also provides coverage for "personal injury" and "advertising injury" which is modified under policy form **AMENDMENT OF COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY CG D4 71 02 09.**   The insuring agreement of the coverage reads as follows:

### COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY

**1.  Insuring Agreement.**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \* \*

4

**TRA3641**

It is the position of Travelers that there is no coverage under Coverage **B** of the policy.   None of the plaintiff's allegations in this lawsuit arise from activites within the policy period, therefore, any injuries the plaintiffs claim are not covered under the policy.

There may be other relevant coverage arguments to be raised, but we will not do so at this time. Nothing in this letter should be construed as a waiver of Traveler's rights under any of the provisions of the Travelers policy or any other defense that the Company may have.  Travelers expressly reserves all of its rights to limit or deny coverage for this claim on the basis of these or any additional grounds.

For the reasons cited above, we must advise you that Travelers has concluded it is not obligated to defend or indemnify Brida or yourself in this matter.  Accordingly, Travelers presently declines to provide a defense or indemnity for the subject lawsuit under the policy.  We would recommend that the lawsuit be forwarded to your subsequent carrier that would have issued a policy that was effective during the period relevant to the plaintiffs' complaints in this lawsuit.

Travelers' coverage determination under these policies are based on the information made available to date.  If you have any additional information or there is an amended complaint or further discovery which provides further information that would affect our coverage decision, please provide us with this information at your earliest opportunity.  We can review this information further and determine if any change in our coverage position is warranted.

In accordance with Section 2695.7(b)3 of the California Insurance Regulations, if any insured believes this claim was wrongfully denied or rejected, they have the right to have this matter reviewed by the California Department of Insurance located at:

> California Department of Insurance
> Claims Service Bureau
> South Tower
> 300 S. Spring Street
> Los Angeles, California 90013
> (800) 927-4357

Thank you for your cooperation.  Please feel free to call if you have any questions.  We regret that our response could not have been more favorable.

Sincerely,

*Carol Simmons*
Travelers Casualty Insurance Company of America
Carol Simmons
Claim Professional
Telephone: (909) 612-3308
Fax: (866) 557-1197
CUSIMMON@TRAVELERS.COM

5

**TRA3642**

**From:** Simmons, Carol
**Sent:** Wednesday, December 08, 2021 5:15 PM UTC
**To:** Magsaysay, Michelle Y <MMAGSAYS@travelers.com>
**Subject:**  REDACTED
**Attachment(s):**  REDACTED

REDACTED

**Carol Simmons | Claim Professional | General Liability**
Travelers
Southern California Claim Center
P.O. Box 650293
Dallas, TX 75265-0293
W: 909.612.3308   F: 877 801 9677

**TRAVELERS**

---

**From:** Sharon Jeffrey <ssj@manningllp.com>
**Sent:** Wednesday, December 8, 2021 7:59 AM
**To:** Simmons, Carol <CUSIMMON@travelers.com>
**Subject:** [External] FW: In violation of Travelers unilateral settlement agreement, frivolous lawsuit was filed

*** External Sender - Please Exercise Caution ***

Carol,

Just some brief thoughts- I believe you paid out the policy limits, the release does have the usual Section 1542 release that waives and assumes risk for damages whether known or suspected. A quick glance looks like they're suing again for the exact same things, unless they're possibly hoping to get the subsequent carrier to hop in for the time period after the release was signed until she moved out.

Hope you are doing well.

Best,

Sharon

Sharon S. Jeffrey, Esq**.**
Partner
**MANNING & KASS**
**Ellrod, Ramirez, Trester LLP**
801 S. Figueroa St, 15th Floor | Los Angeles, California 90017
Tel: 213.624-6900 | Fax: 213.624-6999 | **Direct: 213.486.2261**
Email: **ssj@manningllp.com** Website: **www.manningllp.com**
Los Angeles | Orange County | San Francisco | San Diego | Scottsdale | New York
Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you.  Manning & Kass, Ellrod, Ramirez, Trester, LLP

---

**From:** Brida Llc <bridallc9@gmail.com>
**Sent:** Tuesday, December 7, 2021 8:17 PM
**To:** Sharon Jeffrey <ssj@manningllp.com>; Simmons,Carol U <CUSIMMON@travelers.com>; lynda kim <lynda@oceanlaw.com>
**Cc:** Rosario Perry <rosario@oceanlaw.com>; Kathy Golshani <kathygolshani@gmail.com>
**Subject:** In violation of Travelers unilateral settlement agreement, frivolous lawsuit was filed

Hi Ms. Jeffrey and Ms. Simmons,

Hope this email finds you well.  Please see attached a new frivolous lawsuit filed by Martha Browning.  As the City's trial case is approaching, and the city's fear of losing their malicious lawsuit, they come up with another malicious baseless complaint repeating mostly the same cause of actions and the same allegations of  their 2017 lawsuit which Travelers settled without Brida's involvement and now Travelers is obligated to defend immediately. As you remember I was not willing to settle unless there was a global settlement which included the City's lawsuit.
I was served today and  I am shocked and numb at how low and malicious these people could go.  They moved out while Santa Monica police were investigating delivery of hard core drugs to their unit 6. They severely damaged the unit and there were broken doors which they kicked.
 I am crying as I have  to respond in 30 days and due to the holiday season it is extremely difficult to find a new attorney to work on the case.
Please get back to me at your earliest to defend this harassing complaint.

**TRA3661**

Exhibit B

1  John C. Taylor, State Bar No. 78389
   Neil K. Gehlawat, State Bar No. 289388
2  Peter A. Reagan, State Bar No. 327596
   **TAYLOR & RING, LLP**
3  1230 Rosecrans Avenue, Suite 360
   Manhattan Beach, California 90266
4  Telephone: (310) 209-4100
   Facsimile: (310) 208-5052
5
   Attorneys for Plaintiffs
6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF LOS ANGELES, WEST DISTRICT-SANTA MONICA

10
   MARTHA MCCARTY; JULIA BROWNING,          ) CASE NO. 21STCV32607
11 by and through her conservator, MARTHA   ) (Related to Case No. SC125490)
   MCCARTY; ANDREW NAPPIN,                   )
12                                           ) [Complaint Filed: 09/02/2021; Assigned to the
                 Plaintiffs,                 ) Hon. Craig D. Karlan, Dept. N]
13                                           )
   vs.                                       )
14                                           ) **NOTICE OF RULING RE: DISMISSAL**
   BRIDA, LLC; KATHY GOLSHANI; and           )
15 DOES 1 through 100, inclusive,            )
                                             )
16               Defendants.                 )
                                             )
17 _____ )
   BRIDA, LLC,                               )
18              Cross-Complaints,            )
                                             )
19 vs.                                       )
                                             )
20 MARTHA MCCARTY, ANDREW NAPPIN,            )
21 AND MOES 1 through 25, Inclusive,         )
                                             )
22               Cross-Defendants.           )
                                             )
23 _____ )

24 ///

25 ///

26 ///

27 ///

28 ///

BRIDA0321

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT the OSC Re Dismissal was held on September 13, 2023 in Department N of the Santa Monica courthouse. The Court dismissed the action with prejudice. The Court's Minute Order is attached hereto as Exhibit "1". Plaintiff was ordered to give notice.

Dated: September 13, 2023                                **TAYLOR & RING**

By: _____
John C. Taylor
Neil K. Gehlawat
Peter A. Reagan
Attorneys for Plaintiffs

NOTICE OF RULING RE: DISMISSAL

BRIDA0322

# EXHIBIT 1

BRIDA0323

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Santa Monica Courthouse, Department N

**21STCV32607**                                             September 6, 2023
**MARTHA MCCARTY, et al. vs KATHY GOLSHANI, et al.**                    8:30 AM

Judge: Honorable Lisa K Sepe-Wiesenfeld          CSR: None
Judicial Assistant: S. Hwang                     ERM: None
Courtroom Assistant: S. Mixon                    Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): John Taylor by Peter Reagan (LACC)

For Defendant(s): Binh Thanh Bui (LACC); Kathy Golshani (LACC)

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: Dismissal (Settlement)

The matter is called for hearing.

The Court and counsel confer.

The Court takes the matter under submission. Later, the Court rules as follows:

\*\*\* RULING \*\*\*

Order to Show Cause re Dismissal was heard. Peter Reagan for Plaintiffs; Binh Thanh Bui for
Brida LLC and Kathy Golshani, self represented. Golshani raises issues with respect to dismissal
of the action titled City of Santa Monica v. Kathy Golshani. That matter has resolved pursuant to
a stipulated judgment that Defendant signed and was filed on June 23, 2023.

With respect to McCarty v. Golshani, the OSC re Dismissal is discharged and the action is
dismissed with prejudice.

\*\*\* END OF RULING \*\*\*

The Court orders the Amended Complaint (1st) filed by Martha McCarty, et al. on 11/04/2021
dismissed with prejudice.

Clerk to give notice to Plaintiff who shall give notice to all other relevant parties.

Certificate of Mailing is attached.

BRIDA0324